1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  DENNIS J. HERMAN (220163)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA 94104
4  Telephone: 415/288-4545
   415/288-4534 (fax)
5  dennish@rgrdlaw.com
      – and –
6  DARREN J. ROBBINS (168593)
   DAVID C. WALTON (167268)
7  CATHERINE J. KOWALEWSKI (216665)
   655 West Broadway, Suite 1900
8  San Diego, CA 92101
   Telephone: 619/231-1058
9  619/231-7423 (fax)
   darrenr@rgrdlaw.com
10  davew@rgrdlaw.com
   katek@rgrdlaw.com
11
   Attorneys for Plaintiff
12
   [Additional counsel appear on signature page.]
13
                    UNITED STATES DISTRICT COURT
14
                    NORTHERN DISTRICT OF CALIFORNIA
15

16  MARTIN DERCHI-RUSSO, Individually and  )  No.
   on Behalf of All Others Similarly Situated,  )
17                                          )  CLASS ACTION
                          Plaintiff,        )
18                                          )  COMPLAINT FOR VIOLATION OF THE
          vs.                               )  FEDERAL SECURITIES LAWS
19                                          )
   FINISAR CORPORATION, JERRY S.            )
20  RAWLS, EITAN GERTEL and KURT            )
   ADZEMA,                                  )
21                                          )
                          Defendants.       )
22  _____)  DEMAND FOR JURY TRIAL

23

24

25

26

27

28

**INTRODUCTION**

1.      This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Finisar Corporation ("Finisar" or the "Company") between December 2, 2010 and March 8, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 ("1934 Act").

2.      Finisar is a provider of optical subsystems and components that connect short-distance local area networks ("LANs"), storage area networks ("SANs"), longer distance metropolitan area networks ("MANs"), fiber-to-the-home networks, cable television networks and wide area networks ("WANs").   The Company's optical subsystems consist primarily of transmitters, receivers, transceivers and transponders, which provide the fundamental optical-electrical interface for connecting the equipment used in building these networks, including switches, routers and file servers used in wireline networks as well as antennas and base stations for wireless networks.

3.      During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results.  Specifically, defendants failed to disclose that Finisar's recent revenue growth was due to an oversupply of inventory in the market. Defendants further failed to disclose that the Company would be unable to sustain its strong growth due to increased pricing pressures and a slowdown in business from China.  As a result of defendants' false statements, Finisar's stock traded at artificially inflated prices during the Class Period, reaching a high of $43.23 per share on February 14, 2011.

4.      Then, on March 8, 2011, after the market closed, Finisar issued a press release announcing its third quarter fiscal year 2011 results.[1]  The Company reported earnings of $18.8 million, or $0.22 diluted earnings per share ("EPS"), and revenue of $263.0 million.  The Company further reported its fourth quarter 2011 revenues would be in the range of $235 to $250 million, lower than analysts' estimates.  The release stated in part:

---

[1]      Finisar's fiscal year ends April 30.

During the fourth quarter ending April 30, 2011, the Company will be impacted by the full three months of the annual price negotiations with telecom customers that typically take effect on January 1, the 10-day long shutdown at certain customers for Chinese New Year in February, the adjustment of inventory levels at some telecom customers, particularly for products which had previously been on allocation and long lead times, including WSS and ROADM line cards, and a slowdown in business in China overall. Primarily as a result of these factors, the Company indicated that it currently expects revenues for the fourth quarter to be in the range of $235 to $250 million.

5.    On this news, Finisar's stock collapsed $15.43 per share to close at $24.61 per share on March 9, 2011, a one-day decline of nearly 39% on high volume.

6.    The true facts, which were known by the defendants but concealed from the investing public during the Class Period were as follows:

(a)    Finisar's recent revenue surge was not due solely to organic growth from real end-market demand, but rather it was partially due to an inventory build by the Company's customers.  Due to past supply chain constraints in the optical component industry, Finisar's customers were ordering additional products in order to cover any potential shortages and meet their current needs.  As the supply constraints loosened, the customers were left with an oversupply of inventory and thus would need to decrease the amount of products they ordered from Finisar in order to reduce their inventory levels.

