United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE FINISAR CORPORATION
SECURITIES LITIGATION

CASE NO. 5:11-cv-01252 EJD

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

[Docket Item No(s). 56]

_____/

In this action alleging violation of securities laws, Defendants Finisar Corporation ("Finisar"), Jerry S. Rawls ("Rawls"), Eitan Gertel ("Gertel") and Kurt Adzema ("Adzema")[1] move to dismiss the Consolidated Class Action Complaint ("CAC") filed by Lead Plaintiff Martin Derchi-Russo ("Plaintiff"). See Docket Item No. 56. The court has carefully reviewed the moving, opposing and reply papers filed for this motion. Defendants' Motion to Dismiss will be granted for the reasons explained below.

**I.  BACKGROUND**

According to the CAC, Finisar is a technology company that develops and sells fiber optic subsystems and components that enable high-speed voice, video and data communications for telecommunications, networking, storage, wireless and cable television applications. See CAC,

---

[1] In this Order, Finisar, Rawls, Gertel and Adzema are referred to collectively as "Defendants."

1
CASE NO. 5:11-cv-01252 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Docket Item No. 53, at ¶ 2. The individual defendants each served as directors of Finisar during the time period relevant to this action: Gertel was the Chief Executive Officer, Rawls was the Chairman of the Board, and Adzema was the Chief Financial Officer. Id. at ¶¶ 23-25.

Prior to the class period of December 1, 2010, to March 8, 2011, Finisar experienced six consecutive fiscal quarters of revenue growth, purportedly driven by sales of its key wavelength selective switches ("WSS") and reconfigurable optical add/drop multiplexers ("ROADM") linecard telecom products. Id. at ¶¶ 1, 34, 36. But Plaintiff alleges that Defendants misled investors as to the nature of that growth. Id. at 3. According to Plaintiff, Defendants did this by denying that Finisar's revenue increase was the result of a short-term, unsustainable inventory build-up by customers rather than the result of increased demand for Finisar products. Id. To that end, Plaintiff contends Defendants knew by the beginning of the class period that customers' fears of over-supply constraints had not materialized but failed to disclose that information, and also failed to disclose that customers would be reducing their orders from Finisar as a result. Id. at 4.

For example, Plaintiff alleges that Defendants made certain misleading statements about its performance during the second quarter of fiscal year 2011:

- On March 4, 2010, Rawls stated that Finisar had "visibility" on firm non-cancelable ROADM orders "more than a quarter" ahead.
- On December 1, 2010, Finisar announced that "the market environment continued to be very strong for Finisar, driven by increased demand for a broad range of LAN/SAN and metro/telecom products." Adzema and Rawls stated that results are driven by "strong growth in the sales of WSS and ROADM linecards."
- On December 2, 2010, Gertel stated that Finisar had "visibility as to what people have" and "[a]s far as we know we haven't seen any inventory issues with our product with our customers." Gertel also stated that "by far the majority of customers [are] expediting products and [it] doesn't look to us, [its] not visible to us at all, all [of] these quarters if they are building any inventory."
- On January 11, 2011, Rawls stated that "for most - some of our customers, we get very specific rolling production forecasts that go out as far as 12 months as to what - that are

2
CASE NO. 5:11-cv-01252 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

updated biweekly. So we understand their business, at least what they expect for their business." He also commented that "the progress that we've made over the last six quarters in terms of our revenues . . . it is really a function of demand in the industry."

- On February 10, 2011, Rawls stated that Finisar was in a "very strong demand environment." Id. at ¶¶ 41-43, 59, 60, 62, 63, 72-73, 77, 78.

Plaintiff alleges that, despite the statements listed above, Finisar learned through the course of annual negotiations with customers that Finisar was experiencing a serious slowdown in business, particular from customers in China. Id. at ¶ 10. Defendants also knew after its customer negotiations were completed on December 1, 2010, that Finisar was experiencing increased pricing pressures due to intense competition, and that Finisar was forced to steeply discount pricing in order to retain certain of its customers. Id. at ¶ 11.

