1  IAN D. BERG   (Bar No. 263586)
   TAKEO A. KELLAR   (Bar No. 234470)
2  ABRAHAM, FRUCHTER
      & TWERSKY, LLP
3  11622 El Camino Real, Suite 100
   San Diego, CA 92130
4  Tel:     (858) 764-2580
   Fax:     (858) 764-2582
5  *iberg@aftlaw.com*
   *tkellar@aftlaw.com*
6
   *Counsel for Lead Plaintiff Oklahoma*
7  *Firefighters Pension and Retirement System*

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12 | In re FINISAR CORPORATION | Case No. 5:11-CV-01252-EJD |
   | SECURITIES LITIGATION | |
13 | | CLASS ACTION |
14 | | **NOTICE OF MOTION AND MOTION** |
   | | **FOR CLASS CERTIFICATION;** |
15 | | **MEMORANDUM OF POINTS AND** |
   | | **AUTHORITIES IN SUPPORT** |
16 | | **THEREOF** |
17 | | Date:        November 30, 2017 |
   | | Time:        9:00 a.m. |
18 | | Courtroom:   4 |
   | | Judge:       Hon. Edward J. Davila |
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ............................................................................. 1

ISSUES TO BE DECIDED (Local Rule 7-4(a)(3)) ......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 3

III.  THE PROPOSED CLASS REPRESENTATIVE ...................................................... 5

IV.   ARGUMENT ............................................................................................................. 6

      A.   The Proposed Class Action Satisfies Rule 23(a) ............................................ 7

           1.   Numerosity: The Class Is Sufficiently
                Numerous That Joinder Is Impracticable .............................................. 7

           2.   Commonality: Common Questions Of Law
                And Fact Are Shared Among The Class .................................................. 9

           3.   Typicality: The Claims Of The Proposed
                Class Representative Are Typical Of The
                Claims Of Other Class Members ............................................................ 10

           4.   Adequacy: The Proposed Class
                Representative Will Fairly And Adequately
                Protect The Interests Of The Class ........................................................ 11

      B.   The Proposed Class Satisfies Rule 23(b)(3) .................................................. 13

           1.   Common Questions Predominate ............................................................ 13

                a.   The Proposed Class Representative And All Class
                     Members Are Unified By An Interest In Proving
                     The Same Common Course Of Conduct ...................................... 14

                b.   There Are No Individual Issues, Such As Reliance,
                     That Preclude A Finding Of Predominance ................................ 14

                c.   Reliance May Be Presumed For Class Members
                     Under The "Fraud On The Market" Doctrine .............................. 15

                     (1)   Finisar Traded On An Efficient Market ........................... 15

                     (2)   The *Cammer* Factors Establish Market
                           Efficiency For Finisar Stock ............................................. 18

| | | (3) | The Fifth *Cammer* Factor, "Cause And Effect," Supports A Finding Of Market Efficiency | 19 |
| | | (4) | Other Well-Accepted Factors Support Finding An Efficient Market | 20 |
| | d. | | Class-Wide Damages Are Measurable | 22 |
| | 2. | | A Class Action Is Superior To Other Available Methods For Resolving These Claims | 23 |
| V. | CONCLUSION | | | 24 |

# TABLE OF AUTHORITIES

<u>Case</u>                                                                                            <u>Page</u>

*Amchem Prods. Inc. v. Windsor,*
   521 U.S. 591 (1997)...............................................................................3, 6, 7, 13

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
   568 U.S. (2013)................................................................................................7, 15

*Aranaz v. Catalyst Pharm. Partners, Inc.,*
   302 F.R.D. 657 (S.D. Fla. 2014).................................................................18, 19

*Basic Inc. v. Levinson,*
   485 U.S. 224 (1988).............................................................................3, 14, 15, 16

*Billhofer v. Flamel Techs., S.A.,*
   281 F.R.D. 150 (S.D.N.Y. 2012) ......................................................................20

*Binder v. Gillespie,*
   184 F.3d 1059 (9th Cir. 1999) ...........................................................................17

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975) .............................................................2, 3, 7, 9, 10, 14

*Cammer v. Bloom,*
   711 F. Supp. 1264 (D.N.J. 1989) ..........................................................16, 17, 18, 19

*Cheney v. Cyberguard Corp.,*
   213 F.R.D. 484 (S.D. Fla. 2003)........................................................................19

*Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (2013).......................................................................................22

*Epstein v. MCA, Inc.,*
   50 F.3d 644 (9th Cir. 1995) .................................................................................2

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974).............................................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.,*
   131 S. Ct. 2179 (2011)........................................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.,*
   134 S. Ct. 2398 (2014)...................................................................................3, 15

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ..........................................................6, 9, 10, 11, 23

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992). ............................................................................10

*Harris v. Palm Springs Alpine Estates, Inc.,*
   329 F.2d 909 (9th Cir. 1964). ..........................................................................8

*Hicks v. Morgan Stanley & Co.,*
   2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) ...............................13

*Hodges v. Akeena Solar, Inc.,*
   274 F.R.D. 259 (N.D. Cal. 2011).................................................................7, 10

*In re Accelr8 Tech. Corp. Sec. Litig.,*
   147 F. Supp. 2d 1049 (D. Colo. 2001)...............................................................18

*In re Alco Int'l Group, Sec. Litig.,*
   158 F.R.D. 152 (S.D. Cal. 1994) .......................................................................14

*In re Cooper Co. Inc. Sec. Litig.,*
   254 F.R.D. 628 (C.D. Cal. 2009) ..............................................2, 3, 8, 14, 23, 24

*In re Diamond Foods, Inc.,*
   295 F.R.D. 240 (N.D. Cal. 2013).............................................15, 16, 18, 19, 20, 22

*In re DVI, Inc. Sec. Litig.,*
   249 F.R.D. (E.D. Pa. 2008)...............................................................................17

*In re DVI, Inc. Sec. Litig.,*
   639 F.3d 623 (3d Cir. 2011)...............................................................................17

*In re DJ Orthopedics, Inc. Sec. Litig.,*
   2003 U.S. Dist. LEXIS 21534 (S.D. Cal. Nov. 16, 2003) .......................................23

*In re Heritage Bond Litig.,*
   2004 U.S. Dist. LEXIS 15386 (C.D. Cal. July 12, 2004) .......................................23

*In re Intuitive Surgical Sec. Litig,*
   2016 U.S. Dist. LEXIS 178148 (N.D. Cal. Dec. 22, 2016)...................8, 10, 20, 22

*In re Juniper Networks, Inc. Sec. Litig.,*
   264 F.R.D. 584 (N.D. Cal. 2009)....................................................................7, 9

*In re LDK Solar Sec. Litig.,*
   255 F.R.D. 519 (N.D. Cal. 2009)........................................................10, 11, 14

*In re Micron Techs., Inc. Sec. Litig.,*
   247 F.R.D. 627 (D. Idaho 2007) ......................................................................23

*In re Montage Tech. Grp. Ltd. Sec. Litig.*
   259 F.R.D. 656 (N.D. Ga. 2009)......................................................10, 12, 21

*In re THQ Inc. Sec. Litig.,*
   2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002)................................9, 13

*In re VeriSign Inc. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ........................................2, 7, 8, 9, 12

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ...............................................................................12

