IAN D. BERG   (Bar No. 263586)
TAKEO A. KELLAR   (Bar No. 234470)
ABRAHAM, FRUCHTER
    & TWERSKY, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel:   (858) 764-2580
Fax:   (858) 764-2582
iberg@aftlaw.com
tkellar@aftlaw.com

*Counsel for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FINISAR CORPORATION SECURITIES LITIGATION | Case No. 5:11-CV-01252-EJD <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Date:     November 30, 2017 <br> Time:     9:00 a.m. <br> Courtroom: 4 <br> Judge:    Hon. Edward J. Davila |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION ........................................................................................................1

II.  ARGUMENT ................................................................................................................3

    A.   The Proposed Class Definition Properly Excludes Those Who Were Not Damaged By The Actionable Misrepresentation ..............................................................................3

    B.   Defendants Have Failed To Meet Their Burden To Rebut The Presumption Of Reliance With Evidence Showing No Price Impact ........................................................5

        1.   Defendants' Expert Failed To Conduct An Affirmative Price Impact Analysis ......................................................................6

        2.   Defendants' Price Impact Argument Fails To Consider Finisar's Stock Price Change With Respect To The Corrective Disclosure ...............................................7

        3.   Properly Conducted Analysis Indicates A Statistically Significant Price Increase After The Actionable Misrepresentation ..............................................................10

        4.   *Best Buy* Is Instructive On Price Impact, Indicating Why Class Certification Is Appropriate In This Case ............................................................11

III. CONCLUSION ...........................................................................................................15

**TABLE OF AUTHORITIES**

Case                                                                                                          Page

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................1

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)...............................................................................................1, 5

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)..............................................................................................5

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..................................................................................................4

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011)..............................................................................................5

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   309 F.R.D. 251 (N.D. Tex. 2015)..............................................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014)................................................................................1, 2, 5, 12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................................................1

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 U.S. Dist. LEXIS 34150 (N.D. Cal. Mar. 16, 2016)....................................7, 8

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
   818 F.3d 775 (8th Cir. 2016). ................................................3, 11, 12, 13, 14, 15

*In re Bank of Am. Corp. Secs*,
   281 F.R.D. 134 (S.D.N.Y. 2012) ..............................................................................8

*In re Diamond Foods, Inc.*,
   295 F.R.D. 240 (N.D. Cal. 2013)..............................................................................5

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2007) ..........................................................................10, 15

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
   2015 U.S. Dist. LEXIS 128856 (S.D.N.Y. Sept. 24, 2015).......................................8

*In re Intuitive Surgical Sec. Litig*,
   2016 U.S. Dist. LEXIS 178148 (N.D. Cal. Dec. 22, 2016)...........................2, 5, 6, 7, 8, 9, 10

*In re Oracle Corp. Sec. Litig*,
   627 F.3d 376 (9th Cir. 2010) ....................................................................................4

*Local 703, I.B. of T. Grocery & Food Emples. Welfare Fund v. Regions Fin. Corp.*,
    2014 U.S. Dist. LEXIS 162403 (N.D. Ala. Nov. 19, 2014) ........................................................8

*McIntire v. ChinaMediaExpress Holdings, Inc.*,
    38 F. Supp. 3d 415 (S.D.N.Y. 2014)..........................................................................................8

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. American West
    Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) ................................................................9, 10, 15

*Willis v. Big Lots, Inc.*,
    242 F. Supp. 3d. 634 (S.D. Ohio 2017) .....................................................................................8

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P. 23 ...............................................................................................................1, 2, 4, 5, 15

## I. INTRODUCTION

In its opening brief, Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Lead Plaintiff" or "Oklahoma Firefighters") set forth sufficient evidence to satisfy the four prerequisites to class certification under Rule 23(a): (1) Numerosity; (2) Commonality; (3) Typicality; and (4) Adequacy of Representation.[1] Defendants do not dispute Lead Plaintiff's evidence of these prerequisites in their Opposition.[2]

Instead, Defendants dispute only the "predominance" requirement of Rule 23(b)(3), through two (deficient) challenges to the "fraud on the market" presumption of reliance afforded under *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1998) and affirmed under *Halliburton Co. v. Erica P. John Fund, Inc.,* 134 S. Ct. 2398, 2408 (2014) (*"Halliburton II"*).

