UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FINISAR CORPORATION SECURITIES LITIGATION | Case No. 5:11-cv-01252-EJD<br><br>**ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 168, 170 |

## I. INTRODUCTION

Lead Plaintiff, the Oklahoma Firefighters Pension & Retirement System ("Plaintiff"), brings this putative securities fraud class action against Defendants Finisar Corporation ("Finisar"), Eitan Gertel, and Jerry S. Rawls (collectively, "Defendants"), alleging that Defendants issued a single false or misleading statement on December 2, 2010. Presently before the court are two motions: (1) Plaintiff's renewed motion for class certification (Dkt. No. 168); and (2) Defendants' motion for judgment on the pleadings against Plaintiff's Second Amended Complaint ("SAC"), which is entirely dependent on the outcome of the renewed motion for class certification (Dkt. No. 170). The motions were heard on May 13, 2019. Based upon all pleadings filed to date and the comments of counsel at the hearing, the court (1) will treat the renewed motion for class certification as a motion for leave to file a motion for reconsideration and will deny the motion for leave and STRIKE the motion for class certification, and (2) will GRANT Defendants' motion for judgment on the pleadings.

## II. BACKGROUND

### A. Allegations In The Second Amended Complaint

Plaintiff brings this action on behalf of itself and a class of all persons and entities who purchased or otherwise acquired the common stock of Finisar between December 2, 2010 and March 8, 2011 (the "Class Period"). SAC ¶ 1. Finisar is a technology company that "develops and sells fiber optic subsystems and components that enable high-speed voice, video and data communications for telecommunications, networking, storage, wireless and cable television applications." *Id*. ¶ 2. Eitan Gertel ("Gertel") served as Chief Executive Officer ("CEO") and a director of Finisar from August 2008 to September 2015. *Id*. ¶ 23. Jerry S. Rawls ("Rawls") has served as Chairman of the Board of Finisar since 2006 and was appointed CEO in September 2015. *Id*. ¶ 24.

Prior to the Class Period, Finisar experienced six consecutive fiscal quarters of revenue growth, which Plaintiff alleges was driven primarily by sales of its wavelength selective switches ("WSS") and reconfigurable optical add/drop multiplexers ("ROADM") linecard telecom products. *Id*. ¶¶ 30-33. During this phase of growth but prior to the Class Period, analysts in the industry "suspected that this growth was driven by customers building-up inventory rather than purchasing Finisar products for immediate use in production." *Id*. ¶ 3. Finisar did not affirm nor deny the inventory build-up suspicions during this time, and as a result, "Finisar's stock price remained relatively consistent over the course of the six-quarters of record-growth." *Id*. ¶ 36.

On December 2, 2010, Finisar's then-CEO, Gertel, "participated in the Credit Suisse Technology Conference call with analysts, media representatives, and investors." *Id*. ¶ 62. During this call, an analyst from Credit Suisse highlighted that Finisar had "significantly outgrown [its] end markets for the last six quarters" and raised the fear that the company's growth "is going to revert." *Id*. The analyst then asked, "Can you help us understand how it's possible for the company to not only sustain that [growth] but continue to grow faster than the end markets?" *Id*. In response, Gertel provided the following explanation:

CASE NO.: 5:11-CV-01252-EJD

ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

2

> So if you look at the market, you see the fundamentals for growth are there. People need more higher bit rate products, more sophisticated products to address the cost reduction that the network needs and the demand continues.
>
> As far as we know we haven't seen any inventory issues with our product with our customers. Our product—our business is 60/40, basically 40% is LAN/SAN business, 60% is telecom. On the LAN/SAN side, by far the majority of our sales is a vendor- managed inventory. So we have visibility to what people have. There is no reason for them to have inventory because we own the inventory. So we're pretty safe with that.
>
> And on the telecom side, look, there can be one or two guys who try to build their own inventory, but by far the majority of the customers expediting products and doesn't look to us, not visible to us at all, all these quarters if they are building any inventory.

*Id*. ("December 2nd statement").

The same day Gertel made this statement, Finisar's common stock increased $3.29 per share (or 16.64%), going from $19.77 per share on December 1, 2010, to close at $23.06 per share on December 2, 2010. *Id*. ¶¶ 13, 63. The following day, on December 3, 2010, the price per share increased another $0.95 (or 4.12%). *Id*. ¶ 63. Plaintiff alleges that Finisar's stock price continued to rise in this manner throughout the Class Period, reaching a Class Period high of $43.23 per share on February 14, 2011. *Id*. ¶¶ 63, 77.

