IAN D. BERG   (Bar No. 263586)
TAKEO A. KELLAR   (Bar No. 234470)
ABRAHAM, FRUCHTER
    & TWERSKY, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel:    (858) 764-2580
Fax:    (858) 764-2582
*iberg@aftlaw.com*
*tkellar@aftlaw.com*

*Counsel for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FINISAR CORPORATION SECURITIES LITIGATION | Case No. 5:11-CV-01252-EJD <br><br> CLASS ACTION <br><br> NOTICE OF MOTION AND MOTION TO CONDITIONALLY VACATE JUDGMENT ON THE PLEADINGS AGAINST LEAD PLAINTIFF AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> Date:          October 1, 2020 <br> Time:         9:00 a.m. <br> Courtroom:   4 <br> Judge:        Hon. Edward J. Davila |

1

## TABLE OF CONTENTS

2

Page

3  TABLE OF AUTHORITIES ................................................................................ iii

4  NOTICE OF MOTION AND MOTION ........................................................... vi

5  STATEMENT OF ISSUES TO BE DECIDED ................................................ vi

6  MEMORANDUM OF POINTS AND AUTHORITIES ......................................1

7  I.   PRELIMINARY STATEMENT ...............................................................1

8       A.   The Procedural History Of The Litigation...................................3

9       B.   Settlement Negotiations And The Proposed
             Settlement ......................................................................................5

10 II.  ARGUMENT ..............................................................................................7

11
12      A.   The Judgment Entered Against Plaintiff On June 14,
             2019 Should Be Conditionally Vacated Solely For
             Purposes Of Effectuating and Consummating The
13           Proposed Settlement......................................................................8

14      B.   The Proposed Settlement Class Meets The
             Prerequisites For Settlement Class Certification
15           Under Rule 23 ................................................................................9

16           1.   The Proposed Settlement Class Satisfies
                  Rule 23(a)..........................................................................11

17
18           2.   The Settlement Class Meets The
                  Requirements Of Rule 23(b) ............................................13

19      C.   Preliminary Approval Of The Settlement Is
             Appropriate .................................................................................15

20
21           1.   The Settlement Is The Product of Good-
                  Faith, Arm's-Length Negotiations Between
                  Well-Informed And Experienced Counsel
22                Mediated By An Experienced Private
                  Mediator ...........................................................................15

23
24           2.   The Settlement Has No Obvious
                  Deficiencies And Does Not Improperly
                  Grant Preferential Treatment To Lead
25                Plaintiff Or Segments Of The Settlement
                  Class .................................................................................16

26
27           3.   The Settlement Is Well Within The Range
                  Of Reasonableness And Warrant Notice
                  And A Hearing On Final Approval....................................17

28      D.   The Plan Of Allocation Is Fair And Reasonable ........................20

E.     The Court Should Approve The Form Of Notice
       And The Plan For Providing Notice To The
       Settlement Class ................................................................21

F.     Attorneys' Fees And Litigation Expenses ...........................24

III.   PROPOSED SCHEDULE OF EVENTS ...........................................25

IV.    CONCLUSION ..............................................................................25

# TABLE OF AUTHORITIES

<u>Case</u>                                                                                          <u>Page</u>

*Ahern v. Central Pacific Freight Lines*,
    846 F.2d 47 (9th Cir.1988) .................................................................................. 8

*Am. Games, Inc. v. Trade Prods., Inc.*,
    142 F.3d 1164 (9th Cir. 1998) ............................................................................ 8

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................. 9, 10, 13, 14

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988).......................................................................................... 14

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) .......................................................................... 11, 13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................ 18

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Circ. 1992)......................................................................... 20

*Grant v. Capital Mgmt. Servs., L.P.*,
    2013 WL 6499698 (S.D. Cal. Dec. 11, 2013)................................................... 7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................ 2, 9, 11, 12, 13

*Hebrew Univ. of Jerusalem v. Gen. Motors LLC*,
    2015 WL 9653154 (C.D. Cal. Jan. 12, 2015) .................................................. 8

*Hicks v. Morgan Stanley & Co.*,
    2003 WL 21672085 (S.D.N.Y. July 16, 2003) ................................................ 13

*In re Adobe Sys., Inc. Sec. Litig.*,
    139 F.R.D. 150 (N.D. Cal. 1991)...................................................................... 10

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012)........................................................................ 9, 10, 14

*In re Apollo Group, Inc. Sec. Litig.*,
    2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ................................................... 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................ 15

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009)................................................................... 10, 13

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................................. 21

*In re HP Sec. Litig.*,
  2015 WL 4477936 (N.D. Cal. July 20, 2015) ........................................................ 23

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) .................................................................... 9, 13

*In re Intuitive Surgical Sec. Litig.*,
  2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ............................................. 11, 12, 13

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 519 (N.D. Cal. 2009) ................................................................... 11

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ................................................................... 18

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
  2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) ...................................................... 12

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................................... 15

*In re Nuvelo, Inc. Sec. Litig.*,
  2011 WL 2650592 (N.D. Cal. July 6, 2011) ........................................................ 24

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 7, 16, 17

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................................................... 24

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................... 7, 10

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 15

*In re THQ Inc. Sec. Litig.*,
  2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ...................................................... 10

*In re VeriSign, Inc. Sec. Litig.*,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ...................................................... 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Li*ab. Litig.*,
  2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ...................................................... 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) ...................................................... 24

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  1988 WL 158947 (W.D. Wash. July 28, 1988) ...................................................... 18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ........................................................ 15

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................................ 7

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ........................................................................ 12

*Louie v. Kaiser Found. Health Plan, Inc.*,
  2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ...................................................... 18

*McPhail v. First Command Fin. Planning, Inc.*,
  247 F.R.D. 598 (S.D. Cal. 2007) .................................................................... 14

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015) .......................................................................... 7

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................................... 7, 10, 19

*Orvis v. Spokane Cty.*,
  281 F.R.D. 469 (E.D. Wash. 2012) .................................................................... 19

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ........................................................................... 24

*Reynolds v. Direct Flow Med., Inc.*,
  2019 WL 1084179 (N.D. Cal. Mar. 7, 2019) .................................................... 17

*Rieckborn v. Velti PLC*,
  2015 WL 468329 (N.D. Cal. Feb. 13, 2015) .................................................... 24

*Rodriguez v. Carlson*,
  166 F.R.D. 465 (E.D. Wash. 1996) .................................................................... 11

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................................................. 15

*Stewart v. Applied Materials, Inc.*,
  2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ................................................. 16

*Young v. Polo Retail, LLC*,
  2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) .................................................. 16

Statutes

15 U.S.C. § 78u-4(a)(7) ................................................................................... 22

15 U.S.C. § 78u-4(e) ....................................................................................... 20

28 U.S.C. § 1715 (2005) ................................................................................. 22

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Plaintiff" or "Oklahoma Firefighters") hereby moves for an Order (1) vacating the Judgment against Plaintiff entered June 14, 2019 (Dkt. 190) in order to effectuate the proposed class action settlement (the "Settlement"); (2) certifying a class (the "Settlement Class") only for purposes of settling this Action; (3) preliminarily approving the proposed Settlement; (4) approving the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (5) scheduling a hearing before the Court to determine whether to approve the proposed Settlement, the proposed plan of allocation (the "Plan of Allocation"), and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.  This Motion is set for hearing at 9:00 a.m. on October 1, 2020, or as soon thereafter as the matter may be heard, before the Honorable Edward J. Davila of the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 4, 280 South 1st Street, San Jose, CA 95113.

