IAN D. BERG   (Bar No. 263586)
TAKEO A. KELLAR   (Bar No. 234470)
ABRAHAM, FRUCHTER
    & TWERSKY, LLP
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel:    (858) 764-2580
Fax:    (858) 764-2582
*iberg@aftlaw.com*
*tkellar@aftlaw.com*

*Counsel for Lead Plaintiff Oklahoma
Firefighters Pension and Retirement System*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FINISAR CORPORATION SECURITIES LITIGATION | Case No. 5:11-CV-01252-EJD <br><br> <u>CLASS ACTION</u> <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:        February 11, 2021 <br> Time:        9:00 a.m. <br> Courtroom:    4 <br> Judge:       Hon. Edward J. Davila |

1

## TABLE OF CONTENTS

2
Page

3   TABLE OF AUTHORITIES ................................................................................................. iii

4   NOTICE OF MOTION AND MOTION .............................................................................. 1

5   STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

6   MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

7   I.    PRELIMINARY STATEMENT ................................................................................ 2

8   II.   THE SETTLEMENT MERITS FINAL APPROVAL BY
          THE COURT ............................................................................................................. 3

9
          A.   Lead Plaintiff and Lead Counsel Have Adequately
10             Represented The Settlement Class ................................................................ 5

11        B.   The Settlement Was Reached After Substantial
               Discovery, Arms'-Length Negotiations Between
12             Experienced Counsel, And Mediation With An
               Experienced Mediator .................................................................................. 6

13
          C.   The Relief That The Settlement Provides For The
14             Settlement Class Is Adequate, Taking Into Account
               The Costs And Risks Of Further Litigation And All
15             Other Relevant Factors ................................................................................. 8

16             1.   The Amount Offered In Settlement .................................................. 8

17             2.   The Strength Of Lead Plaintiff's Case And
                    The Significant Risks Of Continued
18                  Litigation ....................................................................................... 10

19             3.   The Duration And Costs Of Continued
                    Litigation ....................................................................................... 12
20
               4.   All Other Factors Set Forth In Rule
21                  23(e)(2)(C) Support Approval Of The
                    Settlement ..................................................................................... 14
22
          D.   The Settlement Treats Class Members Equitably
23             Relative To Each Other ............................................................................... 16

24        E.   Additional Factors Considered By The Ninth
               Circuit Support Approval Of The Settlement ............................................. 16
25
    III.  THE PLAN OF ALLOCATION IS FAIR AND
26        REASONABLE ........................................................................................................ 17

27  IV.   DESIGNATION OF CY PRES RECIPIENT FOR
          REMAINDER OF SETTLEMENT FUNDS ........................................................... 19
28

1

V.      THE SETTLEMENT CLASS SHOULD BE FINALLY
        CERTIFIED ..................................................................................................20

2

VI.     NOTICE TO THE SETTLEMENT CLASS STATIFIED
        THE REQUIREMENTS OF RULE 23 AND DUE
        PROCESS ......................................................................................................20

3

4

VII.    CONCLUSION..............................................................................................22

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

<u>Case</u>                                                                                                    <u>Page</u>

*Churchill Village L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................ 5, 16, 21

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ........................................................................ 5, 17

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................... 8, 13, 21

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................ 21

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................................................... 4

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................... 5, 6, 8

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ...................................................................... 13

*Hayes v. MagnaChip Semiconductor Corp.*,
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .................................................. 21

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................................. 15

*Hicks v. Morgan Stanley*,
    & Co., 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................ 10

*In re Amgen Inc. Sec. Litig.*,
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)......................................... 11, 13, 16

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................................... 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ........................................................................ 7, 8

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 12

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................ 13, 17, 18

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................................................ 11

*In re Lendingclub Sec. Litig.*,
    282 F. Supp. 3d 1171 (N.D. Cal. 2017) ............................................................. 5

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ................................................................. 13

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................... 8

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................ 7

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................... 4, 7, 9, 11, 17

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ...................................................................... 15

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. June 18, 1994) ....................................... 17, 18

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................. 6

*In re Prudential Sec., Inc. L.P. Litig.*,
   1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) .............................................. 10

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................ 10

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .................................................................... 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2019 WL 2077847 (N.D. Cal. May 10, 2019) ............................................ 5

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) ............................................................ 16

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ....................................................... 10

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................................... 5

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ...................................................................... 6

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) .............................................. 7

*Luna v. Marvell Tech. Grp.*,
   2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ............................................ 21

*Nat'l Rural Telecommc'ns Coop. v. DIRECTTV*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 16

*Nguyen v. Radient Pharms. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) .............................................. 12