(b)    Finisar was experiencing increasing pricing pressures due to intense competition in the industry and, as a result, it was forced to concede to steep discounts in order to retain certain of its customers.  The Company engages in annual price negations in the latter part of each year and the pricing discounts take effect January 1st.

(c)    Finisar was experiencing a serious slowdown in business from China. Chinese equipment manufacturers have significantly contributed to the Company's recent success and a slowing in demand from these Chinese companies would have a detrimental effect on the Company's ability to continue growing at unprecedented rates.

(d)    Finisar failed to disclose known trends and uncertainties as required by SEC regulations concerning its revenue growth rate.  Finisar's revenue had been rapidly outgrowing its end-market for six quarters.  Nonetheless, given the Company would be unable to maintain its

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 2 -

1  growth at this incredible pace, the Company's past results provided investors with a distorted picture
2  of the Company's potential growth and were not indicative of future operations.

3        7.      As a result of defendants' false statements, Finisar's stock traded at artificially
4  inflated levels during the Class Period.  However, after the above revelations seeped into the market,
5  the Company's shares were hammered by massive sales, sending them down over 43% from their
6  Class Period high.

7                              **JURISDICTION AND VENUE**

8        8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934
9  Act and SEC Rule 10b-5.  Jurisdiction is conferred by §27 of the 1934 Act.

10       9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.
11 §1331 and §27 of the 1934 Act.

12       10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because defendants
13 maintain an office in this District and many of the acts and practices complained of herein occurred
14 in substantial part in this District.

15       11.     In connection with the acts and conduct alleged in this complaint, defendants, directly
16 or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited
17 to, the mails and interstate wire and telephone communications.

18                                    **PARTIES**

19       12.     Plaintiff Martin Derchi-Russo purchased the common stock of Finisar during the
20 Class Period as set forth in the certification attached hereto and was damaged as the result of
21 defendants' wrongdoing as alleged in this complaint.

22       13.     Defendant Finisar designs, develops, manufactures and markets optical subsystems
23 and components.  Finisar is headquartered in Sunnyvale, California.

24       14.     Defendant Jerry S. Rawls ("Rawls") has served as Chairman of the Board of Finisar
25 since 2006.  Previously, Rawls served as President, Chief Executive Officer ("CEO") and a member
26 of the Board from 1989 to 2008.

27
28

15. Defendant Eitan Gertel ("Gertel") has served as CEO and a director of Finisar since 2008. During the Class Period, Gertel reaped $5.1 million in insider trading proceeds by selling 200,000 shares of his Finisar stock at artificially inflated prices.

16. Defendant Kurt Adzema ("Adzema") has served as Chief Financial Officer ("CFO") and Executive Vice President, Finance of Finisar since March 2010. During the Class Period, Adzema reaped nearly $1.3 million in insider trading proceeds by selling 48,879 shares of his Finisar stock at artificially inflated prices.

17. The defendants referenced above in ¶¶14-16 are referred to herein as the "Individual Defendants."

18. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Finisar's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

19. Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about Finisar. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Finisar common stock was a success, as it: (i) deceived the investing public regarding Finisar's prospects and business; (ii) artificially inflated the price of Finisar common stock; (iii) allowed insiders, including Gertel and Adzema, to sell $10.4 million worth of their Finisar stock; and (iv) caused plaintiff and other members of the Class to purchase Finisar common stock at inflated prices.