On March 8, 2011, Finisar issued a press release indicating that, during the fourth quarter of fiscal year 2011 (February 1, 2011, through April 30, 2011), Finisar revenues would be impacted by certain developments, including: (1) the annual price negotiations, (2) a shutdown at certain customers for Chinese New Year, (3) the adjustment of inventory levels at some customers, including inventory of WSS and ROADM line cards, and (4) a slowdown in business in China overall. Id. at 53. When making this disclosure, Rawls stated that Finisar had seen a slowdown in China and "reduced order rates" for "a couple of months." Id. at ¶ 55.

On this news, Finisar's stock price, which had more than doubled over the class period, erased nearly all of those gains in one day, falling from its previous close of $40.04 to $24.61 at the close of March 9, 2011. Id. at ¶¶ 6, 100. The financial news media reported on Finisar's March disclosure and the fallen stock price. Id. at ¶¶ 57-58.

Plaintiff further alleges that during the more than three months in which Defendants knew of the inventory build-up and slowdown in the Chinese market prior to disclosing the same on March 8, 2011, Finisar conducted a substantial stock offering garnering over $118 million in gross proceeds. Id. at ¶ 87. In addition, Rawls, Gertel and Adzema sold over 259,000 shares of their personally held Finisar stock for proceeds of over $6.6 million. Id. at ¶ 88.

On January 20, 2012, Plaintiff filed the CAC alleging violations of Sections 10(b) and 20(a)

3
CASE NO. 5:11-cv-01252 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1  of the Securities Exchange Act of 1934 ("Exchange Act") on behalf of all persons who purchased
2  Finisar stock between December 1, 2010, and March 8, 2011. This motion followed.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(b)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). "Material which is properly submitted as part of the complaint may be considered." Twombly, 550 U.S. at 555. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

### B.   Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act

Because the CAC contains causes of action which arise under the Exchange Act, the Private Securities Litigation Reform Act of 1995 ("PSLRA") also applies. 15 U.S.C. § 78u-4(b)(1) (applying the provisions to "any private action arising under this chapter [Exchange Act]" alleging

4
CASE NO. 5:11-cv-01252 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

false or misleading statement). Thus, Plaintiff must satisfy the heightened pleading standards set forth by Rule 9(b) of the Federal Rules of Civil Procedure and by the PSLRA itself, the latter of which imposes "formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P. 12(b)(6)." Metzler Inv. Gmbh v. Corinthina Colls., Inc., 540 F.3d 1049, 1055 (9th Cir. 2008); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009).

In that regard, Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In addition, the PSLRA requires a plaintiff alleging securities fraud to "plead with particularity both falsity and scienter." Zucco Partners, 552 F.3d at 990 (citation omitted). With respect to falsity, the complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). To the extent an allegation is based on information and belief, "the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In doing so, the plaintiff shall "reveal 'the sources of [his] information.'" In re Daou Sys., Inc. Sec. Litig., 411 F.3d 1006, 1015 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 975 (9th Cir. 1999)). With respect to scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). That is, plaintiffs must plead with particularity the facts evidencing "the defendant's intention 'to deceive, manipulate, or defraud.'" Tellabs Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 & n. 12 (1976)). To satisfy the rigorous pleading standards of the PSLRA, the complaint's scienter allegations must give rise not simply to a plausible inference of scienter, but rather to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 314.

### III. DISCUSSION

The first cause of action asserted in the CAC comes under the Section 10(b) of the Exchange Act and its accompanying rule promulgated by the Securities and Exchange Commission, Rule 10b-5. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. The elements of a cause of action under 10b-5 are: (1) a material misrepresentation or omission made by the defendant; (2) scienter; (3) a

5
CASE NO. 5:11-cv-01252 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. Janus Capital Group, Inc. v. First Derivative Traders, 131 S.Ct. 2296, 2301 n.3 (2011).

For 10b-5, a statement or omission is misleading "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 985 (9th Cir. 2008) (quoting Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002)). To satisfy the materiality requirement, a plaintiff must allege a statement or omission that a reasonable investor would have considered significant in making investment decisions. See Basic v. Levinson, 485 U.S. 224, 231-32 (1988) (adopting the standard in TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976), for § 10(b) and Rule 10b-5 actions). Similarly, an omission is material if there is a substantial likelihood that the "disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of the information made available." TSC Indus., 426 U.S. at 449. Materiality is a mixed question of law and fact. See id. at 450.