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) ...............................................................................20

*La Mar v. H&B Novelty & Loan Co.*,
  489 F.2d 461 (9th Cir. 1973) ...............................................................................13

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ...............................................................................11

*Leyva v. Medline Industries, Inc.*,
  716 F.3d 510 (9th Cir. 2013) ...............................................................................21

*Lumen v. Anderson*,
  280 F.R.D. 451 (W.D. Mo. 2012) ...............................................................................15

*McIntire v. ChinaMediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014).............................................................................20

*Miller v. Thane Int'l, Inc.*,
  615 F.3d 1095 (9th Cir. 2010) ...............................................................................16

*Nguyen v. Radient Pharmaceuticals Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ...............................................................................16, 17, 20

*Petrie v. Elec. Game Card*,
  308 F.R.D. 336 (C.D. Cal. 2015)...............................................................................21

*Rodriguez v. Carlson*,
  166 F.R.D. 465 (E.D. Wash. 1996) ...............................................................................9

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) ...............................................................................15, 21

*W. Palm Beach Police Pension Fund, et al. v. DFC Global Corp. et al.*,
  2016 U.S. Dist. LEXIS 102304 (E.D. Pa. Aug. 4, 2016)...............................................................................17

*Yamner v. Boich*,
  1994 U.S. Dist. LEXIS 20849 (N.D. Cal. Sept. 15, 1994) ...............................................................................8, 10

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P. 23 ...............................................................................*passim*

H.R. CONF. REP. No. 104-369 (1995) ...............................................................................12

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Lead Plaintiff" or "Oklahoma Firefighters") moves this Court for an order certifying the above-captioned action as a class action pursuant to Federal Rule of Civil Procedure 23, appointing Lead Plaintiff as the Class Representative, and designating Abraham, Fruchter & Twersky, LLP as counsel for the certified Class.  The Motion is set for hearing at 9:00 a.m. on November 30, 2017, or as soon thereafter as the matter may be heard, before the Honorable Edward J. Davila of the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 4, 280 South 1st Street, San Jose, CA 95113.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in Support Thereof, the Declaration of Ian D. Berg ("Berg Decl.") and exhibits ("Ex.") thereto, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

1.      Whether this action should be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2.      Whether Lead Plaintiff Oklahoma Firefighters should be appointed as the Class Representative.

3.      Whether Abraham, Fruchter & Twersky, LLP should be appointed as Class Counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff respectfully submits this memorandum of law in support of its motion for (i) class certification pursuant to Fed. R. Civ. P. ("Rule") 23(a) and (b)(3); (ii) the appointment of Lead Plaintiff as Class Representative; and (iii) the appointment of Abraham, Fruchter & Twersky, LLP as Class Counsel pursuant to Rule 23(g).

## I.      INTRODUCTION

Lead Plaintiff seeks certification of a class of all persons and entities who purchased or acquired the publicly traded common stock of Finisar Corporation ("Finisar" or the "Company")

during the period from December 2, 2010 through March 8, 2011, inclusive (the "Class Period"), and who were damaged thereby (the "Class").[1]

The Ninth Circuit and California District Courts consistently endorse the use of class actions in adjudicating securities fraud claims, such as in this case.  *See Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975) ("The availability of the class action to redress [security fraud claims] has been consistently upheld . . . in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.") (citation omitted); *In re VeriSign Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438, at *31-32 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation . . ."). Indeed, "[a]s the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'"  *In re Cooper Co. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) (quoting *Epstein v. MCA, Inc*., 50 F.3d 644, 668 (9th Cir. 1995)).

The allegations set forth in the Complaint make clear that this action is well suited for class treatment.[2]  First, numerosity is satisfied because the Class consists of thousands of similarly situated investors that purchased Finisar common stock at artificially inflated prices during the Class Period.  Second, numerous legal and factual questions are common to all Class Members.  Third, Lead Plaintiff's claims are typical of those of the proposed Class.  And fourth, Oklahoma Firefighters is a sophisticated institutional investor with a significant financial interest in the case and has been committed to overseeing and managing this litigation fairly and adequately to protect the interests of the Class.

Furthermore, this action satisfies Rule 23(b)(3) as Lead Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, and the common questions of law and fact predominate over any individual questions.  When investors allege, as is alleged here, that

---

[1]  Excluded from the Class are (i) Defendants Finisar, Eitan Gertel, and Jerry S. Rawls (collectively, "Defendants"); (ii) the officers and directors of the Company at all relevant times, (iii) members of Defendants' immediate families and their legal representatives, heirs, successors, or assigns; and (iv) any entity in which Defendants have or had a controlling interest.

[2]  "Complaint" refers to the Second Amended Consolidated Class Action Complaint For Violations of the Federal Securities Laws, filed on July 15, 2016 (Dkt. No. 93).

defendants' misstatements and omissions perpetrated a "fraud on the market," questions regarding whether misleading conduct occurred, whether that conduct occurred with the requisite scienter, and whether that conduct caused investors to suffer losses predominate over individual questions. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging . . . securities fraud."); *Cooper*, 254 F.R.D. at 639 ("The Ninth Circuit in *Blackie* found that common questions of law and fact related to misrepresentations and omissions in securities fraud suits could predominate over individual discrepancies between class members regarding reliance, loss causation, and damages.") (citing *Blackie*, 524 F.2d at 905-6)).

Moreover, the Supreme Court has found a rebuttable presumption of class-wide reliance under the "fraud-on-the-market" doctrine, when the security trades in an efficient market. *See Halliburton Co. v. Erica P. John Fund, Inc.,* 134 S. Ct. 2398, 2408 (2014) ("*Halliburton II*"); *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1998). There can be no legitimate dispute as to "market efficiency" here, as Finisar's common stock was traded on NASDAQ throughout the Class Period. Additionally, as detailed in the expert report of Dr. Michael Hartzmark ("Hartzmark Report"), attached as Ex. 1 to the Berg Decl., Finisar's common stock easily satisfies the additional factors considered by courts in evaluating market efficiency.

Finally, given that Class members are geographically dispersed throughout the country and unlikely to bring small individual claims, a class action is superior to a multitude of individual actions. By certifying this case as a class action, this Court will allow Lead Plaintiff and thousands of other investors to prosecute their claims efficiently and effectively. Accordingly, Lead Plaintiff respectfully requests that this Court certify the proposed Class, appoint Oklahoma Firefighters as Class Representative, and appoint Abraham, Fruchter & Twersky, LLP as Class Counsel.

## II.    STATEMENT OF FACTS

Finisar is a technology company that develops and sells fiber optic subsystems and components that enable high-speed voice, video and data communications for

1   telecommunications, networking, storage, wireless, and cable TV applications.  ¶¶2, 30.[3]  Prior

2   to the Class Period, Finisar experienced six consecutive fiscal quarters of revenue growth.  ¶¶30-

3   33.  This growth was primarily driven by the sales of its reconfigurable optical add/drop

4   multiplexers ("ROADM") and wavelength selective switches ("WSS") linecard telecom

5   products.  *Id.*  During this time, and throughout the Class Period, market analysts repeatedly

6   questioned whether, and to what extent, Finisar's extraordinary growth and increased sales were

7   attributable to an inventory build-up by customers rather than real end-market demand.  ¶3.