**First**, Defendants claim that the proposed Class definition includes those who purchased Finisar stock during the period of December 2, 2010 through March 8, 2011 "**and who were damaged thereby**" also includes members **who were not damaged** by the actionable misrepresentation alleged in the operative Complaint.[3] Specifically, Defendants are concerned that the Court might certify a class and direct a class notice that would "misleadingly suggest" to some persons who purchased Finisar stock prior to the actionable statement on December 2, 2010 that "they might have a claim, when they do not." Opp. at 13. Although it seems harmless to notify "too many" persons that they might have claims based on an actionable misrepresentation and corrective disclosure that have not yet been adjudicated (including with respect to the time of the misrepresentation), the Court has the authority to define the class and

---

[1] *See* Fed. R. Civ. P. 23(a)(1)-(4); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)).

[2] "Defendants" are herein defined as Finisar Corporation ("Finisar"), Jerry S. Rawls, and Eitan Gertel, collectively, who jointly filed Defendants' Opposition To Motion For Class Certification, Docket No. 136 (the "Opposition" or "Opp.").

[3] The proposed Class is defined as "all persons and entities who purchased or acquired the publicly traded common stock of Finisar Corporation ("Finisar") during the period from December 2, 2010 through March 8, 2011, inclusive, and who were damaged thereby," excluding: (i) Defendants Finisar, Eitan Gertel, and Jerry S. Rawls; (ii) the officers and directors of the Company at all relevant times, (iii) members of Defendants' immediate families and their legal representatives, heirs, successors, or assigns; and (iv) any entity in which Defendants have or had a controlling interest.

direct "the best notice that is practicable under the circumstances."[4]  Lead Plaintiff would not object – and, in fact, would propose – to set forth in any Notice that the Class includes only those who purchased or acquired Finisar stock after an actionable misrepresentation (on December 2, 2010, as alleged) and held that stock through any corrective disclosure (after the market close on March 8, 2011, as alleged).  Accordingly, the class definition, as proposed, is not a barrier to class certification.

**Second**, Defendants claim that Lead Plaintiff has failed to show that the actionable misrepresentation "had no statistically significant price impact in terms of causing the stock price to increase when made."  Opp. at 4.  This claim is factually incorrect; and, if it were correct, it would still be legally insignificant with respect to this motion for class certification.  As foundation, Lead Plaintiff is not required to provide evidence of price impact at class certification. Rather, Defendants are *permitted* to show evidence that an alleged misrepresentation had no price impact to defeat the presumption of reliance prior to class certification under *Halliburton II*, 134 S. Ct. at 2418.  Here, Defendants fail to meet their burden to show any such evidence that the alleged misrepresentation had no price impact.

As this Court and all others addressing "price impact" at class certification have held, "price impact" analysis properly focuses on the change(s) in the stock price with respect to the corrective disclosure date(s), rather than the misrepresentation date(s).[5]  To be clear, "[t]he lack of a statistically significant price increase following an alleged misrepresentation does not indicate a lack of price impact." *Id.*  Yet, in claiming a lack of price impact, Defendants ignore the statistically significant price drop of $15.43, or 39%, on March 9, 2011 after the corrective disclosure – and they instruct their expert to ignore the 39% price drop, as well.

Instead, Defendants focus solely on the statistical significance of Finisar's stock price increase in the hours and day following the actionable misrepresentation to challenge price impact.  Notably, Defendants' expert, Dr. Alexander Aganin, affirmatively disclaimed that he

---

[4] *See* Fed. R. Civ. P. 23(c)(1)(B) and (2)(B).

[5] *See In re Intuitive Surgical Sec. Litig.*, No. 13-cv-01920-EJD, 2016 U.S. Dist. LEXIS 178148, at *38 (N.D. Cal. Dec. 22, 2016) (citations omitted), *discussed infra*.

conducted any type of price impact analysis.[6]  As important, Defendants rely on the flawed and scientifically unreliable methodology of Dr. Aganin, which led him to incorrectly conclude that there *was not* a statistically significant price increase following the actionable misrepresentation. When correcting *either* of Dr. Aganin's two critical econometric errors and his unscientific choice of only two discrete points in time over a wide period, it becomes clear that there *was* in fact a statistically significant price increase following the actionable misrepresentation.