On March 8, 2011, Finisar issued a press release indicating that its fourth quarter revenues would be lower than projected due in part to "the previously undisclosed inventory build-up at some of the Company's telecom customers and a slowdown in business in China." *Id*. ¶ 78. In reaction to the March 8 press release, Finisar's stock price dropped by $15.43 per share, falling from $40.04 per share on March 8, 2011 to close at $24.61 on March 9, 2011, "marking a one-day decline of nearly 39%." Id. ¶¶ 6, 68, 81.

### B. Procedural History

Plaintiff filed its first motion to certify the class in 2017. Plaintiff relied on the fraud-on-the-market presumption to satisfy the Rule 23 requirement that common questions predominate. *See Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). Plaintiff contended that prior to the December

CASE NO.: 5:11-CV-01252-EJD

ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

3

2nd statement, market analysts questioned whether and to what extent Finisar's growth and increased sales were attributable to an inventory build-up by customers rather than market demand. Pl.'s Mot. at 4:5-7. Defendants remained silent regarding the possibility of an inventory build-up and accordingly (*id*. at 4:15-16), "Finisar's stock price remained relatively constant prior to the Class Period, and it did not rise in proportion to the Company's record-setting revenue growth" (i*d*. at 4:17-19). Plaintiff theorized that the December 2nd statement assured the market that there was no inventory build-up, and as a result, Finisar's common stock "shot up" from $19.77 per share on December 1, 2010 to its Class Period high of $43.23 per share. *Id*. 5:6-7 (citing SAC ¶ 13).

Consistent with the allegations in the SAC, Plaintiff's expert, Michael L. Hartzmark, Ph. D. ("Hartzmark") opined as follows:

> 4. ***Cause and Effect Analysis Examining the Earnings Disclosure at Start of Class Period***
>
> 92. I next present descriptive information related to the abnormal return on the only other date between December 1, 2010 and the end of the Class Period when there was an earnings disclosure made by Finisar management. On December 1, 2010, after the market closed, Finisar released its earnings for its second quarter ending October 2010. The accompanying press release was titled: "Finisar Corporation Announces Record Revenues and Profitability." Because the release was issued after the market closed and the Company held its earnings conference call at 5:00 p.m. on December 1, 2010, it would be expected in an efficient market for the price reaction, if any, to take place on the following date, namely December 2, 2010. Furthermore, while the market was open on December 2, 2010, Finisar participated in the Credit Suisse Technology Conference that included "analysts, media representatives, and investors" wherein the Company further discussed its financial performance and expectations.
>
> 93. On December 2, 2010, Finisar's stock price responded rapidly, opening up by 6.80% and closing up by a statistically significant amount of 16.64%, meaning the news was unexpected and material from a statistical perspective. The volume on December 2, 2010 was 9,213,074 shares, which was at single highest level during the Class Period and it was more than 2.5 times the average daily volume of 3,482,348 shares during the Class Period. On December 3, 2010, there continued to be above average trading activity and

CASE NO.: 5:11-CV-01252-EJD

ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

4

> Finisar's stock price continued to rise, however, the close-to-close price increase of 4.12% from December 2 to December 3, 2010, is statistically insignificant. This suggests that there was an open and developed market with sufficient liquidity to absorb the trading demands of the many investors who were acting on their interpretations of the new information and that the market reacted rapidly to the earnings announcement made after the close of market on December 1, 2010 as well as the information disclosed during the Credit Suisse Technology Conference on December 2, 2010. *See* **Appendix D**.
>
> 94. Overall, there was a rapid price response to Finisar's disclosures on December 1 and 2, 2010. There was a positive abnormal return on December 2, 2010 that is highly statistically significant (with a p-value below 1%, which denotes statistical significance below the 1% level). Thus, I can say with 99% confidence that the price impact on December 2, 2010 was not due to a random price movement or chance.

Report of Michael L. Hartzmark, Ph.D. ("Hartzmark 1") ¶¶ 92-94 (Dkt. No. 132-1) (footnote citations omitted; emphasis in original). Hartzmark also opined that "there is no evidence of a lack of price impact when one examines the reaction of the Finisar common stock to the disclosure on March 8, 2011." *Id.* ¶ 96.