The bases for this Motion are that the proposed Settlement Class satisfies Fed. R. Civ. P. 23(a) and (b)(3); the proposed Settlement is within the range of what could be found to be fair, reasonable, and adequate; and the proposed form and manner of notice satisfy Fed. R. Civ. P. 23(c)(2)(B), and that the Judgment which was granted on the pleadings against Plaintiff should be vacated in order to effectuate the settlement on behalf of the proposed settlement class.  Thus, notice should be disseminated to the proposed Settlement Class members, and a hearing for final approval of the proposed Settlement should be scheduled.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Judgment granted against Plaintiff and entered June 14, 2019 (Dkt. 190) should be vacated solely for purposes of effectuating the Settlement.

2.      Whether the Settlement Class should be certified for purposes of the Settlement.

3.      Whether the Settlement is within the range of fairness, reasonableness, and adequacy to warrant preliminary approval and the dissemination of notice to the proposed Settlement Class.

4.      Whether the proposed forms of Settlement notice and proof of claim and release

form and the manner for disseminating them to the Settlement Class should be approved.

5.     Whether the Court should schedule a hearing on final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and reimbursement of expenses.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      PRELIMINARY STATEMENT**

Lead Plaintiff Oklahoma Firefighters, through its counsel Abraham, Fruchter & Twersky LLP ("Lead Counsel"), respectfully submits this memorandum in support of Plaintiff's motion to conditionally vacate the Judgment entered against Lead Plaintiff on June 14, 2019, and for preliminary approval of the proposed Settlement.   The Settlement provides a recovery of $6.8 million in cash to finally and fully resolve this securities class action against Defendants Finisar Corporation ("Finisar" or the "Company"), Jerry S. Rawls, and Eitan Gertel (collectively, "Defendants"), for the benefit of the members of the proposed Settlement Class.  The terms of the Settlement are contained in the Stipulation and Agreement of Settlement, dated July 8, 2020 (the "Stipulation" or "Stip."), submitted herewith.[1]  In accordance with Fed. R. Civ. P. 23(e), Plaintiff seeks an order vacating the Judgment entered on June 14, 2019 against Plaintiff and preliminary approving the Settlement so that notice can be given to the Settlement Class members and a hearing on a motion for final approval of the Settlement can be scheduled.[2]

Plaintiff respectfully submits that the Settlement is a good result for the Settlement Class and should be preliminary approved by the Court.   The Settlement provides a certain and immediate benefit to the Settlement Class in the face of no recovery at all, and eliminates significant risks and further delay and expenses in this case that already has been litigated for over nine years and would still require a successful appeal by Plaintiff, and then additional discovery, summary judgment, trial and potentially further appeals.  The Parties agree that the pending appeal to the Ninth Circuit was a driving force in reaching the Settlement, given that both sides believe

---

[1] All capitalized terms used in this motion that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

[2] A proposed Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), with annexed exhibits, which was negotiated by the Parties (Ex. A to the Stipulation), is submitted herewith.

they would be successful on appeal, but both sides understand the risks, uncertainty and costs of further litigation.  While this case was on appeal, by order from the Ninth Circuit's Mediation Program, Plaintiff and Defendants continued previously started private mediation efforts with a respected private mediator, through which the Parties held extensive arms'-length negotiations and were able to negotiate the proposed Settlement.  Among other things, the decision to settle this hard-fought litigation was informed by a comprehensive investigation, multiple amended complaints, intensive motion practice, a prior appeal to the Ninth Circuit, and extensive discovery.

The Settlement is contingent on this Court's approval, including certification of the Settlement Class, which Defendants have agreed to for Settlement purposes only.  Without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to settle.  The Ninth Circuit has long recognized that courts may certify class actions for the purposes of settlement only.  *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1023-24 (9th Cir. 1998).  For purposes of effectuating and consummating the Settlement, the Parties stipulate and agree that the Judgment against Plaintiff entered June 14, 2019 (Dkt. 190) should be vacated; but not the Order Striking Plaintiff's Motion for Class Certification; Granting Defendants' Motion For Judgment On The Pleadings, dated May 24, 2019 (Dkt. 187), nor the Order Denying Motion For Class Certification, dated December 5, 2017 (Dkt. 150).

On July 8, 2020, pursuant to guidance from the Ninth Circuit Mediator, the Parties filed a joint stipulation with the Ninth Circuit dismissing Plaintiff's appeal, without prejudice to reinstating the appeal if this Court denies approval of the Settlement or if the Settlement is terminated pursuant to the terms of the Stipulation.  On July 10, 2020, the Ninth Circuit entered an Order remanding this case so that jurisdiction may re-vest in this Court to consider the Settlement (Dkt. 198).  Accordingly, denying approval of the Settlement would cause the unraveling of a proposed Settlement successfully obtained as a result of the Ninth Circuit's mediation program, which is designed to promote efficient adjudication of disputes and to preserve finite judicial resources.  *See A Message From Chief Judge Sidney R. Thomas*, U.S. Court of Appeals for the Ninth Circuit ("The court offers this service … because it helps resolve disputes quickly and efficiently and can often provide a more satisfactory result than can be achieved

through continued litigation"), available at https://www.ca9.uscourts.gov/mediation/ (last visited on July 8, 2020).   Along with the benefits to the Settlement Class and factors supporting preliminary approval, the avoidance of unnecessarily expending judicial resources also supports approval of the Settlement.

For the reasons stated herein, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, negotiated by the Parties and submitted herewith, which will:  (i) conditionally vacate the Judgment against Plaintiff entered June 14, 2019 for the purpose of  effectuating the Settlement if approved; (ii) certify the Settlement Class and appoint Oklahoma Firefighters as class representative and Lead Counsel as class counsel, for purposes of the Settlement only; (iii) preliminarily approve the Settlement as fair, reasonable, and adequate to the Settlement Class; (iv) approve the forms and methods of giving notice to the Settlement Class and direct that notice be issued; and (v) set a date for a hearing on final approval of the Settlement.