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................ 5, 9

*Orvis v. Spokane Cty.*,
    281 F.R.D. 469 (E.D. Wash. 2012) .......................................................... 10

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................ 7

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................ 9

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ............................................................ 21

*Stewart v. Applied Materials, Inc.*,
    2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ............................................ 7

*Thomas v. MagnaChip Semiconductor Corp.*,
    2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ............................................ 15

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................ 5, 10, 12

Statutes

15 U.S.C. § 78u-4(a)(7) ...................................................................... 21

15 U.S.C. § 78u-4(e) .......................................................................... 18

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Order Granting Preliminary Approval of Class Action Settlement (Dkt. 204) ("Preliminary Approval Order"), Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Lead Plaintiff") hereby moves the Court for (1) entry of an order granting final approval of the proposed settlement of this action (the "Settlement") and (2) entry of an order granting approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation"). This Motion is set for hearing at 9:00 a.m. on February 11, 2021, or as soon thereafter as the matter may be heard, before the Honorable Edward J. Davila of the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 4, 280 South 1st Street, San Jose, CA 95113.

This Motion is based on the following Memorandum of Point and Authorities, the accompanying Declaration of Ian D. Berg in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation, and Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Berg Declaration" or "Berg Decl.") and its exhibits, all other prior pleadings and papers in this action, arguments of counsel, and any additional information or argument that may be required by the Court.

The proposed Final Order and Judgment (negotiated by the Parties as Exhibit B to the Stipulation and Agreement of Settlement, Dkt. 199-1), and a proposed Order approving the Plan of Allocation are submitted herewith.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should approve the proposed Settlement as fair, reasonable, and adequate under Rule 23(e).

2.     Whether the Court should approve the Plan of Allocation as fair and reasonable.

3.     Whether the Court should finally certify this action as a class action under Rules 23(a) and (b)(3) for the purposes of the Settlement only.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Lead Plaintiff"), on behalf of itself and the Settlement Class, respectfully submits this memorandum in support of its motion for final approval of the proposed Settlement and approval of the proposed Plan of Allocation for the Settlement proceeds.[1]

## I.   PRELIMINARY STATEMENT

Subject to Court approval, Lead Plaintiff has agreed to settle all claims in this action in exchange for a cash payment of $6.8 million for the benefit of the Settlement Class, which has been deposited in an escrow account in accordance with the terms of the Settlement Agreement. Lead Plaintiff respectfully submits that the proposed Settlement is a good result for the Settlement Class and satisfies the standards for final approval under Rule 23 of the Federal Rules of Civil Procedure.  As detailed in the accompanying Declaration of Ian D. Berg in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation, and Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Berg Declaration" or "Berg Decl."), and summarized herein, the proposed Settlement provides a certain and immediate benefit to the Settlement Class in the face of no recovery at all, and eliminates significant risks and further delay and expenses in this case that already has been litigated for over nine years and would still require a successful appeal by Lead Plaintiff, and then additional discovery, summary judgment, trial and potentially further appeals.

While this case was on appeal, by order from the Ninth Circuit's Mediation Program, Lead Plaintiff and Defendants continued previously started private mediation efforts with a respected private mediator, through which the Parties held extensive arms'-length negotiations and were able to negotiate the proposed Settlement.  Lead Counsel and Lead Plaintiff were well informed of the strengths and weaknesses of the claims in this action at the time Settlement was reached, based on

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings defined in the Stipulation and Agreement of Settlement, dated July 8, 2020 (Dkt. 199-1) (the "Settlement Agreement" or "Stipulation").

their extensive prosecution of the claims asserted in the action.  By the time of the Settlement, Lead Counsel had a thorough understanding of the merits and risks of this 9-year-old action through, *inter alia*, the investigation and preparation of three amended complaints, briefing three oppositions to motions to dismiss, and successfully briefing and arguing reversal of dismissal to the Ninth Circuit.  Importantly, the Parties reached the agreement to settle only after conducting extensive fact and expert discovery, which included obtaining and reviewing nearly 200,000 pages of documents from Defendants, obtaining and reviewing productions from third parties, and taking the deposition of Finisar through three witnesses pursuant to Rule 30(b)(6).  *See, e.g.,* Berg Decl. ¶¶16, 43-48.  This discovery provided Lead Plaintiff and Lead Counsel with ample information to ascertain the strengths and risks of the claims asserted in the action and for their conclusion that the Settlement was fair and reasonable given the risks of the case.  Further, although the deadline to object the Settlement has not yet passed, no Settlement Class Members have objected to-date to the Settlement.[2]

In light of the considerations discussed in this memorandum and the accompanying papers, Lead Plaintiff and Lead Counsel submit that the Settlement is fair, reasonable, and adequate, satisfies the standards of Rule 23, and provides a good recovery for the Settlement Class.  Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and deem the Plan of Allocation, presented in the mailed Notice, to be a fair and reasonable method for distributing the Net Settlement Fund to eligible Settlement Class Members.