## BACKGROUND

20.     Finisar designs, develops, manufactures, and markets optical subsystems and components that are used to interconnect equipment in short-distance LANs, SANs, longer distance MANs, fiber-to-the-home networks, cable television networks, and WANs.  Its optical subsystems primarily include transmitters, receivers, transceivers, and transponders.  The Company's optical subsystems provide the fundamental optical-electrical interface for connecting the equipment used in building networks comprising switches, routers, and file servers in wireline networks, as well as antennas and base stations for wireless networks.  It also offers products for switching network traffic from one optical wavelength to another across multiple wavelengths, known as reconfigurable optical add/drop multiplexers.  The Company's line of optical components principally comprises packaged lasers and photodetectors used in transceivers for LAN and SAN applications and passive optical components used in building MANs.  It sells its optical products to manufacturers of storage systems, networking equipment, and telecommunication equipment or their contract manufacturers through direct sales force and distribution channels in the United States, Malaysia, the People's Republic of China, and internationally.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

21.     On December 1, 2010, after the market closed, Finisar issued a press release reporting its second quarter 2011 financial results, announcing net income of $33.8 millions, or $0.39 diluted EPS, and record revenues of $240.9 million.  The release stated in part:

> "In our just completed second quarter, we reached our previously announced target for non-GAAP operating margin of 17.0%, upwardly revised just last quarter, substantially earlier than we had predicted. Achieving this level of operating margin was driven by our strong revenue growth combined with minimal increases in operating expenses," said Jerry Rawls, Finisar's executive Chairman of the Board. "We achieved new company records for quarterly revenues, operating income and net income."

> "Furthermore, the market environment continued to be very strong for Finisar, driven by increased demand for a broad range of LAN/SAN and metro/telecom products," said Eitan Gertel, Finisar's Chief Executive Officer. "The company continued to gain market share, including in the WSS/ROADM line card segment where revenues grew 27.3% over the previous quarter. We expect revenues for WSS/ROADM line cards to grow another 20% to 30% sequentially in our fiscal third quarter."

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 5 -

22.     After releasing its second quarter 2011 financial results on December 1, 2010, Finisar hosted a conference call with investors, media representatives and analysts, during which defendants represented the following:

> [ADZEMA:]   Revenues of $240.9 million were up $33.1 million, or 15.9% from $207.9 million in the preceding quarter. Breaking down that increase by product group, the sale of 10 Gigabit and faster products increased $13.3 million, or 14.1%. The sale of less than 10 Gigabit products increased $12.1 million or 15.4%. The sale of ROADM-related products including wavelength selective switches or WSS increased $8.3 million or 27.3%. Finally the sale of analog and cable television products decreased $0.7 million or 15.6%.
>
> Sequential increase of 14.1%, in revenues for high speed applications was driven by demand for both short distance LAN/SAN and longer distance Metro/Telecom applications.
>
> *       *       *
>
> [ANALYST:]   Quick, Jerry you mentioned pricing negotiations are going to impact the gross margin slightly here. Any sense on how its trending versus prior years? Are we seeing a normal erosion, better or worsen?
>
> [RAWLS:]   Our view of is that price erosion this year is less than last year. So that's good. But I would say it's pretty normal compared to what our historical expectations are. We've always expected the prices went down 10% or 15%. We are in that range.

23.     On this news, Finisar's stock closed up $3.29 per share to close at $23.06 per share on December 2, 2010.

24.     On December 8, 2010, Finisar filed its Form 10-Q for the second quarter of 2010 with the SEC, which contained the same results previously reported on December 1, 2010.

25.     On December 27, 2010, defendants completed a secondary offering of Finisar common stock (the "Offering"), selling 4,140,000 shares at $28.54 per share (which encompassed the sale of the 3.6 million shares originally offered and an overallotment option granted to the underwriters to purchase up to an additional 540,000 shares), for net proceeds of $117.9 million, pursuant to the Offering.

26.     Following the Offering, Finisar's stock largely traded in the $30 to $40 per share range.

27.     On January 11, 2011, defendant Rawls attended a Needham & Company Growth Conference call with analysts, media representatives and investors, during which he stated:

[RAWLS:]      If you look at the progress that we've made over the last six quarters in terms of our revenues and our expanding gross margins, it is really a function of demand in the industry, of having the right products, developing new products. And at this point, we are the largest supplier of fiber optic components in the world. We have the broadest product line and we have the broadest customer base.