Here, Defendants argue that the CAC fails because Plaintiff did not plead facts demonstrating that Defendants, or any one of them, made a material misrepresentation or omission. Defendants contend that, since the only affirmative false statements alleged in the CAC pertain to Finisar's performance during the second quarter of fiscal year 2011, and since that quarter had already ended by the start of the class period, Finisar had no duty to opine on how it had achieved its previously earned revenues or explain that those conditions would not continue throughout the class period. Defendants further argue that neither Finisar nor any of the individual defendants made statements indicating that the growth in previous quarters was organic or sustainable, that statements regarding "demand" merely refer to an increase in sales, and that general statements of "strong demand" amount to non-actionable puffery. Furthermore, Defendants argue that the CAC does not contain facts contradicting Gertel's December 2nd statement regarding the absence of inventory build-up; a statement that was made before the conclusion of the annual negotiations and before the time Finisar allegedly saw signs of weakness in China.

For his part, Plaintiff argues that he specifically identified false statements and omissions

concerning inventory issues and the sustainability of the company's growth. For example, the CAC alleges that Gertel's December 2nd regarding the source of Finisar's growth and the assurances that "we haven't seen any inventory issues with our product with customers" was materially false because Gertel knew at the time that Finisar's growth was due to a buildup in customer inventory. Plaintiff also argues that he sufficiently plead facts describing an omission of material information. Specifically, Plaintiff cites to Defendants' statement describing an "incredibly strong demand" for its telecom products which, at the same time, failed to disclose that the referenced "demand" was really the result of inventory build-up due to customers' fears of short-term supply constraints and that the demand growth.

On the issue of Gertel's statement, the court agrees with Defendants that Plaintiff has failed to sufficiently plead facts describing a false statement or material omission under the applicable standard. In doing so, the court observes the full text of Gertel's December 2nd statement in response to the question, "Can you help us understand how it's possible for the company to not only sustain that but continue to grow faster than the end markets?" Gertel stated as follows:

> So if you look at the market, you see the fundamentals for growth are there. People need more higher bit rate products, more sophisticated products to address the cost reduction that the network needs and the demand continues.
>
> As far as we know we haven't seen any inventory issues with our product with our customers. Our product - our business is 60/40, basically 40% is LAN/SAN business, 60% is telecom. On the LAN/SAN side, by far the majority of our sales is a vendor-managed inventory. So we have visibility to what people have. There is no reason for them to have inventory because we own the inventory. So we're pretty safe with that.
>
> And on the telecom side, look, there can be one or two guys who try to build their own inventory, but by far the majority of the customers expediting products and doesn't look to us, not visible to us at all, all these quarters if they are building any inventory.

See CAC at ¶ 67.

Based on the full text as stated above, Gertel's statement cannot form the basis of this cause of action. Indeed, while Plaintiff alleges that Gertel knew at the time he made this statement that Finisar's customers were building inventory based on his use of the phrase "visibility as to what people have," it is nonetheless apparent that the "visibility" reference was made with regards to the

7
CASE NO. 5:11-cv-01252 EJD
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1 LAN/SAN products, which Plaintiff has not alleged are at issue here. Similarly, while Gertel
2 acknowledged that some telecom customers may be building inventory, this statement is insufficient
3 to show that Gertel actually knew the extent to which the telecom customers were building inventory
4 on December 2, 2010. Additionally, Gertel made this statement based on what he knew at the time
5 about inventory issues - before the results of the price negotiations and before February, 2011, which
6 is the time period for which the CAC alleges that Finisar later disclosed that it had seen signs of
7 weakness in China.

8 In addition, Rawls' January 11th statement is insufficient to show that: (1) Finisar's
9 customers were actually building inventory, or (2) that Finisar knew about an inventory build-up
10 such that Gertel's statement that ("As far as we know we haven't seen any inventory issues.") was
11 false. Here, while Plaintiff does attribute to Rawls a statement concerning "specific rolling
12 production forecasts" that are "updated biweekly" and extend out "as far as 12 months" in the future,
13 the CAC is missing certain critical facts necessary to meet the applicable pleading burden: there are
14 no allegations indicating that the referenced forecasts support an inventory buildup, that these
15 forecasts were accurate, or that companies supposedly building up inventory were the same
16 companies supplying these forecasts to Finisar.