8   Finisar did not deny or disaffirm these suspicions but rather repeatedly flaunted its visibility of

9   customer needs and inventory levels.  ¶¶41-44.

10   Before and during the Class Period, Finisar also necessarily learned about customer

11   inventory and demand during its annual three month pricing negotiations with customers.  ¶¶5,

12   45-50.  Such negotiations take place each year from September through November and go into

13   effect January 1 of the following year.  *Id.*  As alleged in the Complaint, all of the annual

14   negotiations for 2011 concluded by the start of the Class Period.  ¶¶11, 60.

15   In the face of analyst speculation and questions, Defendants remained silent regarding the

16   possibility of an inventory build-up until the start of the Class Period on December 2, 2010.  ¶38.

17   Accordingly, Finisar's stock price remained relatively constant prior to the Class Period, and it

18   did not rise in proportion to the Company's record-setting revenue growth.  ¶¶13, 33, 35-36.

19   That changed on December 2, 2010, when Finisar executives were asked how its component

20   sales growth could be outpacing end-market growth, and if that would signal a looming

21   inventory correction.   This time, rather than remain silent on the issue, Defendant Gertel

22   affirmatively and falsely assured the market that there was no inventory build-up and thus no

23   likely inventory correction.  ¶¶42, 62.  Specifically, Defendant Gertel stated:

24      "So, *if you look at the market, you see the fundamentals for growth are there*.
        People need more high bit rate products, more sophisticated products to address
25      the cost reduction that the network needs and the demand continues.

26      *As far as we know we haven't seen any inventory issues with our product with
        our customers.* Our product – our business is 60/40, basically 40% is LAN/SAN

27

28   ---
     [3] "¶" refers to paragraph(s) of the Complaint.

business, 60% is telecom. On the LAN/SAN side, by far the majority of our sales is a vendor-managed inventory. ***So we have visibility to what people have***. There is no reason for them to have inventory because we own the inventory. So we're pretty safe with that.

***And on the telecom side***, look, there can be one or two guys who try to build their own inventory, but by far ***the majority of the customers*** expediting products and ***doesn't look to us, not visible to us at all, all these quarters if they are building any inventory***. ¶62 (herein, the "December 2 Statement").

As a result of Gertel's statement denying an inventory build-up, Finisar's common stock shot up from $19.77 per share on December 1, 2010 to its Class Period high of $43.23 per share. ¶13.  This statement also coincided with a substantial stock offering on December 27, 2010 that netted Finisar approximately $118 million in proceeds.  ¶¶15, 67.  Furthermore, Defendant Gertel sold over 201,900 shares of his Finisar stock shortly after the December 2 statement, resulting in proceeds of over $5.17 million.  ¶¶14, 73-75.  These stock sales were notably inconsistent with Defendant Gertel's previous insider transactions.  *Id*.

At the end of the Class Period on March 8, 2011, after the market closed, Finisar conceded that there actually had been an inventory build-up, issuing a press release indicating that its fourth quarter revenues would be significantly lower than projected due to the previously undisclosed inventory build-up at some of the Company's telecom customers and a slowdown in business in China.  ¶78.  When the truth of the inventory build-up and the Company's true financial condition was revealed on March 8, 2011, the price of Finisar stock plummeted $15.43 per share, marking a one-day decline of nearly 39%, on unusually heavy trading volume.  ¶¶68, 81.

III.   **THE PROPOSED CLASS REPRESENTATIVE**

Lead Plaintiff Oklahoma Firefighters was created as a state agency by the Oklahoma state legislature in 1981.  *See* ¶3 of the Declaration of Robert Jones, Executive Director of Oklahoma Firefighters in Support of Motion for Class Certification ("Oklahoma Firefighters Decl."), attached as Ex. 2 to the Berg Decl.  Since then, it has been helping to administer retirement benefits to paid and volunteer firefighters of Oklahoma and their families.  *Id*.  Oklahoma Firefighters purchased Finisar common stock during the Class Period, as set out in the

1    certification previously filed with the Court and submitted again with the Oklahoma Firefighters

2    Decl., and suffered damages as a result of the alleged federal securities law violations.  *Id.*, ¶6.

3            Oklahoma Firefighters stands ready to act as a Class representative in this matter.

4    Oklahoma Firefighters has been appointed lead plaintiff in other securities class actions, and

5    fully understands its responsibilities as a fiduciary of the Class.  *Id.*, ¶4.  Oklahoma Firefighters

6    is committed to overseeing the prosecution of this action on behalf of the Class, providing

7    testimony at deposition and trial, and to overseeing its counsel throughout the litigation.  *Id.*, ¶8.

8    The proposed Class Representative has actively participated in this litigation, having supervised

9    its progress by, among other things, reviewing pleadings and communicating with Class Counsel

10   regarding the status of the case and significant developments.  *Id.*  Indeed, the proposed Class

11   Representative has made vigorous efforts to preserve the claims of the putative class, including

12   through amended pleadings and an appeal to the Ninth Circuit.

13   **IV.    <u>ARGUMENT</u>**

14           The class certification analysis involves two steps.  <u>First</u>, the proposed class must satisfy

15   Rule 23(a)'s four prerequisites: (1) Numerosity - the class is so numerous that joinder of all

16   members is impracticable; (2) Commonality - there are questions of law or fact common to the

17   class; (3) Typicality - the claims or defenses of the representative parties are typical of the claims

18   or defenses of the class; and (4) Adequacy of Representation - the class representatives and their

19   counsel will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(1)-(4).

20   *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (citing *Amchem*, 521 U.S.

21   591 (1997)).  <u>Second</u>, the proposed class must also satisfy one of the subdivisions of Rule 23(b).

22   Here, Rule 23(b)(3) is satisfied because questions of law or fact common to members of the class

23   predominate over any questions affecting only individual members, and a class action is superior

24   to other methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P.

25   23(b)(3).

26           In determining whether class certification is appropriate, "the question is not whether the

27   plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather

28   whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-

78 (1974).  Thus, "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

The Supreme Court has also held that the party seeking class certification in a securities fraud case is *not* required to prove either materiality or loss causation at the class certification stage.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011) (proof of loss causation is not required); *Amgen,* 568 U.S. at 480 (proof of materiality is not required).  In evaluating a motion for class certification, "the court generally is bound to take the substantive allegations of the complaint as true."  *Hodges v. Akeena Solar, Inc.*, 274 F.R.D 259, 264-65 (N.D. Cal. 2011).

As explained below, this action meets the requirements for class certification under Rules 23(a) and 23(b)(3).  The Ninth Circuit has long rejected a restrictive interpretation of Rule 23's requirements, noting that denying certification often effectively terminates the litigation.  *See, e.g., Blackie*, 524 F.2d at 899-903; *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").  Likewise, the Supreme Court has noted, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud."  *Id*. at 625.  Indeed, "[c]lass actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."  *VeriSign*, 2005 U.S. Dist. LEXIS 10438, at *31-32.