Defendants perform these legal and factual gymnastics with purpose: to reshape this case to seem like the *Best Buy* case decided by the Eight Circuit, which denied class certification based on a lack of price impact.[7]  Lead Plaintiff agrees that *Best Buy* is instructive – because *Best Buy* involved a misrepresentation that occurred in the middle of a trading day and the court considered the price impact upon the corrective disclosures – but the differences between that case and this case are marked.  Despite Defendants' efforts, and in light of *Best Buy*, *Intuitive Surgical* (decided by this Court), and the other cases addressing price impact, it is clear that Defendants have failed to meet their burden to rebut the presumption of reliance.  As such, Lead Plaintiff's motion should be granted and the Class certified.

II.     **ARGUMENT**

   A.     **The Proposed Class Definition Properly Excludes Those Who Were Not Damaged By The Actionable Misrepresentation**

Lead Plaintiff proposes that the Court certify a "Class" of all persons (with certain exclusions) who purchased or otherwise acquired the publicly traded common stock of Finisar during the period from December 2, 2010 through March 8, 2011 (inclusive) "and **who were damaged thereby**."  Lead Plaintiff includes in its definition the important qualifier "and who were damaged thereby" because it is the best, most inclusive and practicable way to address common elements of causation that have yet to be adjudicated.

---

[6] *See* Deposition of Dr. Alexander Aganin ("Aganin Deposition") at 125:23-127:17.  The transcript of the Aganin Deposition is submitted herewith as Ex. A to the Supplemental Declaration of Ian Berg ("Berg Supp. Decl.").

[7] *IBEW Local 98 Pension Fund v. Best Buy Co.,* 818 F.3d 775 (8th Cir. 2016).

After the Supreme Court's ruling in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344-45 (2005), it is clear that a plaintiff seeking to recover in a securities fraud action based on an actionable misrepresentation must prove that it purchased stock after a misrepresentation, and was then damaged by holding that stock through a corrective disclosure that caused the price of that stock to fall. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010).

Accordingly, and as applied to this action, Defendants are correct that one cannot claim to have been damaged in reliance of the December 2, 2010 misrepresentation if that person purchased Finisar stock before the statement was made. Opp. at 1. Likewise, one cannot claim to have been damaged in reliance of the December 2, 2010 misrepresentation if that person both buys and sells Finisar stock (after the December 2, 2010 misrepresentation and) before the corrective disclosure on March 8, 2011 that caused Finisar's stock price to fall 39% on March 9, 2011. However, persons in either category would not be included in Lead Plaintiff's proposed "Class" because neither would be "damaged thereby."

Defendants' concern that "sending a notice of pendency of a class action as required by Rule 23(c)(2)(b) to persons whose only purchases were on the morning of December 2 would misleadingly suggest to those persons that they might have a claim, when they do not" is misplaced. Opp. at 13. After all, the Court is vested with the power to define an appropriate class and to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Indeed, the notice *must* "clearly and concisely" define the class in "plain, easily understood language." *Id.* It is unreasonable to suggest that the Court would fail in this responsibility, particularly since the Court can easily comply with Rule 23 by directing notice to all those who purchased Finisar stock on December 2, 2010 that they have potential claims if, and only if, they purchased Finisar stock after the actionable misrepresentation on December 2, 2010 and held that stock through the corrective disclosure that occurred after the market close on March 8, 2011.

Furthermore, and despite Defendants' bald assertion to the contrary (Opp. at 13), the damages of all such class members could still be calculated using a common "out of pocket"

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION                                    -4-
Case No. 5:11-CV-01252-EJD

methodology, based on an analysis of the inflation in Finisar's stock price using an event study framework, as explained in Dr. Hartzmark's Report. *See* Expert Report of Michael L. Hartzmark, Ph.D., filed August 14, 2017, Docket No. 132-1 ("Hartzmark Report") at ¶¶106-110; Rebuttal Report of Michael L. Hartzmark, Ph.D. ("Hartzmark Rebuttal Report"), filed as Ex. B to the Berg Supp. Decl., at ¶¶77-78; *see also In re Diamond Foods, Inc.,* 295 F.R.D. 240, 251 (N.D. Cal. 2013) ("an event study that analyzes the impact of [a company's] disclosures on the share price" is an appropriate method to determine class-wide damages); *Intuitive Surgical*, 2016 U.S. Dist. LEXIS 178148, at *51-52 (finding a similar out-of-pocket methodology for calculating damages acceptable under *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)).