Defendants opposed the original motion to certify the class by presenting evidence and argument to rebut the fraud-on-the-market presumption under *Erica P. John Fund, Inc. v. Halliburton Co.*, 134 S.Ct. 2398 (2014). Defendants contended (a) that Gertel's statement did not have an impact on Finisar's stock price at the time the statement was made; and (b) that price impact cannot be inferred from the stock price drop after the purported "corrective disclosure" on March 8 because there was no pre-existing price inflation, i.e. the "price maintenance" theory was inapplicable. Dkt. No. 136.

In its reply brief and accompanying expert rebuttal report ("Hartzmark 2"), Plaintiff argued that Defendants failed to rebut the fraud-on-the-market presumption. Plaintiff argued, among other things, that Gertel's statement caused the stock price to increase immediately after it was made; that Gertel's statement and six analyst reports issued between December 13, 2010 and February 4, 2011 caused the stock price to increase; and that Defendants had failed to present evidence disputing the price impact following the corrective disclosure. Defendants filed

CASE NO.: 5:11-CV-01252-EJD

ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

5

evidentiary objections, a sur-reply, and their own expert rebuttal report.

The court found Defendants' arguments persuasive. More specifically, the court found that the December 2nd statement had been made after the stock price had already increased from the previous day's close; the report of Defendants' expert, Alexander Aganin, was persuasive and the December 2nd statement did not cause the stock price to increase when the statement was made; that Plaintiff had not alleged that the stock price was artificially high at the time of the Gertel's statement, and therefore the price maintenance theory was inapplicable; and the post-December 2 analyst reports introduced new information into the market about inventory and growth conditions for which Defendants were not responsible and which severed the link between Gertel's statement and any increase in Finisar's stock. Thus, the court held that Defendants had rebutted the presumption of fraud-on-the market reliance by demonstrating through a preponderance of evidence that Gertel's December 2nd statement had no price impact when made or thereafter. *See* Order Denying Motion For Class Certification (Dkt. No. 150).

Plaintiff sought and was granted leave to file a motion for reconsideration. Dkt. Nos. 151-153. Plaintiff strenuously argued: (a) that price impact is not measured solely by stock price increase on the date of a misstatement, but must be measured by the stock price at the time of the "corrective disclosure" (citing *In re Vivendi, SA Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016), *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), and *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282 (11th Cir. 2011)); (b) the court ignored Plaintiff's evidence of immediate price impact following the December 2nd statement (*see* Rebuttal Report at ¶¶ 44, 47-51); (c) the court improperly placed the burden on Plaintiff to show immediate price impact; and (d) the court erred in determining that analyst reports issued after the December 2nd statement constituted new information that severs the link between the statement and any increase in Finisar's stock. Dkt. No. 153. Predictably, Defendants strenuously disagreed with each of Plaintiff's arguments (Dkt. No. 154) and on January 18, 2018, the court ultimately denied Plaintiff's motion for reconsideration because Plaintiff had not shown a manifest failure by the

CASE NO.: 5:11-CV-01252-EJD

ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

6

court to consider material facts or dispositive legal arguments that were presented to the court before the court issued its ruling denying class certification. Dkt. No. 155.

Plaintiff next sought and was granted a stay of discovery pending a ruling on Plaintiff's Petition for Permission to Appeal Pursuant to Rule 23(f) from the Order Denying Motion For Class Certification. Dkt. Nos. 157-58. The Ninth Circuit denied Plaintiff's petition for permission to appeal the Order Denying Plaintiff's Motion For Class Certification and the January 18, 2018 order denying Plaintiff's motion for reconsideration. Dkt. No. 159.

Plaintiff now renews its motion for class certification based upon purported "new evidence" regarding the price impact of the December 2nd statement. The purported "new evidence" consists of a new expert report by Hartzmark ("Hartzmark 3") not previously submitted to the court. Plaintiff argues that this purported new evidence demonstrates "that the December 2nd statement "immediately caused artificial inflation in Finisar's stock price (which does not necessarily equate with, or require, an increase in market price), and that the introduction of artificial inflation maintained the market price of Finisar stock – which otherwise would have declined had the truth been disclosed in response the analyst's question regarding customer inventory." Pl.'s Mot. at 2. Plaintiff summarized its argument as follows:

> Specifically, Plaintiff applies generally-accepted econometric methods commonly employed – and accepted by courts – in a loss causation analysis to determine the daily level of artificial inflation per share in Finisar stock during the Class Period. "Loss causation" is demonstrated by empirical evidence that a corrective disclosure of the truth (related to the alleged misrepresentation) caused a statistically significant decline in the market price of the stock, with the abnormal return representing and quantifying the removal of artificial inflation resulting from that disclosure. Then, working backwards from the disclosure of the truth, empirical evidence demonstrates and quantifies when the stock price increased by a statistically significant amount associated with relevant new information (in this case, news about Finisar or its inventory). Here, to be most conservative and accepting arguendo that those increases were not caused by the December 2 Misrepresentation, the amounts of those price increases were deducted from the total amount of artificial inflation removed from the stock price after the corrective disclosure on March 8, 2011. By removing all other instances of when firm-specific news caused Finisar's stock price to increase

CASE NO.: 5:11-CV-01252-EJD

ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

7

> during the Class Period, any remaining measure of artificial inflation removed from the stock price after the corrective disclosure must be attributed to the December 2 Misrepresentation, which introduced artificial inflation into Finisar's stock price and thus had a price impact.

*Id*. at 3:5-20.

Defendants contend that the motion should be denied at the threshold because Plaintiff has not made the requisite showing under Civil Local Rule 7-9 to warrant reconsideration. Defendants further contend that the price decline after the purported corrective disclosure on March 8 does not show price impact.

## III. STANDARDS

Civil Local Rule 7-9(a) allows a party to seek leave to file a motion for reconsideration before the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case. The party seeking leave to file a motion for reconsideration must "specifically show reasonable diligence in bringing the motion" and one of the three grounds for reconsideration set forth in Civil Local Rule 7-9(b). The three grounds for reconsideration are:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered

CASE NO.: 5:11-CV-01252-EJD

ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

8

evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir. 1999).

**IV. DISCUSSION**

    **A. Reconsideration Is Unwarranted**

Plaintiff's purported new evidence—Hartzmark 3—and arguments based upon that evidence do not justify reconsideration. Plaintiff's characterization of Hartzmark 3 as new evidence does not make it so. Hartzmark 3 may have been newly procured, but that does mean there is an "emergence of new material facts" under Civil Local Rule 7-9(b)(2). Defendants assert, and Plaintiff's do not deny, that all of the information underlying Hartzmark 3 existed at the time of the prior briefing. Hartzmark 3 is not new evidence and should have been presented as part of the briefing on the original motion for class certification, In the absence an emergence of new material facts, Civil Local Rule 7-9(b)(2) is inapplicable.

Nor is reconsideration warranted under Civil Local Rule 7-9(b)(1) because Plaintiff has not shown "that in the exercise of reasonable diligence" Plaintiff "did not know such fact . . . at the time of the interlocutory order." Civil L.R. 7-9(b)(1). "A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *First Financial Security, Inc. v. Jones*, No. 17-773 BLF, 2017 WL 6316811, *2 (N.D. Cal. Dec. 11, 2017); *see also In re Federal Home Loan Mtg. Corp. Sec. Litig.*, No. 09-2072 MGC, 2012 WL 4435292, at *1 (S.D.N.Y. Sept. 26, 2012) (recognizing court's "ample discretion" to consider revised class certification motion, but rejecting new certification motion without evidence of changed circumstances); *Lanovaz v. Twinings North America, Inc.*, No. 12-2646 RMW, 2014 WL 7204757 at *2 (N.D. Cal. Dec. 17, 2014) (holding that Rule 23(c)(1)(c) does not support "allowing a second motion for class certification on the basis that plaintiff could pursue a 'new' or alternative damages theory not previously proposed"); *Silicon Valley Self Direct, LLC v. Paychex, Inc.*, No. 15-1055 EJD, 2015 WL 5012820, at *2 (N.D. Cal. Aug. 24, 2015) ("Reconsideration does not allow party to raise arguments it should

CASE NO.: 5:11-CV-01252-EJD
ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

9

have made earlier."). A reconsideration motion is "not a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2nd Cir. 1998).[1]

### B. The Preponderance of the Evidence Establishes No Price Impact

Although Plaintiff has not made the requisite showing to warrant reconsideration, the court has reviewed Plaintiff's motion, which can be distilled into essentially two arguments, and rejects each of these arguments as explained briefly below.