### A.   The Procedural History Of The Litigation

On March 15, 2011, a class action complaint was filed in the Court, styled *Derchi-Russo v. Finisar Corp., et al.*, No. 5:11-CV-1252-EJD.  A related class action complaint was filed in the Court on April 4, 2011, styled *Wade v. Finisar Corp., et al.*, No. 5:11-CV-1635-EJD.   On October 27, 2011, the Court entered an order consolidating the cases and appointing Oklahoma Firefighters as Lead Plaintiff in the Action; and approved Oklahoma Firefighters' selection of Abraham, Fruchter & Twersky, LLP as Lead Counsel in the Action.  By order dated November 7, 2011, the case was recaptioned as *In re Finisar Corporation Securities Litigation*, No. 5:11-CV-1252-EJD.

On January 20, 2012, Plaintiff filed a Consolidated Class Action Complaint ("Consolidated Complaint") asserting securities fraud claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Finisar, Rawls, Gertel and Kurt Adzema; as well as claims under Section 20(a) of the Exchange Act against Rawls, Gertel, and Adzema.  Kurt Adzema was dismissed with prejudice as a defendant in this Action and is not a party to this Settlement.  On March 23, 2012, Finisar, Rawls, Gertel and Adzema filed a motion to dismiss the Consolidated Complaint.  After briefing, on January 16, 2013, the Court granted the motion to dismiss the Consolidated Complaint with leave to amend.

On February 6, 2013, Plaintiff filed the First Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "First Amended Complaint") against Finisar, Rawls, Gertel and Adzema.  On February 20, 2013, Finisar, Rawls, Gertel and Adzema filed a motion to dismiss the First Amended Complaint.  After briefing, on September 30, 2013, the Court entered an order granting dismissal of the First Amended Complaint with prejudice.

On October 25, 2013, Plaintiff filed a Notice of Appeal of the dismissal of the Action to the Ninth Circuit Court of Appeals.  After briefing and oral argument, on January 8, 2016, the Ninth Circuit entered a Memorandum Order reversing dismissal and remanding to the Court for further consideration and leave to amend.  Defendants' petition for Panel rehearing was denied, and on March 25, 2016, the Ninth Circuit entered an Amended Order and entered Mandate returning the Action to the Court.  On June 20, 2016, the Court reopened the Action.

On July 15, 2016, Plaintiff filed the Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("Second Amended Complaint") against Defendants Finisar, Rawls and Gertel.  On August 19, 2016, Defendants filed their motion to dismiss the Second Amended Complaint.  After briefing, on May 1, 2017, the Court entered an Order denying Defendants' motion to dismiss the Second Amended Complaint.  On September 11, 2017, the Court denied Defendant Rawls' motion for leave to file a motion for reconsideration.

Discovery commenced in the Action in June 2017, when the PSLRA discovery stay was lifted.  The Parties served initial disclosures under Fed. R. Civ. P. 26(a)(1) and served and responded to document requests; Defendants responded to interrogatories propounded by Plaintiff; and the Parties engaged in extensive correspondence and numerous meet and confer sessions over search terms and custodians for their respective document searches and productions.  Following a discovery motion to Magistrate Howard R. Lloyd and the resulting order entered on November 2, 2017, Plaintiff was permitted to take part of its Noticed Rule 30(b)(6) deposition of Finisar covering two of the noticed topics, during which Plaintiff took the deposition of three designated witnesses of Finisar.  The Parties also produced numerous documents in response to document requests, with Finisar producing nearly 200,000 pages of documents that were reviewed prior to the time the Action was stayed for appeal. Additional productions were expected. Lead Counsel

also reviewed documents from various third parties in response to subpoenas issued by Plaintiff.

On August 14, 2017, Plaintiff filed a motion for class certification.  After briefing, on December 5, 2017, the Court entered an order denying Plaintiff's motion for class certification. On December 27, 2017, the Court granted Plaintiff leave to file a motion for reconsideration of the December 5, 2017 order, which it did on January 2, 2018.  After briefing, on January 18, 2018, the Court denied the motion for reconsideration.  On February 5, 2018, Plaintiff filed a Rule 23(f) petition to the Ninth Circuit requesting permission to file interlocutory appeal of the Court's December 5, 2017 order denying class certification.  After briefing, on July 16, 2018, the Ninth Circuit, in its discretion, denied Plaintiff's petition for permission to appeal at that time.

On August 20, 2018, the Court entered an order granting Plaintiff leave to file a renewed motion for class certification, which was filed on October 10, 2018.  After briefing, on May 13, 2019, the Court held oral arguments on Plaintiff's motion for class certification and Defendants' motion for judgment on the pleadings against Plaintiff.  On May 24, 2019, the Court entered an order striking Plaintiff's renewed motion for class certification and granting Defendants' motion for judgment on the pleadings against Plaintiff.  The Court entered judgment on the pleadings on June 14, 2019 against Plaintiff.  On June 20, 2019, Plaintiff filed a Notice of Appeal to the Ninth Circuit appealing the Court's December 5, 2017 and May 24, 2019 orders.

## B.     Settlement Negotiations And The Proposed Settlement

By order from the Ninth Circuit's Mediation Program, the Parties continued previously started private mediation efforts with Mediator Michelle Yoshida of Phillips ADR and periodically reported the progress of their mediation efforts to the Ninth Circuit's Mediator, Steven J. Saltiel. Through the extensive exchange of information at in-person and telephonic meetings concerning the merits of the case, damages, and the risks for both sides inherent in the pending appeal on the issue of price impact at that class certification stage (including disputes as to the law on the issue in the Ninth Circuit and other Circuits), counsel for Plaintiff and Defendants engaged in a series of arm's-length negotiations pursuant to which the Parties reached an agreement in principle to settle and release all claims against Defendants in the Action in return for a cash payment of $6,800,000 to be paid by Defendants for the benefit of the Settlement Class.

The Settlement Amount, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, any award to Plaintiff, Notice and Administration Costs, and Taxes and related expenses (the "Net Settlement Fund"), will be distributed among Settlement Class Members who submit valid Claim Forms ("Authorized Claimants"), in accordance with a plan of allocation to be approved by the Court.  The Settlement is not a claims-made settlement.  If the Settlement is approved, Defendants will have no right to the return of any portion of the Settlement Fund based on the number or value of Claims submitted.

Pursuant to Rule 23(e)(3), the only agreements made by the Parties in connection with the Settlement are the July 8, 2020 Stipulation to Dismiss Appeal Without Prejudice filed with the Ninth Circuit; the Stipulation; and the confidential Supplemental Agreement, dated July 8, 2020, concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests ("Opt-Outs").  *See* Stip. ¶10.5.  It is standard to keep such Termination Threshold agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class.  The Supplemental Agreement can be provided to the Court under seal.