## II.   THE SETTLEMENT MERITS FINAL APPROVAL BY THE COURT

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class-action claims.  *See* Fed. R. Civ. P. 23(e).  A class-action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095,

---

[2] The deadline for submission of objections is January 21, 2021.  Should any objections be received, Lead Counsel will address them in the reply papers due on February 4, 2021.

1101 (9th Cir. 2008); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").  Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. Settlements of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

In determining whether a proposed settlement is "fair, reasonable, and adequate," the Court should consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  As discussed below, all of these factors strongly support approval of the Settlement here.

In addition, the Ninth Circuit has held that district courts should consider the following factors in evaluating the fairness of a class action settlement:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *accord Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors, which became effective on December 1, 2018, and the factors identified in" Ninth Circuit case law.  Not all of these factors will apply to every class action settlement and, under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval.  *See Torrisi v. Tucson Elec.  Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The Ninth Circuit has cautioned that courts' review of settlements should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027.  In other words, a settlement hearing should "not to be turned into a trial or rehearsal for trial on the merits," *Officers for Justice v. Civil Serv.  Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and a court "need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'"  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

### A.   Lead Plaintiff and Lead Counsel Have Adequately Represented The Settlement Class

In determining whether to approve a class action settlement, the Court should consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A); *see In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017) (to determine adequacy, "courts consider two questions: (1) do the named plaintiffs and

their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

Here, both Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class in both the litigation and the Settlement.  Lead Plaintiff has claims that are typical of and coextensive with those of the Settlement Class; and lacks any interests that are antagonistic to the interest of other members of the Settlement Class.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.  On the contrary, Lead Plaintiff— like all other Settlement Class Members—has an interest in obtaining the largest possible recovery from Defendants.  *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Lead Plaintiff has also retained counsel who are highly experienced in securities litigation and have successfully prosecuted many complex class actions throughout the United States.  *See* Ex. 3 to Berg Decl. (Lead Counsel's firm resume).  Further, as set forth in the accompanying Berg Declaration, Lead Counsel has vigorously prosecuted the Settlement Class's claims over the last nine years.

Accordingly, as the Court previously found in certifying the Settlement Class and appointing Lead Plaintiff as Settlement Class representative and Lead Counsel as Settlement Class counsel, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class.  *See* Preliminary Approval Order, Dkt. 204 at ¶¶2-4.

**B.     The Settlement Was Reached After Substantial Discovery, Arms'-Length Negotiations Between Experienced Counsel, And Mediation With An Experienced Mediator**

In weighing approval of a class action settlement, courts consider whether the settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  This includes consideration of related circumstances bearing on the procedural fairness of the settlement, including (i) counsel's understanding of the strengths and weakness of the case based on factors such as "the extent of discovery completed and the stage of the proceedings," *Hanlon*, 150 F.3d at 1026; (ii) the presence

or absence of any indicia of collusion, *see In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011); and (iii) the involvement of a mediator.

The fact that the Parties reached the Settlement after arm's-length negotiations between experienced counsel and with the assistance of an experienced mediator creates a presumption of its fairness.  *See In re Netflix Privacy Litig*., 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), *aff'd*, 151 F.3d 1234 (9th Cir. 1998). Following the Order of the Ninth Circuit Mediation Program, the Parties continued extensive negotiations at in-person and telephonic meetings with private mediator, Michelle Yoshida, Esq. of Phillips ADR.  Ms. Yoshida is an experienced mediator with over 13 years of experience in mediating complex civil litigation, including working with Phillips ADR founder, former federal judge, Layn R. Phillips.  The Parties also provided periodic reports to the Ninth Circuit Mediator. As courts in this District and elsewhere have found, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."  *Satchell v. Fed. Express Corp*., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Courts also give considerable weight to the opinion of experienced and informed counsel who support settlement.  In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc*., 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017); *accord Omnivision*, 559 F. Supp. 2d at 1043 (same).  Here, Lead Counsel has extensive experience in securities litigation.  *See* Berg Decl., Ex. 3.  Moreover, Lead Counsel has a thorough understanding of the merits and risks of this 9-year-old Action through, *inter alia*, the investigation and preparation of three amended complaints, briefing three oppositions to motions to dismiss, and successfully briefing and arguing reversal of dismissal to the Ninth Circuit.  Importantly, the

Parties reached the agreement to settle only after conducting extensive fact and expert discovery, which included obtaining and reviewing nearly 200,000 pages of documents from Defendants, obtaining and reviewing productions from third party analysts, and taking the depositions of three witnesses representing Finisar pursuant to Rule 30(b)(6).  This discovery provided Lead Plaintiff and Lead Counsel with ample information to ascertain the strengths and risks of the claims asserted in the Action and for their conclusion that the Settlement was fair and reasonable given the risks of the case.