*      *      *

If you look down at the bottom of this chart, in the bottom left, you see the picture of the ROADMs, the wavelength selective switch, or the WSS. This is the fastest-growing product on the planet for optics. . . .

So the demand has been incredibly strong, and we have been at capacity and own allocation now for – oh, I don't know, the last five quarters, maybe six quarters, in this product. It's a very exciting space.

*      *      *

This slide is one that is intuitive to most of you, I think, and that is – and you've heard the presentations from our customers. I don't care whether they're Cisco or one of the telecom companies – it's all about IP traffic. It's all about video traffic. It's the growth in these areas, and it's – it is mindbending, right? It is like, good golly.

Now it's all about HD, but it's HD on bigger screens. And it's – next year, it's going to be, we are going to have more applications like Netflix, who is now downloading videos to everybody. Well, there are competitors entering the business for Netflix.

And now it's not just going to be just iPads that people are going to be watching them on, but at CES this last week, there were 50 companies that introduced tablet computers, right? So it's a very exciting time for IP traffic for mobile bandwidth. Video is exploding with growth rates of more than 100% a year.

And the lower-right corner is the one that many people don't think about when they think about optics, and that's about data center optics. Remember, 40% of our business is data center. And our data center business over the last six quarters has actually grown as fast, actually slightly faster, than our telecom business, like 15% a quarter versus 14% per quarter for six quarters.

*      *      *

So we have come from almost nowhere in this business in the last six or seven fiscal quarters to now number one in market share.

*      *      *

The question was why have some of our competitors had indigestion and we haven't? It's a couple of things. One is, we have been taking market share. You've seen the slide earlier about market share and our expansion of market share over the last five years, and I think that's – we are proud of that.

But I think part of it is our product lines are a little different. We don't have a perfect overlap. You can look at – we are the only guy in this industry that has 40%

data center optics and 60% telecom. Everybody else in the industry is either 100% telecom or 100% data center. So we have a mix of business and drivers in both that make us, I think, very strong in this space. And I think that makes us different.

28.     On February 10, 2011, defendant Rawls attended a Stifel Nicolaus Technology, Communications & Internet Conference call with analysts, media representatives and investors, during which he stated:

> [RAWLS:]     Now, interesting in our overall business though, in the last six quarters we've consistently grown at a rate of about 65% a year, roughly 15% a quarter. Our data center business has actually grown slightly faster than our telecom business.
>
>                              *          *          *
>
> [ANALYST:]  And how sustainable do you think the strength that you're seeing on the LAN/SAN side is at this stage after a very healthy 10 years?
>
> [RAWLS:]     I'm pretty confident in the data center market. I think there's growth for a long time. I think the trend toward virtualization is a powerful force in the data center, because it saves space, it saves equipment, it saves power, it saves people and personnel.

29.     Then, on March 8, 2011, after the market closed, Finisar issued a press release announcing its third quarter fiscal year 2011 results.  The Company reported earnings of $18.8 million, or $0.22 diluted EPS, and revenue of $263.0 million.  The Company further reported its fourth quarter 2011 revenues would be in the range of $235 to $250 million, lower than analysts' estimates.  The release stated in part:

> During the fourth quarter ending April 30, 2011, the Company will be impacted by the full three months of the annual price negotiations with telecom customers that typically take effect on January 1, the 10-day long shutdown at certain customers for Chinese New Year in February, the adjustment of inventory levels at some telecom customers, particularly for products which had previously been on allocation and long lead times, including WSS and ROADM line cards, and a slowdown in business in China overall. Primarily as a result of these factors, the Company indicated that it currently expects revenues for the fourth quarter to be in the range of $235 to $250 million.

30.     On this news, Finisar's stock collapsed $15.43 per share to close at $24.61 per share on March 9, 2010, a one-day decline of nearly 39% on high volume.