17 Moreover, even if Rawls stated, as Plaintiff alleges, that Finisar had "visibility" on ROADM
18 orders "more than one quarter ahead" because the lead time on the product was 14 to 16 weeks,
19 Plaintiff does not also allege that the lead time was still at 14 to 16 weeks during the class period,
20 which was eight to twelve months later.

21 In sum, the CAC does not contain sufficient facts to show that Gertel's December 2nd
22 statement was false.

23 It is also worth noting that, based on the allegations contained in the CAC, it is not apparent
24 that Defendants were obligated to disclose that the demand for Finisar's product was the result of an
25 inventory build-up that could not be sustained. Here, as detailed above, Plaintiff alleges that
26 Defendants issued a series of statements about customer demand. These statements, however, are
27 not alleged to be false as stated; instead, Plaintiff alleges and now argues that those statements omit
28 material facts necessary for an investor to understand the true nature of the demand for Finisar

products, and that investors were misled by the absence of these facts.

Although a company is not required to disclose internal forecasts, a duty to disclose may arise when disclosure is necessary in order to render an affirmative statement not misleading. In re Verifone Sec Litig., 11 F.3d 865, 869 (9th Cir. 1993). But at the same time, "Rule 10b-5 . . . in terms prohibit[s] *only* misleading and untrue statements, not statements that are incomplete." Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002) (emphasis preserved). "Often, a statement will not mislead even if it is incomplete or does not include all relevant facts." Id. Thus, in order to survive a motion to dismiss under the heightened pleading standards of the [PSLRA], the plaintiffs' complaint must specify the reason or reasons why the statements made [] were misleading or untrue, not simply why the statements were incomplete." Id.

Here, the statements about demand contained in the CAC are not rendered misleading for the purposes of the PSLRA simply because they not clarify that the demand for Finisar product may have been due to customer inventory build-up rather than purchases for immediate manufacture. Again, in order to be actionable under the securities laws, an omission must be misleading; "in other words, it must *affirmatively* create an impression of a state of affairs that differs in a material way from the one that actually exists." Id. (emphasis added). The CAC does not explain how the statements affirmatively created some alternate impression about the demand for Finisar product.[2] Accordingly, the CAC does not contain facts showing these statements are actionable rather than merely incomplete.

For the reasons explained, the court finds that the CAC does not plead sufficiently particular facts to demonstrate that Defendants made the type of material misrepresentation or omission sufficient to support a cause of action under 10b-5. The first cause of action asserted in the CAC will therefore be dismissed. This result also requires dismissal of the cause of action under Section 20(a) of the Exchange Act. See Zucco Partners, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily, however, if a plaintiff fails to adequately plead a primary violation of section

---

[2] In that regard, the circumstances presented here seem to fit within the example provided by the Brody court: "For example, if a company reports that its sales have risen from one year to the next, that statement is not misleading even though it does not include a detailed breakdown of the company's region by region or month by month sales." Brody, 280 F.3d at 1006 n.8.

10(b)."). These dismissals will be with leave to amend.[3]

## IV. ORDER

Based on the foregoing, Defendants' Motion to Dismiss (Docket Item No. 56) is GRANTED. The causes of action in the CAC are DISMISSED WITH LEAVE TO AMEND. Plaintiff may file an amended complaint on or before **February 6, 2013.**

The court schedules this action for a Case Management Conference on **March 8, 2013 at 10:00 a.m.** The parties shall file an updated Joint Case Management Statement on or before **March 1, 2013.**

**IT IS SO ORDERED.**

Dated: January 16, 2013



EDWARD J. DAVILA
United States District Judge

---

[3] In light of the determination on the issue of material misrepresentation or omission, the court does not reach Defendants' alternative arguments with respect to loss causation and scienter. See In re Pinnacle Systems, Inc., Nos. C00-2596 MMC, 00-2912MMC, 00-2757MMC, 00-2672MMC, 2002 U.S. Dist. LEXIS 22555, at *4 n.2, 2002 WL 31655187 (N.D. Cal. Nov. 18, 2002).