**A.     The Proposed Class Action Satisfies Rule 23(a)**

**1.     Numerosity: The Class Is Sufficiently
Numerous That Joinder Is Impracticable**

The "numerosity" provision of Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class."  *In re Juniper Networks, Inc. Sec. Litig.*, 264

1   F.R.D. 519, 584 (N.D. Cal. 2009) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d
2   909, 913-14 (9th Cir. 1964)).   "Numerosity does not presume a strict numerical cut-off."
3   *VeriSign*, 2005 U.S. Dist. LEXIS 10438, at *12.   Further, Numerosity is "presumed where the
4   plaintiff class contains forty or more members."   *Cooper*, 254 F.R.D. at 634.

5          In cases involving the publicly-traded securities of a corporation such as in this case, "the
6   prerequisite expressed in Rule 23(a)(1) is generally assumed to have been met in class action
7   suits involving nationally traded securities."   *Yamner v. Boich*, 1994 U.S. Dist. LEXIS 20849, at
8   *8 (N.D. Cal. Sept. 15, 1994).   Further, mathematical computation of class size is not a
9   prerequisite for class certification, and the court may use common sense assumptions to support
10  a finding of numerosity when the class is obviously large.   *See In re Intuitive Surgical Sec. Litig.*,
11  2016 U.S. Dist. LEXIS 178148, at *11 (N.D. Cal. Dec. 22, 2016) ("District courts have
12  consistently found a proposed class to be sufficiently numerous in securities fraud cases where
13  'several million shares of stock were purchased during the class period.'" (citation omitted)).

14         Here, the numerosity requirement is satisfied.   During the Class Period, Finisar had as
15  many as 89,631,781 shares outstanding, and the average weekly trading volume was over 19.8
16  million shares.[4]  In light of the number of shares issued and trading during the Class Period, it is
17  reasonable to assume that the Class has at least hundreds of members, and likely thousands.   *See*
18  *VeriSign*, 2005 U.S. Dist. LEXIS 10438, at *13 ("'[F]ederal trial courts are quite willing to
19  accept common sense assumptions in order to support a finding of numerosity, often looking at
20  the number of shares traded or transactions completed rather than seeking to determine directly
21  the number of potential class members involved.'").

22         Further, a class of this size is so numerous as to make individual joinder impracticable, if
23  not impossible, especially because investors are located throughout the country.   Courts routinely
24  hold that Rule 23(a)'s numerosity requirement is satisfied under similar facts.   *See, e.g., Intuitive*,
25  2016 U.S. Dist. LEXIS 178148, at *12; *Cooper,* 254 F.R.D. at 634.

26

27

28  _____
    [4] *See* Hartzmark Report at ¶¶28, 32.

**2.      Commonality: Common Questions Of
Law And Fact Are Shared Among The Class**

The "commonality" provision of Rule 23(a)(2) requires that the allegations of the complaint involve common questions of law and fact.  "This requirement has been liberally construed and 'those courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts.'" *Rodriguez v. Carlson,* 166 F.R.D. 465, 472 (E.D. Wash. 1996) (citation omitted); *Hanlon*, 150 F.3d at 1019 (the commonality requirement "has been construed permissively"); *see also VeriSign*, 2005 U.S. Dist. LEXIS 10438, at *15 (in securities fraud actions, "[c]ommonality, like numerosity, is a prerequisite which plaintiffs generally . . . satisfy very easily.").

The commonality requirement is satisfied if the claims of the prospective class share *even one central question of law or fact*.  *See, e.g., Hanlon,* 150 F.3d at 1019 (certifying class where claims stemmed from the same source); *In re THQ Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753, at *11 (C.D. Cal. Mar. 22, 2002) (noting that "courts have found that a single issue common to the proposed class satisfies Rule 23(a)(2)").  It is not necessary that all questions of law or fact be common, but only that there are shared legal and factual questions.  *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.").  Accordingly, courts have consistently found that "misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)."  *Juniper*, 264 F.R.D. at 588 (citing *Blackie*, 524 F.2d at 902).

Here, as alleged in the Complaint, the common questions of law and fact include:  (1) whether the federal securities laws were violated by the Defendants; (2) whether public statements made by Defendants during the Class Period contained material misrepresentations or omissions; (3) whether Defendants acted with the requisite state of mind in omitting and/or misrepresenting material facts; (4) whether the price of the Company's stock was artificially inflated due to the alleged material misrepresentations and/or omissions; and (5) whether Defendants' material misrepresentations and/or omissions caused Class members to suffer economic losses and damages.

1  As this Court recognized in the *Intuitive* securities fraud class action, "[s]uch inquiries

2  raise questions common to all purported class members."  *Intuitive*, 2016 U.S. LEXIS 178148, at

3  *14; *see also Yamner*, 1994 U.S. Dist. LEXIS 20849, *9 ("These are the standard questions upon

4  which federal courts have based the grant of class certification in numerous securities actions"

5  (citing *Blackie*, 524 F.2d at 902-05)).   Accordingly, this action satisfies the commonality

6  requirement of Fed. R. Civ. P. 23(a)(2).

7          **3.**      **Typicality: The Claims Of The Proposed Class**
                       **Representative Are Typical Of The Claims Of Other**

8                         **Class Members**

9  The "typicality" requirement of Rule 23(a)(3) is satisfied where "the claims or defenses

10  of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P.

11  23(a)(3).   The purpose of the "typicality" requirement is to ensure that the named

12  representatives' interests "align" with those of the class.  *Hanon v. Dataproducts Corp.*, 976 F.2d

13  497, 508 (9th Cir. 1992).  The test is not demanding, and focuses on whether "'other members

14  have the same or similar injury, whether the action is based on conduct that is not unique to the

15  named plaintiffs, and whether other class members have been injured by the same course of

16  conduct.'"  *Hodges,* 274 F.R.D. at 266 (citing *Hanon*, 976 F.2d at 508).

17  "Rule 23(a)(3) is 'permissive' and only requires that the named plaintiffs' claims be

18  'reasonably co-extensive with those of absent class members.'"  *In re Montage Tech. Grp. Ltd.*

19  *Sec. Litig.*, 2016 U.S. Dist. LEXIS 53734, at *10 (N.D. Cal. Apr. 21, 2016) (quoting *Hanlon*, 150

20  F.3d at 1020).  Moreover, differences in the amount of damages, the size or manner of purchase,

21  type of purchase, and even the specific documents or statements influencing the purchase will

22  not render the claim atypical in most securities actions.  *See id., at *10-12; see also In re LDK*

23  *Solar Sec. Litig.,* 255 F.R.D. 519, 530 (N.D. Cal. 2009) (certifying the class and holding that

24  "potential complications regarding the computation of damages" do not defeat class

25  certification).

26  Here, the Court previously held that Lead Plaintiff made a preliminary showing that

27  Oklahoma Firefighters satisfies the typicality requirement.  *See* Dkt. No. 48, Order Granting (1)

28  Motions for Consolidation of All Related Actions; and (2) The Motion of Oklahoma Firefighters

for Appointment As Lead Plaintiff and Approval of Its Selection of Lead Counsel, (the "Lead Plaintiff Order") at 6 ("Moreover, the Oklahoma Firefighters have made an adequate preliminary showing that they satisfy the typicality and adequacy requirements of Rule 23(a): like all plaintiffs in this action, they claim that they purchased Finisar securities during the class period based upon Defendants' false and misleading statements").  Oklahoma Firefighters purchased 28,400 shares of Finisar stock on the open market between December 2, 2010 and March 8, 2011, at artificially inflated prices.  *See* Lead Plaintiff's PSLRA Certification previously filed with the Court, Dkt. No. 22-2, which is also attached to the Oklahoma Firefighters Decl., submitted as Ex. 2 to the Berg Decl.  Defendants' fraud affected Oklahoma Firefighters and all Class members uniformly because each purchased Finisar's artificially inflated stock, and later suffered losses when the price of that stock declined in response to public revelations of the fraud.  The claims of Oklahoma Firefighters and all Class members are based on the same legal theories and will be proven by the same set of operative facts.  As such, there is no conflict or antagonism between Oklahoma Firefighters and other Class members, and typicality is satisfied.