### B. Defendants Have Failed To Meet Their Burden To Rebut The Presumption Of Reliance With Evidence Showing No Price Impact

In its opening brief, Lead Plaintiff sufficiently demonstrated that common questions predominate over individual issues, in satisfaction of Rule 23(b)(3). In particular, Lead Plaintiff met its burden to establish the fraud-on-the-market presumption of reliance, such that individual issues of reliance do not preclude class certification. Defendants do not dispute this fact in their Opposition. Rather, Defendants attempt to rebut the presumption of reliance based on purported evidence that the actionable misrepresentation on December 2, 2010 had no price impact on Finisar's stock. *See Halliburton II*, 134 S. Ct. at 2414.

"'Price impact' simply refers to the effect of a misrepresentation on a stock price." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2187 (2011) ("*Halliburton I*"). If Defendants can show that the actionable misrepresentation did not impact the price of Finisar stock, there would be no basis for finding that fraud had been transmitted through the market price and the *Basic* presumption of reliance would not apply. *Halliburton II*, 134 S. Ct. at 2415-16 (citing *Basic*, 485 U.S. at 248). With respect to price impact, and whether there is sufficient evidence to rebut the presumption of reliance based on a lack of price impact, "Defendants bear both the burden of production and the burden of persuasion." *Intuitive Surgical*, 2016 U.S. Dist. LEXIS 178148, at *37-38 (citation omitted).

Here, Defendants fail to meet their burden. First, Defendants' argument is premised on an expert that failed to conduct a complete, affirmative price impact analysis. *See* Hartzmark Rebuttal Report at ¶11. Second, Defendants purposefully ignore the price impact of the actionable misrepresentation with respect to the corrective disclosure that caused a statistically significant stock drop of $15.43, or 39%; and, they directed their expert, Dr. Aganin, to limit his engagement to avoid the same. *See* Aganin Deposition at 133:10-22. Third, Defendants' price impact argument relies solely on Dr. Aganin's incorrect conclusion that there was no statistically significant price increase following the actionable misrepresentation, which is a conclusion that was only found because of a flawed, scientifically unreliable analysis that contained three separate critical errors – the correction of which would have demonstrated a statistically significant price increase following the actionable misrepresentation. *See* Hartzmark Rebuttal Report at ¶¶10, 45-51.

### 1. Defendants' Expert Failed To Conduct An Affirmative Price Impact Analysis

Usually, when a court is asked to assess price impact at class certification, it must weigh competing evidence submitted by respective experts and determine the admissibility and persuasiveness of the expert reports. *See, e.g., Intuitive Surgical*, 2016 U.S. Dist. LEXIS 178148, at *37 (explaining *Erica P. John Fund, Inc. v. Halliburton Co.*, 309 F.R.D. 251, 263 (N.D. Tex. 2015) ("*Halliburton Tex.*") (other citations omitted)). In this case, however, Defendants have failed to submit admissible and persuasive evidence.

During his deposition, Defendants' expert, Dr. Aganin, expressly disavowed conducting a price impact analysis, explaining that he "framed his opinion very carefully" to address only his assignment – which was to determine if there was a statistically significant price increase in Finisar's stock price on December 2, 2010 or December 3, 2010. Aganin Deposition at 126:6-130:5. In fact, Dr. Aganin believes that an economic expert *cannot* conduct a price impact analysis, because it is a "question of law":

> Q: So in your opinion as an expert, is there an economic analysis that can be conducted to determine if an alleged statement had a price impact on a company's stock?