First, Plaintiff takes issue with the court's conclusion that Plaintiff "is not proceeding on a price maintenance theory." Pl.'s Mot. at 5:5-7. The court's conclusion is supported by the Complaint, as well as the arguments and expert opinions Plaintiff offered in support of its initial motion to certify the class. There are no allegations in the Complaint suggesting that Finisar's stock was inflated before the December 2nd statement. Instead, the Complaint simply alleges that "Finisar's stock price remained relatively consistent over the course of the six-quarters of record-growth." *Id.* ¶ 36. To the extent the Complaint may have been indefinite, Plaintiff made its position clearer in its original motion for class certification by asserting that "Finisar's stock price remained relatively constant prior to the Class Period, and it did not rise in proportion to the Company's record-setting revenue growth." Pl.'s Motion for Class Certification at 4:17-19 (Dkt. No. 131). This suggests that Finisar's stock price was depressed rather than inflated before the December 2nd statement. Moreover, Plaintiff asserted in its original Motion for Class Certification that as a result of the December 2nd statement, Finisar's common stock "shot up." *Id.* 5:6-7 (citing SAC ¶ 13). The doctrine of judicial estoppel prohibits Plaintiff's from taking an inconsistent position and now asserting for the first time now that Finisar's stock was inflated

---

[1] Plaintiff argues in a footnote that the court should reconsider its prior ruling because of "subsequent decisions" and cites as an example, *Baker v. SeaWorld Entm't, Inc.*, No. 14-2129 MMA, 2017 WL 5885542, at *11 (S.D. Cal. Nov. 29, 2017). Pl.'s Reply at 4, n.3. The *Baker* decision was issued before this court issued its Order Denying Motion For Class Certification on December 5, 2017 (Dkt. No. 150). As such, Plaintiff has not shown a "change of law" to warrant reconsideration under Civil Local Rule 7-9(b)(2).

CASE NO.: 5:11-CV-01252-EJD

ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

10

prior to the December 2nd statement and that the December 2nd statement had the effect of maintaining or buoying the stock price. *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001) (doctrine "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."). Plaintiff has not previously and cannot now proceed on a price maintenance theory, and Plaintiff's reliance on price maintenance impact cases such as *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2nd Cir. 2016)[2] is misplaced.

        Second, Plaintiff contends that Hartzmark 3 supports "Plaintiff's claims that Mr. Gertel's alleged misrepresentation distorted Finisar's stock price by propping it up through the introduction of a statistically significant level of artificial inflation, which is affirmative evidence of price impact." Pl.'s Mot. at 12:4-7. The court reiterates that Hartzmark 3 is not new evidence and should have been presented as part of the briefing on the original motion for class certification. In any event, the court has reviewed Hartzmark 3 and Defendants' criticisms of the report. Many of Defendants' criticisms are valid. For example, Hartzmark's study purports to control for the effect of some, but not all, of the six analyst reports issued after December 2nd. Hartzmark's study did not address PiperJaffray's December 13 report, which stated: "We touched base with a variety of contacts in the Optical sector and feel incrementally more confident regarding near-term demand and longer-term growth opportunities. We believe the favorable bandwidth drivers which consume increasingly more optical components will continue to drive growth for FNSR and others in this space." On January 5, PiperJaffray reported: "Initial data points from our industry contacts in networking, storage and telco suggest 2010 closed out strong and the pipeline heading into 2011 remains robust." Aganin 3 Ex. RR-4 at 30, 36. That same day, the Juda Group wrote that management's tone at recent meetings "validates our recent checks indicating that business trends

---

[2] *See also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 at 417-18 (plaintiff claimed "actual inflation" based on market misunderstanding of facts on first day of class period); *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1313 (11th Cir. 2011) (price "inflated by 26.44 percent before and throughout the Class Period").

CASE NO.: 5:11-CV-01252-EJD
ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
11

in the telecom optical component market remain strong with Finisar and JDSU outperforming peers." *Id*. Ex. RR-4 at 34. These analyst reports and the others referred to in the court's Order Denying Motion For Class Certification sever the link between the December 2nd statement and any stock price increase. After reviewing the purportedly new evidence, the court concludes at it did previously that Defendants have demonstrated by a preponderance of the evidence that the December 2nd statement had no price impact for the reasons previously stated in the court's Order Denying Motion For Class Certification.

## V. CONCLUSION

For the reasons set forth above, the court construes Plaintiff's motion for class certification as a motion for leave to file a motion for reconsideration. Because there is no basis for reconsideration, the court STRIKES Plaintiff's improperly renewed motion for class certification. Plaintiff acknowledges that Defendants' motion for judgment on the pleadings is entirely dependent on the court's ruling on the motion for class certification. Pl.'s Opp'n 1:6-7. Accordingly, Defendants' motion for judgment on the pleadings is GRANTED.

**IT IS SO ORDERED.**

Dated: May 24, 2019

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:11-CV-01252-EJD

ORDER STRIKING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
12