In order to effectuate the Settlement, the Parties have agreed to certification of a Settlement Class for Settlement purposes only.  The proposed Settlement Class is the same as the class proposed in Plaintiff's Complaint:  all persons and entities who purchased or otherwise acquired the common stock of Finisar from December 2, 2010 through March 8, 2011, inclusive (the "Class Period"), and who were allegedly damaged thereby.  *See* Stip., ¶¶1.45.  In addition, solely for purposes of effectuating and consummating the Settlement, Defendants stipulate and consent that the Court should vacate the Judgment against Lead Plaintiff (and not the class) and entered June 14, 2019 (Dkt. 190).  *See* Stip., ¶3.2.  The vacating of the Judgement against Plaintiff is conditioned upon approval of the Settlement.  Should the Settlement not be approved or otherwise fail to be consummated on its terms, the Parties agree and stipulate that they will be restored to their respective positions as of the date of the Stipulation, including that the prior judgment against Plaintiff entered on June 14, 2019 shall be restored *nunc pro tunc*.  See Stip., ¶¶10.7-10.8.

The Settlement is contingent on this Court approving the terms of the Settlement, including

certification of the Settlement Class.  On July 10, 2020, the Ninth Circuit entered an Order dismissing the appeal and remanding this case so that jurisdiction may re-vest in this Court to consider the Settlement, without prejudice to reinstating the appeal if this Court denies approval of the Settlement or if the Settlement is terminated pursuant to the terms of the Stipulation.

## II.   ARGUMENT

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class actions such as this Action.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").

A court's review of a proposed class action settlement is a two-step process.  *First*, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); and second, after notice has been provided and a hearing has been held, determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2); *see also Noll v. eBay, Inc.*, 309 F.R.D. 593, 602 (N.D. Cal. 2015).  A court grants preliminary approval to authorize notice to the Settlement Class upon a finding that it "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final approval hearing.  Fed. R. Civ. P. 23(e)(1)(B).

A court "need not conduct a full settlement fairness appraisal before granting preliminary approval."  *Grant v. Capital Mgmt. Servs., L.P.*, 2013 WL 6499698, at *5 (S.D. Cal. Dec. 11, 2013) (citation and internal quotations omitted).  "The Court cannot fully assess all of [the] fairness factors until after the final approval hearing . . . . Instead, 'the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.'"  *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *8-11 (N.D. Cal. Oct. 27, 2015) (granting preliminary approval after finding the proposed settlement was "non-collusive," "lacks obvious deficiencies, and was "within

the range of possible approval") (internal citations omitted)).   The Settlement here merits

preliminary approval.

A.     **The Judgment Entered Against Plaintiff On June 14, 2019**
       **Should Be Conditionally Vacated Solely For Purposes Of**
       **Effectuating and Consummating The Proposed Settlement**

Solely for purposes of effectuating and consummating the Settlement, the Parties stipulate

and agree that the Judgment against Plaintiff entered June 14, 2019 (Dkt. 190) should be vacated.

*See* Stip., ¶3.2; Preliminary Approval Order, ¶1.  The Parties respectfully submit that vacating the

June 14, 2019 Judgment against Plaintiff is proper so that the Court may consider the proposed

Settlement and, ultimately, grant final approval of the Settlement, certify the Settlement Class, and

then enter a new Judgment dismissing the settled Action with prejudice.  *See* Stip. ¶¶1.19, 1.24,

9.1.  "The district court [has] discretion to vacate a judgment 'when the equities so demand.'"

*Hebrew Univ. of Jerusalem v. Gen. Motors LLC*, 2015 WL 9653154, at *2 (C.D. Cal. Jan. 12,

2015) (quoting *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998)

(holding that a district court has "equitable discretion when reviewing its own judgments," and

ultimately must "weigh the equities and determine whether it should vacate its own judgment"));

Here, vacating the June 14, 2019 Judgment is sought pursuant to a settlement agreement

that will mutually benefit the Parties and effectuate the Settlement.  "[T]he policy of promoting

settlement…weigh[s] in favor of vacating the Judgment."  *Hebrew Univ*., 2015 WL 9653154, at

*2; *see also Ahern v. Central Pacific Freight Lines*, 846 F.2d 47, 48 (9th Cir.1988) ("The Ninth

Circuit is firmly 'committed to the rule that the law favors and encourages compromise

settlements'" (citation omitted)).

In the event that the Court does not approve the Settlement or if the Settlement is terminated

or otherwise does not become Effective, the Parties agree and consent that the vacated Judgment

should be reinstated *nunc pro tunc*; and, that the Parties shall be restored to their respective

positions in the Action immediately prior to July 8, 2020 (the date of Lead Plaintiff's and

Defendants' joint stipulation filed with the Ninth Circuit for dismissal of the Appeal without

prejudice to Lead Plaintiff reinstating the Appeal should the Court deny approval of the

Settlement) and shall proceed in all respects as if the Stipulation had not been executed and the

related orders had not been entered (and the Appeal shall be reinstated). In that event, all of the Parties' respective claims and defenses as to any issue in the Action shall be preserved without prejudice. *See* Stip., ¶¶3.2, 10.7, 10.8; *see also In re Apollo Group, Inc. Sec. Litig.*, 2012 WL 1378677, at **1, 5 (D. Ariz. Apr. 20, 2012) (approving settlement and judgment of securities class action by order containing provision that "if the Stipulation did not become Final or the Effective Date did not occur, the final approval order would be rendered null and void and the parties would be restored to their respective positions prior to entering the Stipulation," where prior to entering Stipulation the Ninth Circuit had reversed a judgment for defendants and remanded with instructions to "enter judgment in accordance with the jury's verdict" in plaintiffs' favor).

### B.   The Proposed Settlement Class Meets The Prerequisites For Settlement Class Certification Under Rule 23

As a condition of the Settlement, Defendants have agreed to certification of a Settlement Class for Settlement purposes only. The proposed Settlement Class is the same as the class proposed in Plaintiff's Complaint: all persons and entities who purchased or otherwise acquired the common stock of Finisar from December 2, 2010 through March 8, 2011, inclusive (the "Class Period"), and who were allegedly damaged thereby. *See* Stip., ¶¶1.45.

The Settlement is contingent on this Court approving the Settlement, including certification of the Settlement Class. As set forth in the Stipulation (at ¶T on p. 6), Plaintiff and Defendants agree that there is good cause and legal support for the Court to certify a Settlement Class, solely for the purposes of this Settlement. The Ninth Circuit has long recognized that courts may certify class actions for the purposes of settlement only. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023-24 (9th Cir. 1998). Moreover, the Ninth Circuit has held that "[t]he criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 232 (2d Cir. 2012) ("a settlement class ordinarily need not demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the predominance requirement"). Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure also states that "an order that grants or denies

class certification may be altered or amended" by the Court.

The Court's December 5, 2017 Order found, and Defendants do not dispute, that Plaintiff's proposed Class satisfies the numerosity, commonality, typicality and adequacy requirements under Rule 23(a).  *See* Dkt.150 at 7.  The Court further found, and Defendants do not dispute, that Plaintiff made a sufficient showing to invoke the fraud-on-the-market presumption of reliance which would satisfy the predominance requirement of Rule 23(b)(3).  Dkt. 150 at 8.  Although the Court found that the presumption of reliance had been rebutted (by Defendants' showing of no price impact) such that individual issues of reliance would predominate in the litigation going forward, the issue was pending Appeal to the Ninth Circuit and thus the ultimate resolution of the issue remains uncertain.  *See Am. Int'l Grp.*, 689 F.3d at 241 ("[W]ith a settlement class, the manageability concerns posed by numerous individual questions of reliance disappear." (citations omitted)); *Amchem*, 521 U.S. at 620; *Officers for Justice*, 688 F.2d at 633-34 (finding that "certification issues raised by class action litigation that is resolved short of a decision on the merits must be viewed in a different light," and noting the class action determinations are often closely tied to legal issues of the case).