Further, the Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants.  *See Bluetooth Headset*, 654 F.3d at 947.  In short, the Settlement here was reached after arm's-length negotiations by capable counsel after substantial discovery and was not a product of fraud, overreaching, or collusion among the Parties.

### C.    The Relief That The Settlement Provides For The Settlement Class Is Adequate, Taking Into Account The Costs And <u>Risks Of Further Litigation And All Other Relevant Factors</u>

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  This factor under Rule 23(e)(2)(C) essentially encompasses four of the seven factors of the traditional *Hanlon* analysis: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; and (4) the amount offered in settlement.  *See Hanlon*, 150 F.3d at 1026.  As demonstrated below, each of these factors supports approval of the Settlement under Rule 23(e)(2)(C).

### 1.    <u>The Amount Offered In Settlement</u>

The amount of a settlement "is generally considered the most important [factor], because the critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016).  However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se

render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). In assessing the recovery, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers of Justice*, 688 F. 2d at 624; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (holding that settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Here, the $6.8 million recovery constitutes a significant and certain benefit for Settlement Class Members. In light of the risks of continued litigation and the potential outcomes on appeal and at trial, discussed further below, Lead Plaintiff and Lead Counsel believe that the Settlement falls well within the range of possible approval. Indeed, the Settlement presents a favorable recovery when compared to the median settlement value in securities class action settlements, which was calculated by financial experts at Cornerstone Research to be $5 million in 2017, and falls within the range of the average medium settlement value from 1996 through 2019, reported to be $8.9 million. *See*, Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, *Securities Class Action Settlements – 2017 Review and Analysis*, at p. 3 (Cornerstone Research 2018) (reporting the median value at $5 million in 2017) (available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-Review-and-Analysis.pdf (last visited on Jan. 7, 2021)); Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2019 Review and Analysis* at p. 19, Appendix 1: Settlement Percentiles (available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis (last visited on Jan. 7, 2021).

The Settlement also represents approximately 2.4% of the estimated damages of $273 million *if* Lead Plaintiff were to prevail on *all* of the numerous issues in this case and all of the claims were upheld through trial and appeal. Berg Decl. ¶87. Thus, this Settlement represents a recovery in line with the typical recovery in securities class action litigation. *See Omnivision*, 559

F. Supp. 2d at 1046 (noting that the average recovery in securities class actions is less than 3% of possible damages); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *5-6 (S.D. Cal. Oct. 30, 2020) (approving settlement amount representing "a recovery of 1.99% of total estimated damages" noting that "[o]ther courts have found similar recoveries to be fair and reasonable." (citing *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005); *In re Prudential Sec., Inc. L.P. Litig.*, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages)).

Accordingly, in light of the substantial risks and expense of continued litigation compared to the certain and prompt recovery of $6.8 million, the Settlement is a good result that is well within the range of reasonableness. *See Orvis v. Spokane Cty.*, 281 F.R.D. 469, 475 (E.D. Wash. 2012) ("the proposed benefit to class members appears to the Court to be within the range of fair and reasonable compensation given the uncertain outcome of the legal arguments and the risks and probable delay for Plaintiff and class members if litigation were to proceed toward trial").

### 2. The Strength Of Lead Plaintiff's Case And The Significant Risks Of Continued Litigation

Courts evaluating proposed class action settlements consider the strength of the plaintiffs' case and the risks of further litigation. *See Torrisi,* 8 F.3d at 1376. To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 823, 831 (N.D. Cal. 2017).