31.     The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

1          (a)      Finisar's recent revenue surge was not due solely to organic growth from real

2    end-market demand, but rather it was partially due to an inventory build by the Company's

3    customers.  Due to past supply chain constraints in the optical component industry, Finisar's

4    customers were ordering additional products in order to cover any potential shortages and meet their

5    current needs.  As the supply constraints loosened, the customers were left with an oversupply of

6    inventory and thus would need to decrease the amount of products they ordered from Finisar in order

7    to reduce their inventory levels.

8          (b)      Finisar was experiencing increasing pricing pressures due to intense

9    competition in the industry and, as a result, it was forced to concede to steep discounts in order to

10   retain certain of its customers.  The Company engages in annual price negations in the latter part of

11   each year and the pricing discounts take effect January 1st.

12         (c)      Finisar was experiencing a serious slowdown in business from China.

13   Chinese equipment manufacturers have significantly contributed to the Company's recent success

14   and a slowing in demand from these Chinese companies would have a detrimental effect on the

15   Company's ability to continue growing at unprecedented rates.

16         (d)      Finisar failed to disclose known trends and uncertainties as required by SEC

17   regulations concerning its revenue growth rate.  Finisar's revenue had been rapidly outgrowing its

18   end-market for six quarters.  Nonetheless, given the Company would be unable to maintain its

19   growth at this incredible pace, the Company's past results provided investors with a distorted picture

20   of the Company's potential growth and were not indicative of future operations.

21         32.      As a result of defendants' false statements, Finisar's stock traded at artificially

22   inflated levels during the Class Period.  However, after the above revelations seeped into the market,

23   the Company's shares were hammered by massive sales, sending them down over 43% from their

24   Class Period high.

25                              **LOSS CAUSATION**

26         33.      During the Class Period, as detailed herein, the defendants made false and misleading

27   statements and engaged in a scheme to deceive the market and a course of conduct that artificially

28   inflated the price of Finisar common stock and operated as a fraud or deceit on Class Period

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 9 -

1  purchasers of Finisar common stock by misrepresenting the Company's business and prospects.

2  Later, when the defendants' prior misrepresentations and fraudulent conduct became apparent to the

3  market, the price of Finisar common stock fell precipitously, as the prior artificial inflation came out

4  of the price over time.  As a result of their purchases of Finisar common stock during the Class

5  Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the

6  federal securities laws.

7  **NO SAFE HARBOR**

8  34.    Finisar's verbal "Safe Harbor" warnings accompanying its oral forward-looking

9  statements ("FLS") issued during the Class Period were ineffective to shield those statements from

10  liability.

11  35.    The defendants are also liable for any false or misleading FLS pleaded because, at the

12  time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was

13  authorized and/or approved by an executive officer of Finisar who knew that the FLS was false.

14  None of the historic or present tense statements made by defendants were assumptions underlying or

15  relating to any plan, projection or statement of future economic performance, as they were not stated

16  to be such assumptions underlying or relating to any projection or statement of future economic

17  performance when made, nor were any of the projections or forecasts made by defendants expressly

18  related to or stated to be dependent on those historic or present tense statements when made.

19  **CLASS ACTION ALLEGATIONS**

20  36.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

21  Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired

22  shares of Finisar common stock during the Class Period and who were damaged thereby (the

23  "Class").  Excluded from the Class are defendants, the officers and directors of the Company, at all

24  relevant times, members of their immediate families and their legal representatives, heirs, successors

25  or assigns and any entity in which defendants have or had a controlling interest.

26  37.    The members of the Class are so numerous that joinder of all members is

27  impracticable.  Finisar stock was actively traded on the NASDAQ.  While the exact number of Class

28  members is unknown to plaintiff at this time and can only be ascertained through appropriate

1    discovery, plaintiff believes that there are hundreds of members in the proposed Class.  Record

2    owners and other members of the Class may be identified from records maintained by Finisar or its

3    transfer agent and may be notified of the pendency of this action by mail, using the form of notice

4    similar to that customarily used in securities class actions.  Finisar has over 89 million shares of

5    stock outstanding.