### 4.   Adequacy: The Proposed Class Representative Will Fairly And Adequately Protect The Interests Of The Class

The "adequacy" requirement of Rule 23(a)(4) is met when "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Determining whether representative parties adequately represent the Class involves two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978)); *LDK Solar*, 255 F.R.D. at 532.  Here, Rule 23(a)(4)'s requirements are easily satisfied.

First, the proposed Class Representative's interests are neither antagonistic to, nor in conflict with, the interests of the other Class members.  To the contrary, the proposed Class Representative Oklahoma Firefighters – like other members of the Class – sustained losses as a result of the same alleged material misrepresentations and omissions.  The interests of the

1    proposed Class Representative in obtaining the maximum possible recovery are therefore co-

2    extensive with the interests of members of the Class.  *See VeriSign*, 2005 U.S. Dist. LEXIS

3    10438, at *29 (finding adequacy where lead plaintiffs' claims and the unnamed class members'

4    claims do not conflict because they all arise out of the same set of facts).

5         Second, Oklahoma Firefighters fully understands the duties and responsibilities of the

6    lead plaintiff under the PSLRA.  *See* Oklahoma Firefighters Decl., ¶¶4-9; *see also Montage*,

7    2016 U.S. Dist. LEXIS 53734, at *15 (finding adequacy where a class representative "is aware

8    of the proceedings and his duties as class representative").   Moreover, both Oklahoma

9    Firefighters and its counsel have repeatedly demonstrated their commitment to vigorously

10   prosecute this action, including through multiple amended complaints and an appeal to the Ninth

11   Circuit.  In addition, Lead Plaintiff's counsel, Abraham, Fruchter & Twersky, LLP, has a proven

12   track record of success in complex securities fraud cases and complex litigation such as this

13   action, and has obtained excellent results on behalf of defrauded investors around the country.

14   *See* Berg Decl. ¶4, Ex. 3 (Firm Resume of Lead Counsel Abraham, Fruchter & Twersky, LLP).

15        Moreover, Lead Plaintiff Oklahoma Firefighters is precisely the type of institutional

16   investors Congress sought to empower when passing the Private Securities Litigation Reform

17   Act ("PSLRA").[5]  Oklahoma Firefighters was created as a state agency by the Oklahoma state

18   legislature in 1981.  Since its inception it has been helping to administer retirement benefits to

19   paid and volunteer firefighters of Oklahoma and their families.   Oklahoma Firefighters is

20   administered by its thirteen-member Board of Trustees and eleven-member Administration Staff.

21   Oklahoma Firefighters Decl. at ¶3.  Without a doubt, Oklahoma Firefighters and its board of

22   trustees are well-suited to protect the interests of the Class as well as they protect their

23   constituents and plan participants.

24

25

26   [5] H.R. CONF. REP. No. 104-369, at 32 (1995); *see In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D.
     267, 282 (S.D.N.Y. 2003) (appointing institutional investor as class representative and noting
27   that the PSLRA "was designed to 'increase the likelihood that institutional investors will serve as
     lead plaintiffs,'" and "[s]uch investors are likely to use advisors.").
28

1    Having shown that Oklahoma Firefighters' interests are not antagonistic to those of the

2    other members of the Class and that its Counsel is fully qualified to prosecute this action,

3    Oklahoma Firefighters has demonstrated its adequacy pursuant to Rule 23(a)(4).

4         **B.    The Proposed Class Satisfies Rule 23(b)(3)**

5         In addition to meeting the prerequisites of Rule 23(a), this action also satisfies Rule

6    23(b)(3), which requires that (1) "the questions of law or fact common to class members

7    predominate over any questions affecting only individual members," and (2) "a class action is

8    superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

9    R. Civ. P. 23(b)(3).

10        The primary purpose behind Rule 23(b)(3) is the vindication of the rights of those who

11   would not have the economic power or incentive to bring a wrongdoer into court to redress a

12   wrong imposed on them.  The objective is to aggregate small claims to make the cost and effort

13   of the litigation economically feasible.  *See Amchem*, 521 U.S. at 617 ("'The policy at the very

14   core of the class action mechanism is to overcome the problem that small recoveries do not

15   provide the incentive for any individual to bring a solo action prosecuting his or her rights.'")

16   (citation omitted).   A class action under Rule 23(b)(3) is also intended to achieve judicial

17   economy, as well as economies of time, effort and expense.  *La Mar v. H&B Novelty & Loan*

18   *Co.,* 489 F.2d 461, 465 n.2 (9th Cir. 1973).

19        **1.    Common Questions Predominate**

20        The focus of Rule 23(b)(3)'s predominance test is on whether the Class claims arise out

21   of the same legal or remedial theory.  *See Hanlon*, 150 F.3d at 1022 (predominance test met

22   where common nucleus of facts and potential legal remedies dominate the litigation).  "[A]s the

23   Supreme Court observed, the predominance requirement of Rule 23(b)(3) is readily met in

24   securities-fraud class actions."  *Hicks v. Morgan Stanley & Co.*, 2003 U.S. Dist. LEXIS 11972,

25   at *6 (S.D.N.Y. July 16, 2003) (citing *Amchem*, 521 U.S. at 625); *THQ*, 2002 U.S. Dist. LEXIS

26   7753, at *30 ("Plaintiffs' claim – which is based on a series of misrepresentations and market

27   manipulations – clearly satisfies the requirement that common questions predominate over those

28   affecting individual members.").

1

2

**a.    The Proposed Class Representative And All Class Members Are Unified By An Interest In Proving The Same Common Course Of Conduct**

3       Where, as here, a complaint alleges a "common course of conduct" of misrepresentations,

4  omissions and other wrongdoings that affect all members of the class in the same manner,

5  common questions predominate.  *Blackie*, 524 F.2d at 902; *In re Alco Int'l Group, Sec. Litig.*,

6  158 F.R.D. 152, 154 (S.D. Cal. 1994).  In determining whether common questions predominate,

7  the Court's inquiry should be directed primarily toward the issue of liability.  *See Blackie*, 524

8  F.2d at 902.  As discussed above, there are numerous questions common to the members of the

9  Class.   These questions clearly predominate over individual questions because Defendants'

10  alleged conduct affected all Class members in the same manner and, through false statements,

11  artificially inflated the price of Finisar common stock.  It is difficult to discern liability issues in

12  this case that are not common to all members of the Class.  *See, e.g., LDK Solar*, 255 F.R.D. at

13  530 ("all class members are unified by an interest in proving the same common course of

14  conduct regarding LDK's allegedly fraudulent inventory representations.   Common issues

15  concerning that fundamental course of conduct predominate over any individual incentives

16  particular class members may have to maximize their damages."); *Cooper*, 254 F.R.D. at 640

17  ("the critical questions of what Defendants said, what they knew, what they may have withheld,

18  and with what intent they acted, are central to all class members' claims . . . . Issues such as

19  certain members' damages, timing of sales and purchases, or standing to file suit, do not have the

20  same primacy . . . . The common issues predominate over the individual ones.").