> A: Again, the question of [] "price impact" is a question of law. The attorneys can formulate the economic questions [] that will be helpful in addressing the question of law.
>
> As I understand it from counsel here, the appropriate economic question to help them address the issue of law is whether the challenged statements by Mr. Gertel on December 2, 2010 resulted in a statistically significant increase of Finisar stock price.
>
> Q: So is counsel telling you how to determine if there was a price impact?
> [Objection: Argumentative. Misstates the testimony.]
>
> A: I think counsel is telling themselves that – what to ask economic experts – for the purpose of supporting their legal argument.

Aganin Deposition at 128:16-129:13.

In contrast, Lead Plaintiff's expert, Dr. Hartzmark, explains that an expert *can* conduct an economic price impact analysis. As Dr. Hartzmark explains in his Rebuttal Report, to conduct an *affirmative* economic price impact analysis, an expert assumes that a misstatement represents new information entering the market, and then uses a statistical analysis "in combination with the analysis of news reports, analyst evaluations and firm-specific financial information" to isolate the impact of the misstatements relative to other disclosures that are contemporaneously revealed. Hartzmark Rebuttal Report at ¶11. Dr. Hartzmark examines this type of information in his Rebuttal Report (*see id.* at ¶¶52-64), and concludes that the observed price movements following the actionable misrepresentation (and related statistical significance of those movements) are consistent with the conclusion that there is a price impact. *Id.* at ¶¶71, 73, 78; *see also* Hartzmark Report at ¶96.

### 2. Defendants' Price Impact Argument Fails To Consider Finisar's Stock Price Change With Respect To The Corrective Disclosure

As this Court recognized in *Intuitive Surgical*, price impact analysis is appropriately focused on the "changes in the stock price with respect to the corrective disclosure dates, as opposed to the misrepresentations alleged, because this method more accurately captures the impact, if any, of a material misrepresentation or omission." *Intuitive Surgical*, 2016 U.S. Dist. LEXIS 178148, at *38. The Court is not alone in focusing on the corrective disclosure date it is joined by all others to decide the issue. *See*, *e.g.*, *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-226-YGR, 2016 U.S. Dist. LEXIS 34150, at *20-21 (N.D. Cal. Mar. 16, 2016) (price

impact "can be quantified by a decline in price when the truth is revealed"); *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d. 634, 659 (S.D. Ohio 2017) (finding the presumption of reliance is not rebutted where defendants "failed to show that there was no statistically significant price impact following the corrective disclosures in this case.").[8]

The reason that Defendants ignore the price impact after the corrective disclosure – and *instruct* their expert to do the same – is obvious: Finisar's stock price fell $15.43, or 39%, (on trading volume of 11.5x the average daily volume during the Class Period) following the corrective disclosure, which was statistically significant to a 99.9% degree of certainty. *See* Hartzmark Rebuttal Report at ¶71. Furthermore, the reporting of the disclosure by analysts and others included discussions relating the March 8, 2011 disclosure to the actionable December 2, 2010 misrepresentation. In combination, this is clear evidence of price impact and should end the inquiry; nevertheless, Defendants remain singularly focused on the price reaction immediately after the misrepresentation.

In persisting, Defendants urge this Court to make a more "careful reading" of *Hatamian* – which the Court cited in *Intuitive Surgical* – because that decision "did not endorse the proposition that a price decrease following a corrective disclosure <u>always</u> indicates a price impact for the earlier misrepresentation." Opp. at 17. Agreed; which is why Courts look to evidence provided by experts in making a case-by-case determination. In this case, however, Defendants have presented **no** evidence disputing the price impact following the corrective disclosure. This fails to meet Defendants' burdens of production and persuasion. *See Intuitive Surgical*, 2016 U.S. Dist. LEXIS 178148, at *37-38 (citation omitted).

---

[8] *See also In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 Civ. 3461 (PAC), 2015 U.S. Dist. LEXIS 128856, at *18 (S.D.N.Y. Sept. 24, 2015) (defendants "failed to demonstrate a complete lack of price impact" based on "decline in stock price on the corrective disclosure"); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 435 (S.D.N.Y. 2014) (finding evidence of price impact when "stock price plummeted" on corrective disclosure, *citing In re Bank of Am. Corp. Secs*, 281 F.R.D. 134, 143 (S.D.N.Y. 2012)); *Local 703, I.B. of T. Grocery & Food Emples. Welfare Fund v. Regions Fin. Corp.*, No. 10-J-2847-S, 2014 U.S. Dist. LEXIS 162403, at *19-20 (N.D. Ala. Nov. 19, 2014) (finding evidence of price impact when the stock price fell on the date of the curative disclosure).