Moreover, in the Ninth Circuit, "Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) (citation and internal quotation marks omitted); *see also In re THQ Inc. Sec. Litig.*, 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("[T]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.") (citations omitted); *see also In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991) ("the Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation").  These factors, along with the strong judicial policy in the Ninth Circuit favoring settlements in complex class actions such as this case, amply support certification of the Settlement Class here.  *See Syncor*, 516 F.3d at 1101.  As set forth below, the Settlement Class satisfies the requirements of Rule 23(a) and 23(b)(3) for purposes of approving the Settlement.

### 1.   The Proposed Settlement Class Satisfies Rule 23(a)

The Court previously held that "[a]fter careful examination of the record, the Court finds that Plaintiff's proposed Class satisfies the numerosity, commonality, typicality, and adequacy requirements to maintain a class action under Rule 23(a)."  Dkt. 150 at 7.  As set forth below, Plaintiff reasserts its showing with respect to these four requirements and submits that the proposed Settlement Class continues to satisfy Rule 23(a).

**Numerosity:** Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class."  *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 519, 584 (N.D. Cal. 2009).  During the Class Period, Finisar had as many as 89,631,781 shares outstanding, and the average weekly trading volume was over 19.8 million shares.  It is reasonable to assume that the Class has at least hundreds of members, and likely thousands.  Rule 23(a)'s numerosity requirement is satisfied under similar facts.  *See In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *4 (N.D. Cal. Dec. 22, 2016).

**Commonality:** Rule 23(a)(2) requires that the allegations of the complaint involve common questions of law and fact.  "This requirement has been liberally construed and 'those courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts.'"  *Rodriguez v. Carlson,* 166 F.R.D. 465, 472 (E.D. Wash. 1996) (citation omitted).  It is not necessary that all questions of law or fact be common, but only that there are shared legal and factual questions.  *See Hanlon*, 150 F.3d at 1019.  Courts have consistently found that "misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)."  *Juniper*, 264 F.R.D. at 588 (citing *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)).  Here, as alleged, the common questions of law and fact include:  (1) whether the federal securities laws were violated by the Defendants; (2) whether public statements made by Defendants during the Class Period contained material misrepresentations or omissions; (3) whether Defendants acted with scienter in omitting and/or misrepresenting material facts; (4) whether the price of the Company's stock was artificially inflated due to the alleged material misrepresentations; and (5) whether Defendants' material

misrepresentations caused Class members to suffer economic losses and damages.  "Such inquiries raise questions common to all purported class members."  *Intuitive*, 2016 WL 7425926, at *5.

**Typicality:** The "typicality" requirement of Rule 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Rule 23(a)(3) is 'permissive' and only requires that the named plaintiffs' claims be 'reasonably co-extensive with those of absent class members.'"  *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *4 (N.D. Cal. Apr. 21, 2016) (quoting *Hanlon*, 150 F.3d at 1020). Moreover, differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific documents or statements influencing the purchase will not render the claim atypical in most securities actions.  *See id., at *10-12*.  Here, Defendants' fraud affected Plaintiff and all Settlement Class members uniformly because each purchased Finisar's artificially inflated stock, and later suffered losses when the price of that stock declined in response to public revelations of the alleged fraud.  The claims of Plaintiff and all Class members are based on the same legal theories and proven by the same set of operative facts, and thus typicality is satisfied.

**Adequacy:** Rule 23(a)(4) is met when "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Determining whether representative parties adequately represent the Class involves two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).  *First*, the Plaintiff's interests are neither antagonistic to, nor in conflict with, the interests of the other Settlement Class members; Oklahoma Firefighters – like other members of the Class – sustained losses resulting from the same alleged material misrepresentation.  The interests of Plaintiff in obtaining the maximum possible recovery are therefore co-extensive with the interests of members of the Class.  *See In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *8 (N.D. Cal. Jan. 13, 2005).  *Second*, Oklahoma Firefighters fully understands the duties and responsibilities of the lead plaintiff under the PSLRA.  *See* Declaration of Robert Jones, Executive Director of Plaintiff Oklahoma Firefighters, Dkt. 132-2; *see also Montage*, 2016 WL 1598666, at *5 (finding adequacy

where a class representative "is aware of the proceedings and his duties as class representative"). Indeed, Oklahoma Firefighters and its board of trustees have thus far protected the interests of the Class as well as they protect their constituents and plan participants, by vigorously prosecuting this action, including through multiple amended complaints, multiple appeals to the Ninth Circuit, numerous motions, extensive fact discovery, and obtaining the Settlement of this Action.

### 2.        The Settlement Class Meets The Requirements Of Rule 23(b)

Rule 23(b)(3) requires the proposed class representative to establish that common questions of law or fact predominate over individual questions, and that a class action is the superior method of adjudication available.  Here, the proposed Settlement Class satisfies both requirements, especially considering that this is for Settlement purposes only.  *See Hyundai*, 926 F.3d at 556–57 ("The criteria for class certification are applied differently in litigation classes and settlement classes").  Moreover, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class.  *See Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

**Common Questions of Law or Fact Predominate.**  The focus of Rule 23(b)(3)'s predominance test is on whether the Class claims arise out of the same legal or remedial theory.  *See Hanlon*, 150 F.3d at 1022 (predominance test met where common nucleus of facts and potential legal remedies dominate the litigation).  "[A]s the Supreme Court observed, the predominance requirement of Rule 23(b)(3) is readily met in securities-fraud class actions."  *Hicks v. Morgan Stanley & Co.*, 2003 WL 21672085, at *1 (S.D.N.Y. July 16, 2003) (citing *Amchem*, 521 U.S. at 625); *see also Cooper*, 254 F.R.D. at 632 ("[S]ecurities fraud cases fit Rule 23 'like a glove.'") (citation omitted).  Where, as here, a complaint alleges a "common course of conduct" of misrepresentations, omissions and other wrongdoings that affect all members of the class in the same manner, common questions predominate.  *Blackie*, 524 F.2d at 902.  Proof of falsity, materiality, scienter, and loss causation can be made on a class-wide basis because they affect all investors in common.  *See Intuitive*, 2016 WL 7425926, at *10.  Indeed, there are numerous questions common to the members of the Class which clearly predominate over individual questions because Defendants' alleged conduct affected all Class members in the same manner

1    and, through false statements, allegedly artificially inflated the price of Finisar common stock.