In considering whether to enter into the Settlement, Lead Plaintiff, represented by counsel experienced in securities litigation, weighed the risks inherent in establishing all the elements of their claims, including the risks of the pending appeal, and then, if successful, proving falsity, Defendants' scienter, loss causation, and recoverable damages, as well as the expense and likely duration of the Action – in this case which has already been litigated for over nine years. Indeed, the pending appeal to the Ninth Circuit was a driving force in reaching the Settlement, while Lead Plaintiff believes that it would have been successful on its appeal, the real possibility that the

Settlement Class would receive no recovery at all "weighs in favor of approval of the Settlement." *Omnivision*, 559 F. Supp. 2d at 1042 (finding class settlement reasonable where plaintiffs "agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing."). In addition, given that the Settlement is being paid from wasting D&O insurance policies (that will continue to be depleted by defense fees and expenses), the Settlement also provides certain and immediate benefits to the Settlement Class, where there is uncertainty of any funds remaining to satisfy a future judgment, especially considering that Finisar was acquired in a merger by another entity (II-VI Inc.) in September 2019.

Lead Plaintiff and Lead Counsel believed in the merits of the claims they asserted, but also recognized that there were meaningful risks. Even if successful on the pending appeal concerning price impact, Lead Plaintiff and Lead Counsel were aware that, in order to prevail at trial, they would have to prove not only that Defendants' statements were false or misleading, but also that Defendants knew or were deliberately reckless in not knowing that their statements were false when made; and that those statements were corrected and caused recoverable damages for the Settlement Class.

With respect to proving falsity, Lead Plaintiff and Lead Counsel recognize that they faced challenges in proving that Defendants' statements were materially false and misleading when made. Finisar was never required to restate or amend any of its financial statements, and Defendants have consistently asserted that their statements were accurate when they were made. *See* Berg Decl. ¶¶82-84. Defendants would continue to argue at trial and subsequent stages that their statements were not false when made.

Assuming that Lead Plaintiff was able to prove to a jury that Defendants' statements were materially false, Lead Plaintiff would still need to prove that Defendants made the alleged false statements with the intent to mislead investors or with deliberate recklessness. As courts have recognized, defendant's state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence." *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Immune Response Sec. Litig.*, 497 F.

Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is a "complex and difficult [element] to establish at trial").

Lead Plaintiff also confronted considerable hurdles in establishing loss causation and full damages. These risks were a meaningful factor in assessing the value of this case. Specifically, Lead Plaintiff faced substantial challenges in proving that the revelation of the truth about Defendants' false and misleading statements caused the declines in the prices of Finisar stock. Lead Plaintiff and Lead Counsel anticipate that Defendants, backed by their expert's testimony, would argue at trial and appeal that the decline in the price of Finisar common stock identified by Lead Plaintiff was not caused entirely, or at all, by the alleged corrective disclosures.

Because of such challenges, Lead Plaintiff's proposed damages methodology would have come under sustained attack by Defendants, and issues relating to damages would likely have come down, at best, to an inherently unpredictable and hotly disputed "battle of the experts" where it would be impossible to predict with any certainty which arguments would find favor with a jury. *See, e.g., Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at \*2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not, be accepted by a jury."). The outcome could well have depended on whose testifying expert the jury believed or even whether the jury was able to sufficiently parse through the complex economic theories used by the experts.

### 3.    The Duration And Costs Of Continued Litigation

Courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g., Torrisi*, 8 F.3d at 1375-76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn*

*User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015).  Due to the "notorious complexity" of securities class actions in particular, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials."  *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (finding that class actions have well-deserved reputation as most complex litigation).

In addition to the nine-years that have passed already litigating this Action, continuing litigation through the conclusion of the pending appeal, resuming fact discovery, expert discovery, summary judgment, trial, and post-trial appeals would have been extremely expensive and would have delayed any recovery for Settlement Class Members, possibly for many more years.  *See Zynga*, 2016 WL 537946, at *10; *Amgen*, 2016 WL 10571773, at *3 ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation.").  Barring settlement, there is no question that resolution of this case would take considerable time and require additional expenses, with the end-result far from certain.  *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."), *aff'd in relevant part*, 473 F. App'x 716 (9th Cir. 2012).

Thus, the risk, expense, complexity, and likely duration of further litigation support approval of the Settlement.  The present value of a certain recovery now, as opposed to the mere chance for a possibly greater one years later, supports approval of a settlement that eliminates the expense and delay of continued litigation and the risk that the Settlement Class could receive no recovery. *See id.* (holding that courts "shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation").

### 4. All Other Factors Set Forth In Rule 23(e)(2)(C)
### Support Approval Of The Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors also supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

First, the procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well established, effective methods that have been widely used in securities-class-action litigation. Here, the proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to the Court-approved Claims Administrator, Angeion Group ("Angeion" or the "Claims Administrator"). Angeion, an independent company with extensive experience administering securities class actions, will review and process the claims under Lead Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court, and then mail claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court.[3] This type of claims processing is standard in securities class actions and has long been used and found to be effective. This claim procedure is necessary because neither Lead Plaintiff nor Defendants possess individual investors' trading data that would allow the Parties to create a claims-free process to distribute Settlement funds.