6         38.    Plaintiff's claims are typical of the claims of the members of the Class as all members

7    of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is

8    complained of herein.

9         39.    Plaintiff will fairly and adequately protect the interests of the members of the Class

10   and has retained counsel competent and experienced in class and securities litigation.

11        40.    Common questions of law and fact exist as to all members of the Class and

12   predominate over any questions solely affecting individual members of the Class.  Among the

13   questions of law and fact common to the Class are:

14              (a)    whether the 1934 Act was violated by defendants;

15              (b)    whether statements made by defendants omitted and/or misrepresented

16   material facts about the business, operations and management of Finisar;

17              (c)    whether the price of Finisar common stock was artificially inflated; and

18              (d)    the extent of damage sustained by Class members and the appropriate measure

19   of damages.

20        41.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class

21   sustained damages from defendants' wrongful conduct.

22        42.    Plaintiff will adequately protect the interests of the Class and has retained counsel

23   who are experienced in class action securities litigation.  Plaintiff has no interests which conflict

24   with those of the Class.

25        43.    A class action is superior to other available methods for the fair and efficient

26   adjudication of this controversy.

27

28

**COUNT I**

**For Violation of §10(b) of the 1934 Act and Rule 10b-5**
**Against All Defendants**

44.     Plaintiff incorporates ¶¶1-43 by reference.

45.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)      employed devices, schemes and artifices to defraud;

(b)      made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)      engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Finisar common stock during the Class Period.

47.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Finisar common stock.  Plaintiff and the Class would not have purchased Finisar common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by defendants' misleading statements.

**COUNT II**

**For Violation of §20(a) of the 1934 Act**
**Against All Defendants**

48.     Plaintiff incorporates ¶¶1-47 by reference.

49.     The Company and the defendants acted as controlling persons of Finisar within the meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, and their ownership of Finisar stock, the Company and the defendants had the power and authority to cause Finisar to engage in the wrongful conduct complained of herein.  Finisar controlled the Company,

1  the defendants and all of its employees.  By reason of such conduct, defendants are liable pursuant to

2  §20(a) of the 1934 Act.

3                                    **PRAYER FOR RELIEF**

4          WHEREFORE, plaintiff prays for judgment as follows:

5          A.      Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

6          B.      Awarding plaintiff and the members of the Class damages, including interest;

7          C.      Awarding plaintiff reasonable costs and attorneys' fees; and

8          D.      Awarding such equitable/injunctive or other relief as the Court may deem just and

9  proper.

10                                       **JURY DEMAND**

11         Plaintiff demands a trial by jury.

12  DATED:  March ___, 2011                    ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
13                                             DENNIS J. HERMAN

14

15                                             _____

16                                                    DENNIS J. HERMAN

17                                             Post Montgomery Center
                                               One Montgomery Street, Suite 1800
                                               San Francisco, CA  94104
18                                             Telephone:  415/288-4545
                                               415/288-4534 (fax)
19
                                               ROBBINS GELLER RUDMAN
20                                                & DOWD LLP
                                               DARREN J. ROBBINS
21                                             DAVID C. WALTON
                                               CATHERINE J. KOWALEWSKI
22                                             655 West Broadway, Suite 1900
                                               San Diego, CA  92101
23                                             Telephone:  619/231-1058
                                               619/231-7423 (fax)
24
                                               HOLZER HOLZER & FISTEL, LLC
25                                             COREY D. HOLZER
                                               MICHAEL I. FISTEL, JR.
26                                             MARSHALL P. DEES
                                               200 Ashford Center North, Suite 300
27                                             Atlanta, GA  30338
                                               Telephone:  770/392-0090
28                                             770/392-0029 (fax)

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS              - 13 -

1

2 DYER & BERENS LLP
 ROBERT J. DYER III

3 JEFFREY A. BERENS
 303 East 17th Avenue, Suite 300

4 Denver, CO  80203
 Telephone:  303/861-1764

5 303/395-0393 (fax)

6 Attorneys for Plaintiff

7 Document1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28