21

22

**b.    There Are No Individual Issues, Such As Reliance, That Preclude A Finding Of Predominance**

23       There are no significant (let alone predominate) individual issues to preclude class

24  certification, even with respect to issues such as reliance.  For Section 10(b) and Rule 10b-5

25  claims, no proof of individual reliance is required because plaintiffs in a securities fraud class

26  action are entitled to a presumption of reliance in an action alleging "fraud on the market."

27  *Basic*, 485 U.S. at 247-48 ("An investor who buys or sells stock at the price set by the market

28  does so in reliance on the integrity of that price.  Because most publicly available information is

1   reflected in market price, an investor's reliance on any public material misrepresentations,

2   therefore, may be presumed for purposes of a Rule 10b-5 action.").

3           c.      **Reliance May Be Presumed For Class Members**
                    **Under The "Fraud On The Market" Doctrine**

4

5           A party who purchases a stock traded on an efficient market need not show that it directly

6   relied upon or even knew about the alleged misrepresentations. *Amgen*, 568 U.S. at 460-62.

7   "The fraud-on-the-market theory rests on the premise that certain well developed markets are

8   efficient processors of public information. In such markets, the 'market price of shares' will

9   'reflec[t] all publicly available information.'" *Amgen*, 568 U.S. at 461 (citing *Basic*, 485 U.S. at

10  246). Accordingly, "courts may presume that investors who traded securities in that market

11  relied on public, material misrepresentations regarding those securities." *Id*. Thus, the central

12  inquiry in determining whether the fraud-on-the-market presumption of reliance can be applied is

13  whether the security traded in an efficient market. *Halliburton II,* 134 S. Ct. at 2412; *Basic*, 485

14  U.S. at 248 n.27.

15          Rebutting the presumption of reliance is extremely difficult. As stated by the Supreme

16  Court, "[i]t is hard to imagine that there ever is a buyer or seller who does not rely on market

17  integrity. Who would knowingly roll the dice in a crooked crap [sic] game?" *Basic*, 485 U.S. at

18  246-47 (citations and footnotes omitted). "Requiring a plaintiff to show a speculative state of

19  facts, i.e., how he would have acted if omitted material information had been disclosed . . . or if

20  the misrepresentation had not been made . . . would place an unnecessarily unrealistic

21  evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market." *Id*. at

22  245 (citations omitted).

23                  **(1)      Finisar Traded On An Efficient Market**

24          Although not dispositive of efficiency in itself, federal courts have repeatedly held that a

25  listing on a major national stock exchange such as the NASDAQ, as Finisar stock did throughout

26  the entire Class Period, is a good indicator of market efficiency. *See, e.g.*, *In re Diamond Foods*,

27  295 F.R.D. 240, 250 (N.D. Cal. 2013); *Smilovits v. First Solar, Inc*., 295 F.R.D. 423, 431 (D.

28  Ariz. Oct. 8, 2013) ("In keeping with *Basic* . . . the Court concludes that the trading of First Solar

stock on NASDAQ -- a major, well-developed stock exchange -- weighs in favor of finding market efficiency."); *Lumen v. Anderson*, 280 F.R.D. 451, 459-60 (W.D. Mo. 2012) ("the NYSE and NASDAQ are at least entitled to a presumption of efficiency"); *Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 573 n.7 (C.D. Cal. 2012) ("'federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency'"); *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 634 (3d Cir. 2011) ("the listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency.").

While this fact weighs strongly in favor of a finding of market efficiency, other indicia of an efficient market for Finisar stock during the Class Period are also clearly present here.

In order for the fraud-on-the-market presumption of reliance to apply, publicly available information must be reflected in the market price of the stock; however, the Supreme Court has refused to "conclusively adopt any particular theory of how quickly and completely" publicly available information must be reflected in order to show market efficiency. *Basic*, 485 U.S. at 248 n.28. While the Ninth Circuit has also failed to articulate a specific test as to how fast a market price must reflect publicly available information, "it has employed the factors set forth in *Cammer*," to evaluate market efficiency. *Diamond Foods*, 295 F.R.D. at 247 (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989)). "'*Cammer* sets out five well-recognized factors designed to help make the central determination of efficiency in a particular market,' and provides a useful, if nonexhaustive, guide to analyze whether a market is efficient within the meaning of the fraud-on-the-market theory." *Id.* (quoting *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1103 (9th Cir. 2010)).

The *Cammer* factors include: (1) "whether the stock trades at high weekly volume"; (2) "whether securities analysts follow and report on the stock"; (3) "whether the stock has market makers and arbitrageurs"; (4) whether the company is eligible to file a Form S-3 registration statement with the SEC; and (5) "whether there are 'empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate

1    response in the stock price.'"  *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999) (quoting

2    *Cammer*, 711 F. Supp. at 1286-87).

3         Importantly, courts recognize that the "*Cammer* factors are 'an analytical tool, not a

4    checklist' of requirements."  *Radient*, 287 F.R.D. at 574 (citations omitted).  Further, not all five

5    of the factors need be satisfied in order to find a market efficient.  *See, e.g., First Solar*, 295

6    F.R.D. at 437 (while court found factor five "was too close to call," there was "no difficulty"

7    finding market efficiency based on satisfaction of three other *Cammer* factors).

8         To support a finding of efficiency, Lead Plaintiff submits the report of Michael L.

9    Hartzmark, Ph.D., President of Hartzmark Economics Litigation Practice, LLC, who is an expert

10   able to opine on market efficiency.  *See* Hartzmark Report at ¶¶4-9 and his C.V. attached as

11   Appendix A to his Report.

12        Dr. Hartzmark earned his B.A. in economics from The University of Michigan and his

13   M.A. and Ph.D. in economics from The University of Chicago.  He has taught economics and

14   financial economics at institutions such as the University of Chicago and the Michigan Business

15   School (now the Ross School of Business).  Dr. Hartzmark has been a testifying and consulting

16   expert in numerous class actions and securities class certifications such as *In re DVI, Inc.*

17   *Securities Litigation*, 249 F.R.D. 196 (E.D. Pa. 2008), which was affirmed by the Third Circuit,

18   *In re DVI, Inc. Securities Litigation*, 639 F.3d 623 (3d Cir. 2011), *W. Palm Beach Police Pension*

19   *Fund, et al. v. DFC Global Corp. et al.*, 2016 U.S. Dist. LEXIS 102304, at *40 (E.D. Pa. Aug. 4,

20   2016), and *In re Cobalt Intl. Energy Inc., Sec. Litig.*, 2017 Civil Action H-14-3428 (S.D. Tx.

21   June 15, 2017).  He has spent his career as an economic consultant focusing on securities such as

22   common stock and has published many scholarly articles in the field of financial economics.  *See*

23   Hartzmark Report at ¶¶4-9.

24        Dr. Hartzmark determined that the market for Finisar stock during the Class Period

25   satisfies each of the *Cammer* factors, as well as additional factors, which all confirm that Finisar

26   stock traded on an open, well-developed, and efficient market during the Class Period.