Defendants further urge that the Court should limit any focus on the price impact of a corrective disclosure to cases advocating a "price maintenance" theory. Opp. at 17. There is no basis in the case law for this limitation, nor should there be considering the Court's rationale that focusing on the corrective disclosure date "more accurately captures the impact, if any, of a material misrepresentation or omission." *Intuitive Surgical*, 2016 U.S. Dist. LEXIS 178148, at *38. As Lead Plaintiff's expert explains in his Rebuttal Report, Defendants' actionable misrepresentation assuring the market that there was no inventory build-up, and thus no likely inventory correction, colored every subsequent statement regarding demand and sales that followed. Hartzmark Rebuttal Report at ¶¶55, 59-64. Viewed through the lens of Defendants' misrepresentation, investors were presented with a falsely optimistic calculus that increased demand for Finisar's product was the result of fundamental growth (as opposed to an inventory build-up). *Id.* at ¶55. Accordingly, after subsequent statements regarding demand and related analyst reports, there were statistically significant price increases of Finisar's stock price. *Id.* at ¶¶59-63.

In trying to create the appearance of an affirmative price impact analysis – and to engineer a desired result – Defendants instructed their expert to ignore these subsequent price increases and to focus only on the price increases on December 2, 2010 and December 3, 2010.[9] In support of this flawed approach, Defendants proffer (without citation) that in an efficient market, "the time of incorporation" of the actionable misrepresentation on December 2, 2010 would have been "within a time span of between a few hours to two days." Opp. at 8. To the contrary, the Ninth Circuit has expressly rejected such "bright-line" rules on market reaction timing in favor of a "fact-specific inquiry." *No. 84 Employer-Teamster Joint Council Pension*

---

[9] *See* Aganin Deposition at 97:19-98:9:

Q: Right. So when you say during that year there would be multiple releases of information by a variety of companies including Finisar, did your analysis test the statistical significance of any price reaction to any of those releases of new information concerning Finisar?

A: This was beyond the scope of my – of my assignment. As you – as – as a by-product of running statistical analysis, the statistical software identified days when Finisar stock changed in a statistically significant way during this period of time. But I did not specifically go and investigate every single day when the software flagged the day as having a statistically significant stock-price change. This was beyond the scope.

*Trust Fund v. American West Holding Corp.*, 320 F.3d 920, 934-35 (9th Cir. 2003) ("*Am. West*"); accord *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057-58 (9th Cir. 2007).

In *Am. West*, the Ninth Circuit rejected defendants' arguments that the alleged misrepresentations were *per se* immaterial "because the injurious drop in stock price took place more than one and a half months after the market learned the truth about the misrepresentations." *Gilead*, 536 F.3d at 1057 (explaining *Am. West*, 320 F.3d at 934). Instead, the Ninth Circuit "held that courts must engage in a fact-specific inquiry." *Id*. In *Gilead*, the Ninth Circuit affirmed that *Am. West*'s rejection of a "bright-line" rule in favor of a "fact-specific inquiry" "applies with equal force to the loss causation requirement. A limited temporal gap between the time a misrepresentation is publicly revealed and the subsequent decline in stock value does not render a plaintiff's theory of loss causation per se implausible." *Gilead*, 536 F.3d at 1057 (finding sufficient allegations of loss causation when the stock price fell **three months** after the corrective disclosure).

In *Am. West* and *Gilead*, the Ninth Circuit directed a fact-specific inquiry considering evidence of a price decrease 1.5 months and 3 months after an alleged corrective disclosure, respectively. It follows, then, that this Court should consider evidence of price impact on the day of the corrective disclosure (discussed above), ***as well as*** evidence of price impact after a "temporal gap" between the time of the misrepresentation and resulting price increases, as set forth in Dr. Hartzmark's Rebuttal Report, at ¶¶52-64.