2         The element of reliance is typically satisfied by the fraud-on-the-market presumption of

3    reliance in a Rule 10b-5 securities fraud class action.  *See Basic Inc. v. Levinson*, 485 U.S. 224,

4    247 (1988).  In the context of a class action settlement, "a settlement class ordinarily need not

5    demonstrate that the fraud-on-the-market presumption applies to its claims in order to satisfy the

6    predominance requirement." *Am. Int'l Grp.*, 689 F.3d at 232.  As the Second Circuit explains, "In

7    the context of a litigation class, the fraud-on-the-market presumption spares the plaintiff class from

8    the extremely laborious—and often impossible—task of proving at trial that each individual

9    plaintiff was aware of and specifically relied upon the defendant's false statement….Therefore, a

10   litigation class's failure to qualify for *Basic* presumption typically renders trial unmanageable,

11   precluding a finding that common issues predominate….**By contrast, with a settlement class, the**

12   **manageability concerns posed by numerous individual questions of reliance disappear**." *Id.*

13   at 241 (internal citations omitted, and emphasis added); *see Amchem*, 521 U.S. at 620.

14        Even considering that proof of class-wide reliance is not needed to certify the Settlement

15   Class, the Court held in its December 5, 2017 Order that "Plaintiff has made a sufficient showing

16   to invoke the fraud-on-the-market presumption of reliance."  Dkt. 150 at 8.  Accordingly, for

17   purposes of this Settlement, the predominance requirement of Rule 23(b)(3) is readily satisfied,

18   notwithstanding the disputed issue on appeal of whether the presumption was correctly found to

19   have been rebutted.

20        **A Class Action Is a Superior Method of Adjudication.**  Finally, Rule 23(b)(3) also

21   requires that the action be superior to other available methods for the fair and efficient adjudication

22   of the controversy.  The rule lists several matters pertinent to this finding: (A) the class members'

23   interests in individually controlling the prosecution or defense of separate actions; (B) the extent

24   and nature of any litigation concerning the controversy already begun by or against class members;

25   (C) the desirability or undesirability of concentrating the litigation of the claims in the particular

26   forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

27   Each factor weighs in favor of superiority here.  *See, e.g., McPhail v. First Command Fin.*

28   *Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) (noting "class action is the superior method

for fair and efficient adjudication" because individual suits would "'clog [ ] the federal courts with innumerable individual suits litigating the same issues repeatedly,'" the plaintiffs assert complex claims that "would be very costly to litigate," and each claim is for a "relatively small amount") (alteration in original) (citation omitted).

Further, without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to settle. Certification of the Settlement Class will allow the Settlement to be administered in an organized and efficient manner. Accordingly, the Court should preliminarily certify the Settlement Class.

### C.    Preliminary Approval Of The Settlement Is Appropriate

The Ninth Circuit has established factors to be considered by courts before granting final approval of class-action settlements, but courts need not assess all of these fairness factors at the preliminary approval stage. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2018 WL 6198311, at *4 (N.D. Cal. Nov. 28, 2018) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "At the preliminary approval stage, then, district courts in this circuit often consider a separate set of factors, which better reflect that the review at this stage is only an initial evaluation of the settlement's fairness." *Id.* These preliminary-approval factors "examine whether the settlement (1) appears to be the product of serious, informed, and non-collusive negotiations, (2) has any obvious deficiencies, (3) improperly grants preferential treatment to class representatives or segments of the class, and (4) provides class members with an award that falls within the range of possible approval." *Id., see In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019) (same); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (same). Under these standards, the Settlement merits preliminary approval.

#### 1.    The Settlement Is The Product of Good-Faith, Arm's-Length Negotiations Between Well-Informed And Experienced Counsel Mediated By An Experienced Private Mediator

The fact that the Parties reached the Settlement after arm's-length negotiations between experienced counsel and with the assistance of an experienced mediator creates a presumption of its fairness. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013).

Following the Order of the Ninth Circuit Mediation Program, the Parties continued extensive negotiations at in-person and telephonic meetings with private mediator, Michelle Yoshida, Esq. of Phillips ADR.  Ms. Yoshida is an experienced mediator with over 13 years of experience in mediating complex civil litigation, including working with Phillips ADR founder, former federal judge, Layn R. Phillips.  The Parties also provided periodic reports to the Ninth Circuit Mediator. As courts in this District and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Courts also give considerable weight to the opinion of experienced and informed counsel who support settlement.  In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord Omnivision*, 559 F. Supp. 2d at 1043 (same).  Here, Lead Counsel has extensive experience in securities litigation.  Moreover, Lead Counsel has a thorough understanding of the merits and risks of this 9-year old Action through, *inter alia*, the investigation and preparation of three amended complaints, briefing three oppositions to motions to dismiss, and successfully briefing and arguing reversal of dismissal to the Ninth Circuit.  Importantly, the Parties reached the agreement to settle only after conducting extensive fact and expert discovery, which included obtaining and reviewing nearly 200,000 pages of documents from Defendants, obtaining and reviewing productions from third party analysts, and taking three depositions of Finisar pursuant to Rule 30(b)(6).  This discovery provided Plaintiff and Lead Counsel with ample information to ascertain the strengths and risks of the claims asserted in the Action and for their conclusion that the Settlement was fair and reasonable given the risks of the case.

### 2.   The Settlement Has No Obvious Deficiencies And Does Not Improperly Grant Preferential Treatment To Lead Plaintiff Or Segments Of The Settlement Class

The Settlement "has no obvious deficiencies [and] does not improperly grant preferential treatment to class representatives or segments of the class[.]"  *Young v. Polo Retail, LLC*, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006).  The $6.8 million recovery constitutes a significant

and certain benefit for Settlement Class Members.  Subject to Court approval, and pursuant to Plaintiff's approval, Lead Counsel will seek attorneys' fees of 25% of the Settlement Fund, and reimbursement of no more than $425,000 in Litigation Expenses.  Plaintiff will receive distributions from the Net Settlement Fund in accordance with the Plan of Allocation in the same manner as all other Settlement Class Members.  As discussed below, the proposed Plan of Allocation for allocating the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms is fair and reasonable.

### 3. The Settlement Is Well Within The Range Of Reasonableness And Warrant Notice And A Hearing On Final Approval

At the preliminary approval stage, the Court need only determine whether it "will likely be able" to approve the Settlement, Fed. R. Civ. P. 23(e)(1), or, in other words, whether the Settlement "falls within the range of possible approval." *Reynolds v. Direct Flow Med., Inc*., 2019 WL 1084179, at *4 (N.D. Cal. Mar. 7, 2019) (citation omitted).  Because the $6.8 million Settlement represents a certain and favorable recovery for the benefit of the Settlement Class in light of the risks of continued litigation and the potential outcomes on appeal and at trial, Plaintiff believes that the Settlement falls well within the range of possible approval.  Indeed, while Plaintiff believes that it would have been successful on its appeal, the real possibility that the Settlement Class would receive no recovery at all "weighs in favor of approval of the Settlement."  *Omnivision*, 559 F. Supp. 2d at 1042 (finding class settlement reasonable where plaintiffs "agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing.").  In addition, given that the Settlement is being paid from a wasting D&O insurance policy (that will be continued to be depleted by defense fees and expenses), the Settlement also provides certain and immediate benefits to the Settlement Class, where there is uncertainty of any funds remaining to satisfy a future judgment, especially considering that Finisar was acquired in a merger by another entity (II-VI Inc.) in September 2019.