Second, the relief provided for the Settlement Class in the Settlement is also adequate when the terms of the proposed award of attorney's fees are taken into account. As discussed in the

---

[3] The Settlement is not a claims-made settlement. If the Settlement is approved, Defendants will have no right to the return of any portion of the Settlement based on the number or value of claims submitted. *See* Settlement Agreement ¶6.4.

accompanying Motion for Attorneys' Fees and Litigation Expenses, the proposed attorneys' fees of 25% of the Settlement Fund, to be paid upon approval by the Court, are reasonable in light of the efforts of Lead Counsel and the risks in the litigation. Most important with respect to the Court's consideration of the fairness of the Settlement is the fact that approval of the requested attorneys' fees is entirely separate from approval of the Settlement, and neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Settlement Agreement ¶7.2.

Lastly, Rule 23(e)(2)(C) asks the Court to consider the proposed Settlement's fairness in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the only such agreements (other than the Settlement Agreement itself) are the July 8, 2020 Stipulation to Dismiss Appeal Without Prejudice filed with the Ninth Circuit and the Parties' Supplemental Agreement (described in Settlement Agreement ¶10.5, and the Preliminary Approval Motion, Dkt. 199 at p. 6). The Supplemental Agreement affords Defendants the option to terminate the Settlement if the number of Settlement Class Members who request exclusion from the Class exceeds a specified threshold. Such agreements are standard in securities class actions and other similar class actions. These agreements indirectly benefit the class because they encourage defendants to agree to larger class action settlements by providing assurance that they will have the right to terminate if the number of opt outs is unexpectedly high. Courts have consistently found that such provisions have no negative impact on the fairness of the Settlement. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (rejecting objector's argument that such a provision rendered the settlement unfair); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement . . . does not weigh against approval" of settlement); *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *7 (N.D. Cal. Oct. 20, 2017) (agreement permitting defendant to terminate the settlement if an opt-out threshold is reached "does not render the settlement unfair"). Notably, there have been no such exclusion requests to date.

**D.**     **The Settlement Treats Class Members Equitably Relative To Each Other**

In determining whether a class action settlement is "fair, reasonable, and adequate," the Court must also consider whether the Settlement treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). The proposed Settlement here treats members of the Settlement Class equitably. As discussed below in Section III (discussing the Plan of Allocation), eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on damages they suffered that were attributable to the alleged fraud. No subset of the Settlement Class is receiving any special treatment and Lead Plaintiff will receive the same level of *pro rata* recovery under the Plan of Allocation (based on its Recognized Claims as calculated under the Plan) as all other Settlement Class Members.

**E.**     **Additional Factors Considered By The Ninth Circuit**
**Support Approval Of The Settlement**

Two additional factors considered in assessing a proposed settlement are "the experience and views of counsel" and "the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575. Both of these additional factors support the Settlement.

As courts in the Ninth Circuit explain, "[t]he recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *see Nat'l Rural Telecommc'ns Coop. v. DIRECTTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel . . . because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation'"). Here, Lead Counsel—based on a thorough understanding of the Action—concluded that the Settlement represents a favorable outcome for Settlement Class Members in light of the range and probability of potential outcomes.

Likewise, the positive reaction of the Class to the Settlement is another factor that favors approval of the Settlement. *See Amgen*, 2016 WL 10571773, at *4. Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Angeion, sent a total of 29,911 copies of the Notice Packet to potential Class Members and nominees as of January 6, 2021. *See*

Declaration of Brittany M. Cudworth, Settlement Consultant at Angeion ("Angeion Decl.") (Ex. 2 to the Berg Decl.) at ¶8.  In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the *PR Newswire* on November 9, 2020.   *See id.* ¶9.  The Notices set out the essential terms of the Settlement and informed potential Settlement Class Members of, among other things, their right to opt out of the Settlement Class or object to any aspect of the Settlement.  While the January 7, 2021 deadline for Class Members to exclude themselves and the February 21, 2021 deadline to object has not yet passed, to date, no objections to the Settlement or the Plan of Allocation have been received, and no requests for exclusion from the Class have been received.  Angeion Decl. ¶¶14-15.  The absence of any objections or requests for exclusion supports approval of the Settlement here.