27

28

1

2

**(2)     The *Cammer* Factors Establish Market
Efficiency For Finisar Stock**

3     Here, a finding of efficiency is strongly supported by the first four *Cammer* factors:  (i)

4   average weekly volume; (ii) number of financial analysts; (iii) number of market makers; and

5   (iv) qualification to file a Form S-3 Registration Statement.

6     A Large Weekly Trading Volume:  During the Class Period, a total of 229.8 million

7   shares traded hands with an average weekly volume of 19.8 million shares, resulting in an

8   average weekly trading volume turnover ratio of 23.3%.  Hartzmark Report at ¶32.  This volume

9   is much higher than the 2% benchmark indicated in *Cammer*.  711 F. Supp. at 1286.  As Judge

10  Alsup held in *Diamond Foods*, a weekly turnover rate that is "much higher than the *two percent*

11  of a company's outstanding shares that *Cammer* suggested would justify a *strong presumption*

12  that the market for the security is an efficient one."  295 F.R.D. at 248 (emphasis added).  Dr.

13  Hartzmark also found that this factor supports his conclusion.  *See* Hartzmark Report at ¶¶32-33.

14    Analyst Coverage:  Finisar was covered by several financial analysts – including ACI

15  Research, Auriga, Credit Suisse, Citi Group, Jefferies, The Juda Group, Miller Tabak, Morgan

16  Stanley, Piper Jaffray, and WJB Capital Group – that published reports during the Class Period,

17  and analysts participated in Finisar's earnings conference calls and also hosted investor

18  conferences at which Finisar participated.  Hartzmark Report at ¶¶34-40.  Under *Cammer*, this

19  type of coverage of Finisar by securities analysts supports the conclusion that Finisar securities

20  traded in an efficient market during the Class Period.  *See Aranaz v. Catalyst Pharm. Partners,*

21  *Inc.*, 302 F.R.D. 657, 669 (S.D. Fla. 2014) (coverage by four analysts satisfies factor); *In re*

22  *Accelr8 Tech. Corp. Sec. Litig.*, 147 F. Supp. 2d 1049, 1057 (D. Colo. 2001) (two analysts

23  sufficient).

24    Market Makers:  The existence of numerous market makers is further evidence of market

25  efficiency, since the "existence of market makers . . . ensure[s] completion of the market

26  mechanism."  *Cammer*, 711 F. Supp. at 1286-87.  There are at least 16 active market makers that

27  traded Finisar securities, which amply satisfies the parameters set forth in *Cammer* and further

28  supports a finding of market efficiency for Finisar securities.  *See* Hartzmark Report at ¶¶45-46;

*see also Cammer*, 711 F. Supp. at 1283 n.30 (finding 11 market makers sufficient).   Dr. Hartzmark also found sufficient arbitrage and institutional holdings to satisfy this factor.  *See* Hartzmark Report at ¶¶47-51.

S-3 Registration Statement:   During the Class Period, Finisar was eligible to, and did indeed, file a Form S-3 Registration Statement with the SEC.  Hartzmark Report at ¶54.  The Form S-3 is an abbreviated disclosure form, which may <u>only</u> be used when the SEC "belie[ves] that the market operates efficiently for these companies, i.e., [all public information] has already been disseminated and accounted for by the market place."  *Cammer*, 711 F. Supp. at 1284. Accordingly, "the existence of Form S-3 status is an important factor weighing in favor of a finding that a market is efficient."  *Id*. at 1285; *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 500 (S.D. Fla. 2003) ("Eligibility to complete a S-3 Form is helpful because the SEC permits registration 'only on the premise that the stock is already traded on an open and efficient market. . .'"); *see* Hartzmark Report at ¶¶52-53.

### (3)   The Fifth *Cammer* Factor, "Cause And Effect," Supports A Finding Of Market Efficiency

To demonstrate market efficiency under the fifth *Cammer* factor, a plaintiff need only demonstrate by a preponderance of the evidence "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Diamond Foods*, 295 F.R.D. at 251 (quoting *Cammer*, 711 F. Supp. at 1287).

The Court need only look at the market's reaction to the alleged corrective disclosures in this case to see that Lead Plaintiff meets this burden.  On March 8, 2011, Finisar issued a press release revealing that the Company's fourth quarter revenues would be significantly lower than analysts' estimates due to the previously undisclosed inventory build-up and a slowdown in business in China.  ¶78.  Following the release of this news, the price of Finisar stock fell nearly 39% in one day.  ¶81.

This curative disclosure was a clear "cause" of Finisar's stock price decline, *i.e.*, the "effect."  As the court in the *Catalyst Pharmaceutical* securities action found when looking at

the stock's "price decline" after a single corrective disclosure to find an efficient market, "[b]oth the extent and the immediacy of this price impact serve as strong empirical evidence of market efficiency."  302 F.R.D. at 669 (finding an efficient market and certifying the class); *see also Intuitive,* 2016 U.S. Dist. LEXIS 178148, at *30 (finding an efficient market and certifying the class when the company's stock dropped about 11% immediately after a curative disclosure).

Despite these obvious indicators of a "cause and effect" relationship, Lead Plaintiff also submits the expert report of Dr. Hartzmark, who conducted an event study that empirically demonstrates market efficiency, and a "cause and effect" relationship between new, unexpected news and the market's trading in Finisar's stock.  *See Diamond Foods*, 295 F.R.D. at 248 ("The most common empirical test for a causal connection is an event study, which attempts to calculate the effect of an event on the value of the stock of the company").

Dr. Hartzmark's Report clearly sets forth his objective steps and event study analysis (*see* Hartzmark Report at ¶¶69-105) confirming that, during the Class Period, the release of material, new information concerning Finisar was associated with significant changes in Finisar's common stock prices and indicates that the market for Finisar's common stock was efficient during the Class Period.

### (4) Other Well-Accepted Factors Support Finding An Efficient Market

In addition to the *Cammer* factors, Dr. Hartzmark also found that additional factors commonly considered by courts, often referred to as the *Krogman* factors –  (a) the Company's large market capitalization; (b) Finisar's large public float (number of shares of Finisar stock that are not held by insiders of the Company); and (c) the narrow bid-ask spread for Finisar common stock  – support market efficiency here.  *See* Hartzmark Report at ¶¶55-67; *see also Billhofer v. Flamel Techs., S.A.,* 281 F.R.D. 150, 160 (S.D.N.Y. 2012) (citing *Krogman v. Sterritt,* 202 F.R.D. 467, 477-78 (N.D. Tex. 2001)); *McIntire v. China MediaExpress Holdings, Inc*., 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) ("the three *Krogman* factors weigh in favor of its conclusion that the market for CCME stock was efficient"); *Radient*, 287 F.R.D. at 574-575.