### 3. Properly Conducted Analysis Indicates A Statistically Significant Price Increase After The Actionable Misrepresentation

The sole basis of Defendants' price impact argument is their claim that Dr. Aganin's analysis showed no statistically significant price increase 3 hours and 9.5 trading hours after (his best estimate as to when) the actionable misrepresentation was made on December 2, 2010. Opp. at 8, n.4; Expert Report of Alexander Aganin, Ph.D., filed September 27, 2017, Docket No. 136-2 ("Aganin Report") at ¶¶29-36. Even though the absence of a statistically significant price increase following the actionable misrepresentation on December 2, 2010 is not sufficient evidence of no price impact (*see, supra, Intuitive Surgical*, 2016 U.S. Dist. LEXIS 178148 at

*38), Defendants' argument fails because it relies on the erroneous results of Dr. Aganin's flawed regression analysis and scientifically unreliable choice of times to evaluate the price movements.

As explained by Lead Plaintiff's expert in the Rebuttal Report, Dr. Aganin's methodology contains 3 critical errors, resulting in a flawed empirical analysis. Hartzmark Rebuttal Report, at ¶10, 15-43.  These errors include: (1) A flawed regression specification; (2) improper selection of two discrete points in time (limited to 3 hours and 9.5 hours of trading) to evaluate price movement and statistical significance; and (3) an econometric error resulting from a biased "Industry" index that lacks independence from Finisar's return and is influenced by Finisar-specific news. *Id*. The correction of either of the econometric errors, along with scientifically determined time intervals, independently demonstrates that the price increase following the actionable misrepresentation on December 2, 2010 or December 3, 2010 was statistically significant. *Id.* at ¶¶15, 44-51.

After a lengthy explanation of Dr. Aganin's errors and how to correct them, Dr. Hartzmark demonstrates in his Rebuttal Report that when employing a correctly specified regression analysis, as well as an industry index that avoids the econometric problems inherent in Dr. Aganin's index, there is a statistically significant price increase in Finisar stock <u>four trading hours</u> after the misrepresentation, and <u>within two hours</u> after the opening of trading on December 3, 2010, at a 99.1% confidence level (t-statistic 2.62); and, <u>three and half trading hours</u> after the misrepresentation, and <u>within two hours</u> after the opening of trading on December 3, 2010, at a 98.9% confidence level (t-statistic 2.57) (*id*. at ¶50).[10]

When Dr. Aganin's flawed process is exposed, Defendants are left with no other evidence indicating that there was no price impact.

    **4.**    ***Best Buy* Is Instructive On Price Impact, Indicating Why Class Certification Is Appropriate In This Case**

---

[10] Dr. Hartzmark also finds that the price movements following the actionable misrepresentation are statistically significant even if he were to rely upon Dr. Aganin's flawed industry index or misspecified regression. *Id.* at ¶¶48, 49.

Defendants have constructed their Opposition and engineered their expert's results to make this case appear more similar to the *Best Buy* case decided by the Eighth Circuit, which appears to be the only case since *Halliburton II* to deny class certification based on defendants' showing of no price impact. *See Best Buy*, 818 F.3d 775. Despite Defendants' best efforts, the unavoidable legal and factual distinctions between *Best Buy* and this case weigh heavily in favor of this Court granting class certification.

As explained by the Eight Circuit, Best Buy issued a press release at **8:00 a.m.** on September 14, 2010, summarizing its reported financial performance for the second quarter of its 2011 fiscal year. *Id.* at 777. When the stock market opened for trading later that morning, Best Buy's stock price opened at $37.25, which was an increase of 7.5% from its closing price the previous day. *Id.* Then, at **10:00 a.m.** that same day, Best Buy's CEO and CFO held a conference call with investors, during which *they affirmed the information in the 8:00 a.m. press release*. *Id.* Following the 10:00 a.m. conference call, Best Buy's stock price remained flat, and did not increase throughout the rest of the day. *Id.; see also* Hartzmark Rebuttal Report at ¶68 (Chart 3, below).

**Best Buy Intraday Pricing**



Although the substance of the statements made in the 8:00 a.m. press release and on the 10:00 a.m. conference call was the same (*see infra*), the District Court found on a motion to dismiss that the 8:00 a.m. statements *were not* actionable, but some of the 10:00 a.m. statements *were* actionable. 818 F.3d at 778. This determination by the District Court became the keystone to the Eight Circuit's decision.