In considering whether to enter into the Settlement, Plaintiff, represented by counsel experienced in securities litigation, weighed the risks inherent in establishing all the elements of their claims, including the risks of the pending appeal, and then, if successful, proving falsity,

Defendants' scienter, loss causation, and recoverable damages, as well as the expense and likely duration of the Action – in this case which has already been litigated for over nine years.  *See Churchill Vill., L.L.C. v. Gen. Elec*., 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement).  Plaintiff agreed to settle this Action on these terms based on their careful investigation and evaluation of the facts and law relating to the allegations and consideration of the substantial evidence developed in discovery, and the positions and views expressed by the Mediator and Defendants during the settlement negotiations.  *See Louie v. Kaiser Found. Health Plan, Inc*., 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval.").

The Settlement represents a substantial tangible recovery, without the considerable risk, expense, and further delay.  *See, e.g., In re Linkedin User Privacy Litig*., 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (citation omitted); *In re Wash. Pub. Power Supply Sys. Sec. Litig*., 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding settlement to be in the "best interests of the class . . . before it is subjected further to the vagaries of litigation").  While Plaintiff believes it could have succeeded in establishing each of the elements of the alleged claims, it faced considerable obstacles in continuing the Action.  For instance, even if the case were to proceed and the appeal was successful, Plaintiff and the Settlement Class would still face substantial challenges in proving that the Defendants' alleged misstatements were false and that Defendants made the misstatements with scienter.  While Plaintiff's allegations were sufficiently supported to survive Defendants' motion to dismiss, proving the claims at trial through admissible evidence was far from certain.

The Settlement also presents a favorable recovery when compared to the median settlement value in securities class action settlements, which was calculated by financial experts at Cornerstone Research to be $5 million in 2017, and falls within the range of the average medium settlement value from 1996 through 2019, reported to be $8.9 million.  *See*, Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons*, Securities Class Action Settlements – 2017 Review and Analysis*,

at p. 3 (Cornerstone Research 2018) (reporting the median value at $5 million in 2017) (available at  https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-Review-and-Analysis.pdf (last visited on July 8, 2020)); Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2019 Review and Analysis* at p. 19, Appendix 1: Settlement Percentiles  (available  at  https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis (last visited on July 8, 2020).

In addition, an evaluation of the benefits of settlement must be tempered by a recognition that any compromise involves concessions on the part of the settling parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citation omitted).  Plaintiff submits that the proposed Settlement reflects concessions by both Defendants and Plaintiff that are reasonable and fair, and that the Settlement is in the best interests of the Settlement Class.  This case has been hard, but fairly, fought by both sides.  While Plaintiff and Lead Counsel believe that they could produce evidence at trial that would establish Defendants' liability, Defendants believe, with equal conviction that they would prevail should this case go to trial.  This case presents a number of complex issues, and thus the risks and costs of further litigating the case through the appeal, discovery, summary judgment, trial and additional appeals are significant.

Accordingly, in light of the substantial risks and expense of continued litigation compared to the certain and prompt recovery of $6,800,000, the Settlement is a good result that is well within the range of reasonableness.  *See Orvis v. Spokane Cty.*, 281 F.R.D. 469, 475 (E.D. Wash. 2012) ("the proposed benefit to class members appears to the Court to be within the range of fair and reasonable compensation given the uncertain outcome of the legal arguments and the risks and probable delay for Plaintiff and class members if litigation were to proceed toward trial").  Plaintiff, having considered the serious risks of continued litigation, submit that if the Court preliminarily approves the Settlement, the Court ultimately will find that the Settlement is fair, reasonable, and adequate and is deserving of final approval.

### D.    The Plan Of Allocation Is Fair And Reasonable

At the final Settlement Hearing, the Court will be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to eligible claimants.  The Court's review of a proposed plan of allocation for a class action settlement under Rule 23 is governed by the same standards applicable to the settlement itself—the plan must be fair and reasonable.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Circ. 1992).  Here, the Plan of Allocation is set forth in full in the Notice and is based on the measure of damages for claims under the Exchange Act which is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement amongst eligible claimants.  *See* Notice (Ex. A-1 to the Stipulation and Ex. 1 to the proposed Preliminary Approval Order), pp. 6-8.  It treats all Settlement Class Members, including Plaintiff, equitably.  The Plan of Allocation is designed to equitably distribute the Settlement proceeds among members of the Settlement Class who were allegedly injured by Defendants' alleged misrepresentations and who submit valid Claim Forms.

The Plan provides for the calculation of a "Recognized Loss" amount for each properly documented purchase or acquisition of Finisar common stock during the Class Period.  A claimant's total Recognized Losses will depend on, among other things, when their shares were purchased and/or sold during the Class Period in relation to the disclosure alleged in the Action, whether the shares were held through or sold during the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e) (providing methodology for limiting damages in securities fraud actions), and the value of the shares when they were sold or held.  The Recognized Loss formulas are tied to liability and damages, which take into consideration the amount of artificial inflation allegedly present in the per-share closing price of Finisar's common stock that was purportedly caused by the alleged fraud.  The sum of a claimant's Recognized Loss Amounts for all of their Class Period purchases is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  Notice, pp. 7-8.  Once the Claims Administrator has processed all submitted claims, distributions will be made to eligible claimants.  After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed

checks or otherwise), the Claims Administrator will, if feasible and economical, re-distribute the balance among eligible claimants who have cashed their checks. *See* Stip., ¶8.12. These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any outstanding Notice and Administration Expenses or Taxes, will be donated *cy pres* to one or more non-sectarian, not-for-profit organizations approved by the Court. *Id.* Accordingly, Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who submit valid claims. "The fact that the plan of allocation is recommended by experienced and competent counsel further cuts in favor of approving the Settlement." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).

E. **The Court Should Approve The Form Of Notice And The Plan For Providing Notice To The Settlement Class**

**Retention of Claims Administrator.** Plaintiff proposes that the notice and claims process be administered by Angeion Group ("Angeion"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. Angeion was selected after a competitive bidding process in which three firms submitted proposals to be selected as administrator. All of the proposals received involved comparable methods of providing notice and claims processing, including use of first-class mail and identifying potential Settlement Class Members through brokers, banks and nominee owners. Lead Counsel has engaged Angeion to serve as settlement administrator in one case in the past two years, and has previously engaged Angeion in other cases, and found Angeion to be a reliable administrator.