### III.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In addition to seeking final approval of the Settlement, Lead Plaintiff seeks approval of the proposed Plan of Allocation for the Settlement proceeds. The Plan of Allocation is set forth at pages 6-8 of the Notice mailed to Settlement Class Members.  Angeion Decl., Ex. A.  It is the same Plan of Allocation as that which was contained in the Notice approved by the Court in its Preliminary Approval Order.  The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole: the plan must be "fair, reasonable, and adequate."  *Class Plaintiffs*, 955 F.2d at 1284-85; *see also Omnivision*, 559 F. Supp. 2d at 1045.  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *See Heritage Bond*, 2005 WL 1594403, at *11. Courts hold that "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable*." In re Oracle Sec. Litig*., 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).  Importantly, the Plan of Allocation treats all Settlement Class Members, including Lead Plaintiff, equitably.  The Plan of Allocation is designed to equitably distribute the Settlement proceeds among members of the Settlement Class who were allegedly injured by Defendants' alleged misrepresentations and who submit valid Claim Forms.

The Plan of Allocation provides for the calculation of a "Recognized Loss" amount for each properly documented purchase or acquisition of Finisar common stock during the Class

Period.  A claimant's total Recognized Losses will depend on, among other things, when their shares were purchased and/or sold during the Class Period in relation to the disclosure alleged in the Action, whether the shares were held through or sold during the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e) (providing methodology for limiting damages in securities fraud actions), and the value of the shares when they were sold or held.  The Recognized Loss formulas are tied to liability and damages, which take into consideration the amount of artificial inflation allegedly present in the per-share closing price of Finisar's common stock that was purportedly caused by the alleged fraud.  The sum of a claimant's Recognized Loss Amounts for all of their Class Period purchases is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  Once the Claims Administrator has processed all submitted claims, distributions will be made to eligible claimants.  After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), the Claims Administrator will, if feasible and economical, re-distribute the balance among eligible claimants who have cashed their checks.  *See* Notice; Settlement Agreement ¶8.12.  These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer economically feasible to distribute.  Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any outstanding Notice and Administration Expenses or Taxes, will be donated *cy pres* to a non-sectarian, not-for-profit charity organization, as designated below in Section IV, and approved by the Court.  *Id.*   Accordingly, Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who submit valid claims.  "The fact that the plan of allocation is recommended by experienced and competent counsel further cuts in favor of approving the Settlement."  *Heritage Bond*, 2005 WL 1594403, at *11; *see* Berg Decl. ¶¶100-104.

Of note, as of January 6, 2021, more than 29,900 copies of the Notice, which contains the Plan of Allocation and advises Class Members of their right to object to the Plan, have been mailed

to potential Settlement Class Members.  *See* Angeion Decl. ¶8.  To date, no objections to the Plan of Allocation have been received.  *See id.* ¶15.

In sum, Lead Plaintiff respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved.

## IV.    DESIGNATION OF CY PRES RECIPIENT <u>FOR REMAINDER OF SETTLEMENT FUNDS</u>

At the Preliminary Approval hearing on October 1, 2020, the Court instructed Lead Counsel to designate at the time of final approval the *cy pres* recipient of any remainder of the Settlement Fund after distribution to the Settlement Class pursuant to the terms of the Settlement Agreement (¶8.12) and Plan of Allocation.  Lead Counsel and Lead Plaintiff have selected the Institute for Investor Protection, Loyola University Chicago School of Law as the *cy pres* recipient. Loyola's Institute for Investor Protection "is a non-partisan, independent academic center that promotes investor protection for the individual consumer and the public" that seeks "to shape policy issues affecting investors" and "educate investors about the private remedies Congress and the judiciary envisioned would deter disclosure violations and make aggrieved investors whole." *https://www.luc.edu/law/academics/centersinstitutesandprograms/instituteforinvestorprotection/* (last visited on Dec. 1, 2020).  Among other things, the Institute for Investor Protection holds conferences featuring prominent academic and legal practitioners in both the private and public sector to address securities laws and disclosure protections for investors, and funds academic research and publication on securities fraud and proposed legal solutions to protect investors and prevent securities fraud.  Established with funds from a *cy pres* award from the securities class action settlement in *Abrams v. Van Kampen Fund Inc.*, N.D. Illinois, Eastern Division, No. 01-C-7538, the Institute for Investor Protection has been designated as a worthy *cy pres* recipient in other securities fraud class action settlements, including *In re China Medicine Securities Litigation*, C.D. Cal. 8:11-CV-01061-JST (ANx).

As noted, payment will only be made to this charity when the residual amount left for re-distribution to Class Members is so small that a further re-distribution would not be cost effective—for example, in the event the administrative costs of conducting an additional

---

distribution would largely subsume the funds available.  Accordingly, Lead Plaintiff and Lead Counsel submits that the Institute for Investor Protection is a worthy and appropriate charity to receive any remainder of the Settlement Fund pursuant to the terms of the Settlement Agreement.