Accordingly, these factors are sufficient to support the presumption that Finisar's common stock traded in an efficient market.[6]

In sum, as detailed in his report, Dr. Hartzmark's expert opinion that Finisar common stock traded in an open, well-developed and efficient market throughout the Class Period is supported by the following factors:

     (1)     The high average weekly turnover of Finisar common stock;

     (2)     The coverage of Finisar by analysts, investment professionals, public press, and financial institutions, along with regular and frequent disclosures by the Company in the form of press releases, teleconference earnings calls and SEC filings;

     (3)     The fact that Finisar common stock was listed on the NASDAQ, and Finisar investors benefited from having numerous market makers and arbitrageurs;

     (4)     The large proportion of institutional holdings of Finisar common stock;

     (5)     The relatively high proportion and variability of short interest in Finisar common stock;

     (6)     The fact that Finisar was eligible and filed SEC Form S-3;

     (7)     The large market capitalization of Finisar common stock;

     (8)     The large float of Finisar common stock;

     (9)     The narrow bid-ask spread of Finisar common stock;

     (10)     A cause-and-effect relationship between Finisar common stock returns on days with earnings disclosures and the alleged corrective disclosure;

---

[6] Dr. Hartzmark also reviewed additional tests utilized in the Ninth Circuit which also support his conclusion that Finisar common stock traded on an efficient market. *See* Hartzmark Report at ¶20 (describing additional tests utilized in the Ninth Circuit (*citing, e.g., Montage*, 2016 U.S. Dist. LEXIS 53734, at *28 (finding "that the Earnings Test, the Price-Volume Test, and the Autocorrelation Test are admissible under the requirements of Fed. R. Evid. 702 and Daubert"); *First Solar*, 295 F.R.D. at 436) (finding that "correlations between news releases and stock price changes" is a reliable test); *Radient*, 287 F.R.D. at 575 (relying upon a variant of the Earnings Test, the Price-Volume Test, and the Autocorrelation Test); *Petrie v. Elec. Game Card*, 308 F.R.D. 336 (C.D. Cal. 2015) (relying upon the Price-Volume Test)); Hartzmark Report at ¶¶97-104.

1
2

      (11)    A statistically significant relationship between volume and absolute abnormal returns; and

3
4

      (12)    A lack of persistent and systematic autocorrelation between past and current returns of Finisar common stock.

5
6

Accordingly, Lead Plaintiff's claims are entitled to the "fraud-on-the-market" presumption of reliance.

7

**d.    Class-Wide Damages Are Measurable**

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

In *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the Supreme Court held that "a model purporting to serve as evidence of [class-wide] damages . . . must measure only those damages attributable to that theory." *Id*. at 1433.  "The Ninth Circuit has construed *Comcast* as only requiring that plaintiffs 'be able to show that their damages stemmed from the defendants' actions that created the legal liability.'"  *Intuitive*, 2016 U.S. Dist. LEXIS 178148, at *50 (quoting *Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (quoting *Comcast*, 133 S. Ct. at 1435).  Dr. Hartzmark's expert report includes an event study that analyzes, among other things, whether the price of Finisar common stock reacted in a reasonable and timely fashion to disclosures of unanticipated information.  Dr. Hartzmark explains that, using an event study framework, class-wide damages are easily calculated based on an analysis of the inflation in the price of Finisar's stock.  Hartzmark Report at ¶¶106-110.  This is more than sufficient to establish that damages here can be calculated on a class-wide basis.  *Diamond Foods*, 295 F.R.D. at 251 ("an event study that analyzes the impact of [a company's] disclosures on the share price" is an appropriate method to determine class-wide damages); *see Intuitive*, 2016 U.S. Dist. LEXIS 178148, at *51-52 ("Based on ample legal precedent, as well as [plaintiff's expert's] report explaining the methodology Plaintiffs represent that they will use to calculate classwide damages, the court finds that Plaintiffs have identified a satisfactory methodology for calculating damages here").

26
27
28

1

**2.    A Class Action Is Superior To Other**
**Available Methods For Resolving These Claims**

2

3      Rule 23(b)(3) also requires that class resolution be "superior to other available methods

4  for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   The

5  "superiority" inquiry involves a determination as to "whether the objectives of the particular

6  class action procedure will be achieved in the particular case [and] involves a comparative

7  evaluation of [the] alternative mechanism of dispute resolution."   *Hanlon*, 150 F.3d at 1023.

8  "Superiority is demonstrated where 'class-wide litigation of common issues will reduce litigation

9  costs and promote greater efficiency.'"   *In re Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS

10  15386, at *36 (C.D. Cal. July 14, 2004).

11      Accordingly, courts have recognized that the class action device is superior to other

12  available methods for the fair and efficient adjudication of controversies involving a large

13  number of purchasers of securities injured by violation of the securities laws.  Indeed, "[d]istrict

14  courts have consistently recognized that the common liability issues involved in securities fraud

15  cases are ideally suited for resolution by way of class action."   *Cooper*, 254 F.R.D. at 641.  Thus,

16  "a class action is clearly the preferred mechanism for adjudicating these [securities] cases."   *In re*

17  *DJ Orthopedics, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 21534, at *29 (S.D. Cal. Nov. 16, 2003).

18  Court have further reasoned that "any doubts should be resolved in favor of allowing a class

19  action" because it offers plaintiffs with small claims a chance to obtain redress through

20  aggregation.  *Heritage Bond*, 2004 U.S. Dist. LEXIS 15386, at *36.

21      Here, class certification promotes judicial efficiency by permitting common claims and

22  issues to be resolved once with a binding effect on all parties.  In contrast, if Plaintiffs and each

23  of the Class Members were forced to bring separate individual actions, each would be required to

24  prove the same wrongdoing by Defendants to establish liability, resulting in unnecessary judicial

25  inefficiencies and potentially inconsistent findings and judgments.  *See In re Micron Techs., Inc.*

26  *Sec. Litig.*, 247 F.R.D. 627, 635 (D. Idaho 2007) ("If this action was not certified as a class, each

27  plaintiff would have to establish the same fraudulent scheme.  This repetitive process would

28  'unnecessarily burden the judiciary.'"  (citing *Hanlon*, 150 F.3d at 1023)).  Most important, class

certification is the only way to afford relief to those whose claims are too small to justify individual lawsuits.  *See Cooper*, 254 F.R.D. at 642 n.8.

Further, the nationwide geographical dispersion of the Class members, based upon Finisar's sale of the stock on a national exchange, makes it desirable that litigation of the claims involved be concentrated in this forum – which has overseen this litigation for nearly six years. In addition, Lead Plaintiff knows of no difficulty in the management of this litigation that would preclude its maintenance as a class action.  Because individual litigation of each Class member's claims would be highly inefficient and impracticable, a class action is the superior means of adjudicating this action.

## V.   **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests entry of an Order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, appointing Oklahoma Firefighters Pension and Retirement System as Class Representative, and appointing Abraham, Fruchter & Twersky, LLP as Class Counsel.

Dated: August 14, 2017

Respectfully submitted,

ABRAHAM, FRUCHTER &
   TWERSKY, LLP

*/s/ Ian D. Berg*
IAN D. BERG

IAN D. BERG
TAKEO A. KELLAR
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel:    (858) 764-2580
Fax:    (858) 764-2582

- AND -

MITCHELL M.Z. TWERSKY
One Penn Plaza, Suite 2805
New York, NY 10119
Tel:    (212) 279-5050
Fax:    (212) 279-3655

*Counsel for Lead Plaintiff Oklahoma Firefighters
Pension and Retirement System*