At class certification, the plaintiffs submitted an expert report demonstrating that the price of Best Buy stock increased on September 14, 2010 – the date of the 8:00 a.m. press release and the 10:00 a.m. conference call – and then decreased upon a corrective disclosure on December 14, 2010. *Id. at* 779-80. Best Buy and the other defendants submitted an expert report claiming that all of the price increase on September 14, 2010 occurred prior to the 10:00 a.m. conference call, and was the result of the same, but non-actionable statements in the 8:00 a.m. press release. *Id.* Still, the District Court granted class certification based on the price impact shown by the decrease in price following the corrective disclosure. *Id.* at 782.

The Eighth Circuit reversed based on a key fact not present in this case: in *Best Buy*, **plaintiffs' own expert** opined that the "economic substance of the [8:00 a.m.] non-fraudulent press release statements and the alleged misrepresentations in the immediately following [10:00 a.m.] conference call was **'virtually the same'** and that the two **'would have been expected to be interpreted similarly by investors.'**" *Id.* at 782. Further, because the 8:00 a.m. statements and 10:00 a.m. statements were "virtually the same," the plaintiffs in *Best Buy* could not rely on the price decrease following the "corrective" disclosure, because the "allegedly 'inflated price' was established by the non-fraudulent press release," and not the subsequent affirmation of the non-fraudulent statements. *Id.* at 783. **Notably**, the Eighth Circuit **still** considered the price decline after the corrective disclosure in its price impact analysis. *Id.*

In this case, there is no connection between Finisar's December, 1 2010 past earnings announcement for the previous quarter and the actionable December 2, 2010 misrepresentation regarding the possibility of an inventory build-up and likelihood of a future inventory correction. Indeed, Lead Plaintiff's expert makes clear that the two statements would be viewed differently by investors, from an economic standpoint. Hartzmark Rebuttal Report at ¶66 ("It is my opinion

that investors would interpret the two Finisar news statements differently, and react to the news differently. Thus, the major difference between *Best Buy* and the *Finisar* matters, is that the earlier news in the *Finisar* deals with past performance and some guidance (*i.e.*, earnings), which is substantively different from later misstatements at the Conference regarding the possibility of inventory build-up.").

The difference between this case and *Best Buy* is further highlighted by the fact that Finisar's stock price continued to increase (in a statistically significant manner, *see supra*) following the misrepresentation on December 2, 2010. See Hartzmark Rebuttal Report at ¶68 (Chart 3), ¶¶55-64.

**Finisar Intraday Pricing**



Most important, unlike in *Best Buy*, the decrease in Finisar's stock price following the March 8, 2011 corrective disclosure is directly attributable to the December 2, 2010 misrepresentation regarding the possibility of an inventory build-up and the likelihood of an inventory correction. *Id.* at ¶¶69, 72 (providing market commentary highlighting analysts'

reaction to the announced inventory issues and the impact that an inventory correction would have on demand in China).

The only similarity between *Best Buy* and this case is that both involve an actionable statement made during the middle of a trading day following a non-actionable statement that had a price impact. That similarity is too common of an occurrence to circumvent the fact-specific analysis of price impact that is directed by the Ninth Circuit, as urged by Defendants. *See Gilead*, 536 F.3d at 1057; *Am. West*, 320 F.3d at 934.

## III. CONCLUSION

For the reasons addressed above and in Lead Plaintiff's opening motion and supporting papers previously filed with the Court, Lead Plaintiff respectfully requests entry of an Order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, appointing Oklahoma Firefighters Pension and Retirement System as Class Representative, and appointing Abraham, Fruchter & Twersky, LLP as Class Counsel.

Dated: November 3, 2017

Respectfully submitted,

ABRAHAM, FRUCHTER &
   TWERSKY, LLP

     */s/ Ian D. Berg*
    IAN D. BERG

IAN D. BERG
TAKEO A. KELLAR
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel:   (858) 764-2580
Fax:  (858) 764-2582

- AND -

MITCHELL M.Z. TWERSKY
One Penn Plaza, Suite 2805
New York, NY 10119
Tel:   (212) 279-5050
Fax:  (212) 279-3655

*Counsel for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System*