**Proposed Notice Procedures.** Plaintiff proposes that notice be given to the Settlement Class in the form of the mailed Notice and Summary Notice (attached as Exs. A-1 and A-3 to the Stipulation and Exs. 1 and 2 to the proposed Preliminary Approval Order). The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Settlement Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Settlement Class Members of (among many other

disclosures) the nature of the Action, the definition of the Settlement Class, the claims and issues, that the Court will exclude from the Settlement Class any Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B).

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7).  It states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorneys' fees and Litigation Expenses that Lead Counsel will seek; provides the names, address, and telephone number of Lead Counsel, who will be available to answer questions from Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement.  *Id.*  The Notice also meets the Northern District of California Procedural Guidance for Class Action Settlements in that it includes, among other things, (1) "contact information for class counsel to answer questions"; (2) the address for the settlement website; and (3) "instructions on how to access the case docket." N.D. Cal. Proc. Guidelines ¶3.  The Notice will also disclose the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Claim Forms, requests for exclusion from the Class, and objections to any aspect of the Settlement, the Plan of Allocation, or attorneys' fees and expenses.[3]

The proposed method for disseminating notice, which is set forth in the Preliminary Approval Order submitted herewith, also readily meets the standards under the Federal Rules and due process.  Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who

---

[3] In addition, the Parties have conferred and while they do not believe a notice under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005), *et seq.* ("CAFA"), is required in this Action, which is governed by the Exchange Act, Defendants have chosen to issue such notice.  *See* Stip., ¶8.3.

would be bound" by a proposed settlement, voluntary dismissal, or compromise.  Fed. R. Civ. P. 23(e)(1).  If the Court preliminarily approves the Settlement, Defendants will provide the names and addresses of the record holders or purchasers of Finisar common stock during the Class Period, to the extent reasonably available to Finisar for the purpose of identifying and giving notice to the Class.  *See* Stip. ¶8.2.  Angeion will mail the Notice and Claim Form (the "Notice Packet") to all such identified potential Class Members.  Angeion will also send notice to brokerage firms, large banks, third-party filers, and other nominees who purchased Finisar common stock during the Class Period on behalf of other beneficial owners.  These nominee purchasers will be required to either forward the Notice Packet to their customers or provide the names and addresses of the beneficial owners to Angeion, which will then promptly send the Notice Packet by first-class mail to such identified beneficial owners (or by email if provided).  Angeion will also cause the Summary Notice, which provides an abbreviated description of the Action and the proposed Settlement and explains how to obtain the more detailed Notice, to be published once in *Investor Business Daily* and transmitted over the *PR Newswire*, and will publish the Notice and Claim Form and other materials on a website to be developed for the Settlement.

The proposed plan for providing notice is the same method that has been used in numerous other security class actions.  Courts routinely find that comparable notice programs, combining individual notice by first-class mail to all class members who can reasonably identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process.  *See In re HP Sec. Litig.*, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding the procedures for notice, including mailing individual notice and publication notice satisfy Rule 23, the PSLRA, and constitute the best notice practicable).

**Claims Processing.**  The net proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation. Angeion will review and process the claims, will provide claimants with an opportunity to cure any deficiencies in their claim(s) or request review of the denial of their claim(s) by the Court, and will then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.  Based on the experience of Angeion in comparable

securities class action settlements, Angeion estimates that up to 60,000 Notice Packets will be mailed and that approximately 9,000 claims may be received (a 15% response rate is estimated).

**Estimated Notice and Administrative Costs.**  Angeion's fees for administration of the Settlement are charged on a per-claim basis and its expenses will be billed separately (including expenses for printing and mailing the Notice Packet, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline).  Because the costs are dependent on how many Notice Packets are ultimately mailed and how many claims are ultimately received and processed, at this time only an estimate of the total Notice and Administration Costs can be provided.  Based on the estimates of Notice Packets to be mailed and claims received as discussed above, the Stipulation provides for up to $235,000 to pay for Notice and Administration Costs to be paid from the Settlement Fund.  *See* Stip. ¶6.5.  These costs are reasonable and necessary in order to effectuate the Settlement.

### F.  Attorneys' Fees And Litigation Expenses

Lead Counsel will seek an award of attorneys' fees not to exceed 25% of the Settlement Fund, and reimbursement of Litigation Expenses not to exceed $425,000, which includes expert fees, the fees to establish and maintain the database of documents in discovery, mediation fees and travel, among other costs.  The benchmark for attorneys' fees in the Ninth Circuit is 25%.  *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Therefore, the requested award is comparable to fees in other securities fraud class actions with contingency-fee risks in this District.  *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding fees of 25% of settlement); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *21-22 (N.D. Cal. Feb. 13, 2015) (awarding fees of 25% of partial settlement); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding fees of 30% of $8.9 million settlement).   Also, given that this hard-fought litigation spanned over nine years, Lead Counsel anticipates that when it completes a review of its time records, the requested attorney fee will represent a significant negative "multiplier" on counsel's lodestar, which suggests that the requested percentage fee is fair and reasonable.  *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D.

Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel."). Lead Counsel also may seek an incentive award for Plaintiff, pursuant to 15 U.S.C. §78u-4(a)(4), as reimbursement for its work, time and expenses in representing the Settlement Class in an amount up to $5,000. Lead Counsel will provide detailed information supporting the application for attorneys' fees and Litigation Expenses, which will be filed before the Settlement Hearing.

## III.    PROPOSED SCHEDULE OF EVENTS

The Parties respectfully propose the following schedule for the Court's consideration, as agreed to the by Parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing the Notice and Claim Form to potential Settlement Class members ("Notice Date") | 20 business days after entry of Preliminary Approval Order |
| Deadline to publish Summary Notice | 10 business days after Notice Date |
| Deadline for submitting claim forms | 120 calendar days after the Notice Date |
| Deadline for receipt of exclusion requests | 35 calendar days before Settlement Hearing |
| Deadline to file motions for final approval and attorney's fees and expenses | 35 calendar days before Settlement Hearing |
| Deadline for submitting objections | 21 calendar days before Settlement Hearing |
| Deadline to file reply papers | 7 calendar days before Settlement Hearing |
| Settlement Hearing | 120 days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter |

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court vacate the June 14, 2019 Judgment, certify the Settlement Class for settlement purposes, preliminarily approve the Settlement, approve the selection and appointment of the Claims Administrator, approve the form and methods of notice, and enter the proposed Preliminary Approval Order.

Dated: July 14, 2020                    Respectfully submitted,

_/s/ Ian D. Berg_
ABRAHAM, FRUCHTER & TWERSKY, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IAN D. BERG
TAKEO A. KELLAR
11622 El Camino Real, Suite 100
San Diego, CA 92130

- AND -

MITCHELL M.Z. TWERSKY
One Penn Plaza, Suite 2805
New York, NY 10119
Tel:     (212) 279-5050
Fax:    (212) 279-3655

*Counsel for Lead Plaintiff Oklahoma Firefighters
Pension and Retirement System*