## V.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's Preliminary Approval Order conditionally certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement.  Dkt. 204 at ¶¶2-4.  For all of the reasons stated in the Preliminary Approval Order and Lead Plaintiff's Preliminary Approval Motion (Dkt. 199 at 9-15), and because nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, Lead Plaintiff respectfully requests that the Court grant final certification of the Settlement Class under Rules 23(a) and (b)(3).

## VI.   NOTICE TO THE SETTLEMENT CLASS STATIFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

In accordance with the Court's Preliminary Approval Order, Angeion, the Court-approved Claims Administrator, began mailing copies of the Notice Packet to potential Class Members and nominees on October 29, 2020.  *See* Angeion Decl. ¶¶5-6.  As of January 6, 2021, Angeion has mailed 29,911 copies of the Notice Packet by first-class mail to potential Class Members and nominees.  *See id.* ¶8.  In addition, Angeion arranged for the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire* on November 9, 2020.  *See id.* ¶9.  Angeion established a dedicated settlement website, *www.FinisarSecuritiesLitigation.com*, to provide potential Settlement Class Members with information concerning the Settlement and access to downloadable copies of the Notice and Claim Form, the Settlement Agreement and Preliminary Approval Order.  *See id.* ¶10.  Angeion also established a toll-free telephone number (1-833-935-2722) with an Interactive Voice Response ("IVR") system.  *Id.* ¶11.  Callers have the ability to listen to important information about the Settlement 24 hours a day, 7 day a week, or to leave a message to request that an Angeion representative contact them.  *Id.*  In addition, Angeion established a dedicated email address for inquiries at *Info@FinisarSecuritiesLitigation.com*.  The telephone number and email address will be maintained throughout the administration of the Settlement.  *Id.* ¶12.

The Notice provided to the Class in accordance with the Court's Preliminary Approval Order satisfied all the requirements of due process, Rule 23, and the PSLRA.  For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).  Notice of a class action settlement "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *See Churchill*, 361 F.3d at 575; *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (same); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) ("Settlement notices must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

The Notice program's combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in a widely circulated publication, transmission over a business newswire, and publication on internet websites, was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B); *see, e.g., Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21, 2016) (approving similar notice program); *Zynga*, 2016 WL 537946, at *7 (finding individual notice mailed to class members combined with summary publication constituted "the best form of notice available under the circumstances").

Both the substance of the Notice and the method of its dissemination to potential members of the Settlement Class satisfied these standards here.  The Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the Settlement and contains all of the information required by Rule 23(c)(2)(B), the PSLRA (15 U.S.C. § 78u-4(a)(7)), and this District's Procedural Guidelines for Class Action Settlements.  The Notice informed Class Members of, among other things, (1) the nature of the Action and the claims asserted; (2) the definition of the Settlement Class; (3) the amount of the Settlement; (4) the reasons why the parties are proposing the Settlement; (5) the estimated average recovery per affected

Settlement Class Member; (6) the maximum amount of attorneys' fees and expenses that will be sought; (7) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from Settlement Class Members; (8) Settlement Class Members' right to opt out of the Settlement Class or to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or litigation expenses; (9) the binding effect of a judgment on Class Members; and (10) the dates and deadlines for Settlement-related events.  The Notice also contained the Plan of Allocation and provided Settlement Class Members with information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund.

In sum, the Notice fairly apprised Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, the Federal Rules of Civil Procedure, the PSLRA, and due process.

## VII.   **CONCLUSION**

For the reasons stated herein, Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement and approve the Plan of Allocation, and enter the proposed Final Order and Judgment submitted herewith (negotiated by the Parties as Exhibit B to the Stipulation and Agreement of Settlement, Dkt. 199-1).

Dated: January 7, 2021                           Respectfully submitted,

                                  */s/ Ian D. Berg*
                                  ABRAHAM, FRUCHTER &
                                       TWERSKY, LLP
                                  IAN D. BERG
                                  TAKEO A. KELLAR
                                  11622 El Camino Real, Suite 100
                                  San Diego, CA 92130

                                  MITCHELL M.Z. TWERSKY (*pro hac vice*)
                                  One Penn Plaza, Suite 2805
                                  New York, NY 10119
                                  Tel:    (212) 279-5050
                                  Fax:    (212) 279-3655

                                  *Counsel for Lead Plaintiff Oklahoma Firefighters*
                                  *Pension and Retirement System*