1  IAN D. BERG   (Bar No. 263586)
  TAKEO A. KELLAR   (Bar No. 234470)
2  ABRAHAM, FRUCHTER
    & TWERSKY, LLP
3  11622 El Camino Real, Suite 100
  San Diego, CA 92130
4  Tel:    (858) 764-2580
  Fax:    (858) 764-2582
5  *iberg@aftlaw.com*
  *tkellar@aftlaw.com*
6
7  *Counsel for Lead Plaintiff Oklahoma
  Firefighters Pension and Retirement System*

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12 | In re FINISAR CORPORATION SECURITIES LITIGATION | Case No. 5:11-CV-01252-EJD |
|---|---|
13 | | <u>CLASS ACTION</u> |
14 | | **NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

Date:       February 11, 2021
Time:       9:00 a.m.
Courtroom:  4
Judge:      Hon. Edward J. Davila

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

NOTICE OF MOTION AND MOTION ........................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.      PRELIMINARY STATEMENT ........................................................................... 2

II.     THE REQUESTED ATTORNEYS' FEES ARE FAIR
        AND REASONABLE ........................................................................................... 3

        A.     Lead Plaintiff's Counsel Are Entitled To An Award
               Of Attorneys' Fees From The Common Fund
               Obtained .................................................................................................... 3

        B.     The Ninth Circuit's 25% Benchmark Award Is
               Reasonable In This Case ........................................................................... 4

               1.     The Results Achieved Support The Fee
                      Request ........................................................................................... 6

               2.     The Substantial Risks Of The Litigation
                      Support The Fee Request ................................................................ 7

               3.     The Skill Required And Quality Of The
                      Work Performed Support The Fee Request .................................... 9

               4.     The Contingent Nature Of The Fee And The
                      Financial Burden Carried By Counsel
                      Support The Fee Request .............................................................. 10

               5.     Awards Made In Similar Cases Support The
                      Fee Request .................................................................................. 11

               6.     Reaction Of The Class Members To Date
                      Supports The Fee Request ............................................................ 12

               7.     The Lodestar Cross-Check Confirms The
                      Fee Is Reasonable ........................................................................ 13

III.    LEAD COUNSEL'S EXPENSES ARE REASONABLE
        AND WERE NECESSARILY INCURRED TO
        ACHIEVE THE BENEFIT OBTAINED ............................................................ 15

IV.     LEAD PLAINTIFF SHOULD RECEIVE AN INCENTIVE
        AWARD RELATED TO ITS REPRESENTATION OF
        THE SETTLEMENT CLASS .............................................................................. 16

V.      CONCLUSION ................................................................................................... 18

## TABLE OF AUTHORITIES

Case                                                                                                    Page

*Blum v. Stenson*,
    465 U.S. 886 (1984)............................................................................................... 4, 12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)..................................................................................................... 4

*Central Railroad. & Banking Co. of Ga. v. Pettus*,
    113 U.S. 116 (1885)..................................................................................................... 3

*Chao v. Aurora Loan Services, LLC*,
    2014 WL 4421308 (N.D. Cal. Sept 5, 2014) ............................................................ 17

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................................ 16

*Fernandez v. Victoria Secret Stores, LLC*,
    2008 WL 8150856 (C.D. Cal. July 21, 2008) .......................................................... 14

*Glass v. UBS Fin. Servs.*,
    331 F. App'x 452 (9th Cir. 2009) ............................................................................. 14

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)........................................................................................ 9

*Gustafson v. Valley Ins. Co.*,
    2004 WL 2260605 (D. Or. Oct. 6, 2004).................................................................... 9

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ........................................................................................ 15

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
    2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) .......................................................... 13

*Hicks v. Morgan Stanley*,
    & Co., 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................................. 6

*Hopkins v. Stryker Sales Corp.*,
    2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............................................................. 13

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................................... 5, 11

*In re Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014)......................................................... 14

*In re Apollo Grp. Inc. Sec. Litig.*,
    2012 WL 1378677 n.2 (D. Ariz. Apr. 20, 2012) ...................................................... 14

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................................... 11

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................ 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................. 5

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)............................................................................... 8

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005)............................................................................... 4

*In re CV Therapeutics, Inc., Sec. Litig.*,
    2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ..................................................... 5

*In re Daou Sys.*,
    411 F.3d 1006 (9th Cir. 2005) ........................................................................... 8

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ................................................................ 10

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ................................................... 9

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................. 10

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)................................................................... 7, 12

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................................................. 8

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ................................................ 11

*In re M.D.C. Holdings Sec. Litig.*,
    1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................... 17

*In re Nuvelo, Inc. Sec. Litig.*,
    2011 WL 2650592 (N.D. Cal. July 6, 2011)...................................................... 5

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................... *passim*

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ........................................................................... 11

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009).................................................. 11

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................................... 5

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................................ 15

*In re Prudential Sec., Inc. L.P. Litig.*,
   1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ...................................................... 6

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ................................................ 6, 15

*In re Tyco Int'l, Ltd. Multi-Dist. Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ................................................................ 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod.* Liab. Litig.,
   2019 WL 2077847 (N.D. Cal. May 10, 2019) ................................................... 5

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.* Liab. Litig.,
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ................................................. 14

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) .................................................................... 8

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ........................................................ 4, 5, 7, 10, 14

*Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013) ......................................................................... 16

*Jacobs v. Cal. State Auto. Ass'n Inter–Ins. Bureau*,
   2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) ................................................. 17

*Knight v. Red Door Salons, Inc.*,
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................................................... 13

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................. 10

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ........................................................................................ 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................... 13

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) .................................................................... 17

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ......................................................................... 3, 4

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) .......................................................................... 5

*Rausch v. Hartford Financial Servs. Group*,
   2007 WL 671334 (D. Or. Feb. 26, 2007) ........................................................ 18

*Rieckborn v. Velti PLC*,
   2015 WL 468329 (N.D. Cal. Feb. 13, 2015) .................................................... 5

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) ..................................................................... 11

*Schaffer v. Litton Loan Servicing, LP*,
 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ............................................. 17

*Six Mexican Workers v. Arizona Citrus Growers*,
 904 F.2d 1301 (9th Cir. 1990) ......................................................................... 4

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ......................................................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) .......................................................................................... 4

*Todd v. STAAR Surgical Co.*,
 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ................................................ 18

*Torrisi v. Tucson Elec. Power Co.*,
 8 F.3d 1370 (9th Cir. 1993) .............................................................................. 4

*Vega v. Weatherford U.S., Ltd. P'ship*,
 2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) .................................................. 16

*Vincent v. Hughes Air West, Inc.*,
 557 F.2d 759 (9th Cir. 1977) ...................................................................... 3, 15

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ................................................. 6, 7, 11, 12, 13

Statutes

15 U.S.C. §78u-4(a)(4) .......................................................................................... 16

15 U.S.C. § 78u-4(a)(6) ........................................................................................... 4

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Granting Preliminary Approval of Class Action Settlement (Dkt. 204) ("Preliminary Approval Order"), Lead Counsel Abraham, Fruchter & Twersky, LLP ("Lead Counsel") for Lead Plaintiff Oklahoma Firefighters Pension and Retirement System ("Lead Plaintiff") and the Settlement Class hereby moves the Court for an Order awarding attorneys' fees, reimbursement of litigation expenses, and an incentive award to Lead Plaintiff in the above-captioned securities class action.  This Motion is set for hearing at 9:00 a.m. on February 11, 2021, or as soon thereafter as the matter may be heard, before the Honorable Edward J. Davila of the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 4, 280 South 1st Street, San Jose, CA 95113.

This Motion is based on the following Memorandum of Point and Authorities, the accompanying Declaration of Ian D. Berg in Support of Lead Plaintiff's Motion for Final Approval of Settlement and Plan of Allocation, and Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Berg Declaration" or "Berg Decl.") and its exhibits, all other prior pleadings and papers in this action, arguments of counsel, and any additional information or argument that may be required by the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve as fair and reasonable Lead Counsel's application for an attorneys' fee award in the amount of 25% of the Settlement Fund.

2.      Whether the Court should approve the request for reimbursement of $381,496.40 in Litigation Expenses incurred by Lead Counsel in this Action.

3.      Whether the Court should approve the request for an incentive award of $5,000 to Lead Plaintiff related to its representation of the Settlement Class.

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

Lead Counsel for the Court-appointed Lead Plaintiff and the Settlement Class respectfully

3

submits this memorandum of law in support of its motion for (i) an award of attorneys' fees in the

4

amount of 25% (*i.e.*, $1.7 million) of the Settlement Fund; (ii) reimbursement of $381,496.40 in

5

Litigation Expenses that were reasonably and necessarily incurred by Lead Counsel in prosecuting

6

and resolving this Action; and (iii) an incentive award of $5,000 to Lead Plaintiff related to its

7

representation of the Settlement Class throughout the course of this Action.[1]

8

## I.   <u>PRELIMINARY STATEMENT</u>

9

Through the extensive and multi-year efforts of Lead Plaintiff and Lead Counsel, Lead

10

Plaintiff achieved a settlement of $6.8 million in cash on behalf of the Settlement Class in

11

consideration for a release of all claims against Defendants.  In undertaking this litigation, Lead

12

Counsel faced numerous challenges to proving both liability and damages that posed the serious

13

risk of no recovery, or a substantially smaller recovery than the Settlement, for the Settlement

14

Class.  As detailed in the accompanying Berg Declaration, the Settlement was reached only after

15

nine years of highly contested and difficult litigation, including multiple amended complaints,

16

extensive motion practice, appeals to the Ninth Circuit, and substantial fact discovery, which

17

required Lead Counsel to dedicate a significant amount of time and resources to the Action.

18

Prosecution of this Action was undertaken by Lead Counsel on a fully contingent basis

19

against highly skilled defense counsel.  Given the recovery obtained, the amount and complexity

20

of the work involved during the pendency of the litigation, the skill and expertise required to

21

prosecute and resolve the claims asserted, and the substantial time and risks that Lead Counsel

22

undertook in this action, Lead Counsel respectfully submits that its fee request for 25% ($1.7

23

million) of the Settlement Fund is fair and reasonable in this case under the applicable legal

24

standards, including the Ninth Circuit's "benchmark" award of 25% in common funds cases.  Lead

25

26

[1] Unless otherwise defined herein, all capitalized terms have the meanings defined in the

27

Stipulation and Agreement of Settlement, dated July 8, 2020 (Dkt. 199-1) (the "Settlement

28

Agreement" or "Stipulation").

Counsel also submits that the request for reimbursement of $381,496.40 in Litigation Expenses are reasonable and "routinely reimbursed" by courts in the Ninth Circuit, because the recovery obtained for the Settlement Class is largely attributable to Lead Counsel's vigorous prosecution of the litigation and the costs were necessarily incurred to achieve the Settlement.  As set forth in the Declaration of Chase Rankin, the Executive Director of the Oklahoma Firefighters Pension and Retirement System (attached as Exhibit 1 to the Berg Declaration) (the "Rankin Declaration"), Lead Plaintiff approves of Lead Counsel's fee and expense request as fair and reasonable in light of the work performed on behalf of Lead Plaintiff and the Settlement Class.

Notably, to date, no objections have been filed with respect to any aspect of the Settlement, including the requests for attorneys' fees, reimbursement of litigation expenses, and incentive award to Lead Plaintiff.[2]

## II.    THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

### A.    Lead Plaintiff's Counsel Are Entitled To An Award Of Attorneys' Fees From The Common Fund Obtained

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989) ("*Paul, Johnson*"), the Ninth Circuit explained the equitable principle underlying such fee awards:

Since the Supreme Court's 1885 decision in *Central Railroad. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. [...] The amount of such a reward is that

---

[2] The deadline for submission of objections is January 21, 2021.  Should any objections be received, Lead Counsel will address them in its reply papers due on February 4, 2021.

1   which is deemed "reasonable" under the circumstances.

2   (Emphasis in original; citations omitted).  The purpose of this "common fund" doctrine is to avoid

3   unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth

4   with the lawyers whose skill and effort helped create it."  *In re Washington Pub. Power Supply*

5   *Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

6       Courts also have recognized that, in addition to providing just compensation, award of

7   attorneys' fees from a common fund also serves to encourage skilled counsel to represent those

8   who seek redress for damages inflicted on entire classes of persons and to discourage future similar

9   misconduct.  Indeed, the Supreme Court has emphasized that private securities actions, such as

10  this case, are "an essential supplement to criminal prosecutions and civil enforcement actions"

11  brought by the SEC.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007);

12  *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities

13  actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a

14  necessary supplement to [SEC] action.'") (citation omitted).

15  **B.      The Ninth Circuit's 25% Benchmark**
    **Award Is Reasonable In This Case**

16

17      In *Blum v. Stenson*, the Supreme Court recognized that under the common fund doctrine, a

18  "reasonable" fee may be based "on a percentage of the fund bestowed on the class."  465 U.S. 886,

19  900 n.16 (1984).  The Ninth Circuit has expressly approved the use of the percentage-of-recovery

20  method in common fund cases.  *See Paul, Johnson*, 886 F.2d at 268; *Six Mexican Workers v.*

21  *Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power*

22  *Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  Moreover, the PSLRA expressly provides that class

23  counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages

24  recovered by the class.  *See* 15 U.S.C. § 78u-4(a)(6); *see also In re Cendant Corp. Sec. Litig.*, 404

25  F.3d 173, 188 n.7 (3d Cir. 2005) ("the PSLRA has made percentage-of-recovery the standard for

26  determining whether attorneys' fees are reasonable").

27      In *Paul, Johnson*, the Ninth Circuit established 25% of the common fund recovered as the

28  "benchmark" award for attorneys' fees.  886 F.2d at 273; *see also Torrisi*, 8 F.3d at 1376

1    (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have

2    also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees

3    calculations under the percentage-of-recovery approach") (citation omitted); *In re Bluetooth*

4    *Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (reaffirming 25% benchmark in a

5    common fund case).

6         The guiding principle in this Circuit is that a fee award be "'reasonable under the

7    circumstances.'"  *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).  Indeed, it is not

8    unusual for courts to award fees in excess of 30% in appropriate circumstances.  *See In re*

9    *Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (endorsing a 30% award as

10   the "better practice" stating "[t]his court's review of recent reported cases discloses that nearly all

11   common fund awards range around 30% even after thorough application of either the lodestar or

12   twelve-factor method."); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving

13   fee equal to 33% of settlement fund).

14        Indeed, fees in this range and above this range have been consistently awarded in recent

15   securities class actions to class counsel working on a contingent fee basis and obtaining a common

16   fund for the benefit of a class.  *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices,*

17   *& Prod. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding fees of 25%

18   of settlement); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *21-22 (N.D. Cal. Feb. 13, 2015)

19   (awarding fees of 25% of partial settlement); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at

20   *3 (N.D. Cal. July 6, 2011) (awarding fees of 30% of $8.9 million settlement); *In re Omnivision*

21   *Techs.*, 559 F. Supp. 2d 1036, 1046-49 (N.D. Cal. 2007) (finding 28% fee award reasonable); *In*

22   *re CV Therapeutics, Inc., Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (awarding

23   30% of settlement fund).

24        Accordingly, when determining whether a fee is fair and reasonable, the Ninth Circuit has

25   approved a number of factors which may be relevant to the Court's determination, including:  (1)

26   the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4)

27   the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) awards made

28   in similar cases; (6) the reaction of the Class; and (7) the amount of a lodestar cross-check.  *See*

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)); *Omnivision*, 559 F. Supp. 2d at 1046-48.  Application of these factors confirms that the requested fee is justified.

### 1.    The Results Achieved Support The Fee Request

Courts have consistently recognized that the settlement achieved is an important factor to be considered in determining an appropriate fee award.  *See Omnivision*, 559 F. Supp. 2d at 1046. The Settlement Fund created here consisting of $6.8 million in cash, plus interest, is a good result. The Settlement presents a favorable recovery when compared to the median settlement value in securities class action settlements, which was calculated by financial experts at Cornerstone Research to be $5 million in 2017, and falls within the range of the average medium settlement value from 1996 through 2019, reported to be $8.9 million.  *See*, Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons*, Securities Class Action Settlements – 2017 Review and Analysis*, at p. 3 (Cornerstone Research 2018) (reporting the median value at $5 million in 2017) (available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-Review-and-Analysis.pdf (last visited on Jan. 7, 2021)); Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2019 Review and Analysis* at p. 19, Appendix 1: Settlement Percentiles  (available  at  https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis (last visited on Jan. 7, 2021)).

The Settlement also represents approximately 2.4% of the estimated damages of $273 million if Lead Plaintiff were to prevail on all of the numerous issues in this case and all of the claims were upheld through trial and appeal.  Berg Decl. ¶87.  Thus, this Settlement represents a recovery in line with the typical recovery in securities class action litigation.  *See Omnivision*, 559 F. Supp. 2d at 1046 (noting that the average recovery in securities class actions is less than 3% of possible damages); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *5-6 (S.D. Cal. Oct. 30, 2020) (approving settlement amount representing "a recovery of 1.99% of total estimated damages" noting that "[o]ther courts have found similar recoveries to be fair and reasonable." (citing *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005); *In re Prudential Sec., Inc. L.P. Litig.*, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages)).

The $6.8 million Settlement represents a certain and favorable recovery for the benefit of the Settlement Class in light of the risks of continued litigation and the potential outcomes on appeal and at trial.  In addition, given that the Settlement is being paid from wasting D&O insurance policies (that will continue to be depleted by defense fees and expenses), the Settlement also provides certain and immediate benefits to the Settlement Class, where there is uncertainty of any funds remaining to satisfy a future judgment, especially considering that Finisar was acquired in a merger by another entity (II-VI Inc.) in September 2019.  Particularly in light of these circumstances, the results achieved here on behalf of the Settlement Class weigh in favor of granting the 25% fee.

## 2.  The Substantial Risks Of The Litigation Support The Fee Request

Risk that litigation might result in the Class (and counsel) not recovering at all is an important fact in determining a fair fee award.  *See, e.g., Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-1300.  As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in adjusting the attorneys' benchmark percentage upward. *See Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance" in awarding attorneys' fees). While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly.  Courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

As noted in the Settlement Agreement, the Parties agree that the pending appeal to the Ninth Circuit was a driving force in reaching the Settlement, given that both sides believe they would be successful on appeal, but both sides understand the risks, uncertainty and costs of further litigation.  Further, while Lead Plaintiff and Lead Counsel believe that all of the claims asserted against Defendants have merit, they also recognize that there were serious risks, including as to whether Lead Plaintiff would ultimately prevail on the merits.  From the outset, Defendants have vigorously denied and continue to deny all of the claims and arguments made by Lead Plaintiff, including, among other things, that Finisar's executives acted with the requisite scienter in making

the alleged false statements, and that investor's losses resulted from the alleged fraud as opposed to other market conditions.

With respect to scienter, a plaintiff must prove that the "defendants made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Sys.*, 411 F.3d 1006, 1014-15 (9th Cir. 2005). While Lead Plaintiff and Lead Counsel certainly believe they have arguments and evidence, there is no guarantee that Defendant's scienter would be proven at trial. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("The Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial" and, as a result, "concludes that settlement is a prudent course.").

In addition, the Parties' differing arguments on loss causation and establishing damages at trial hinged upon extensive expert discovery and testimony. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Although Lead Plaintiff and Lead Counsel believe they would have been able to present expert testimony to meet the burden of proving loss causation, "establishing damages at trial would lead to a 'battle of experts'...with no guarantee whom the jury would believe." *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001). Indeed, if the damages issue came down to a battle of the experts, a jury could find that the Class's damages were smaller than the Settlement Amount, or none at all. *See, e.g., Warner*, 618 F. Supp. at 744-45 (noting "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"). The only certainty regarding damages is that the cause of investors' losses would be vigorously contested, and the risk of recovering nothing is possible, even if Lead Plaintiff succeeds on all liability issues.

Moreover, even if Lead Plaintiff obtained a favorable jury verdict, it would face the prospect of appeals which might take years to resolve and which might ultimately result in an appellate decision in Defendants' favor. It is therefore entirely possible that even if Lead Plaintiff were able to secure a judgment against Defendants, it might ultimately recover nothing and the Class would receive no compensation from the litigation. In sum, these risks facing Lead Plaintiff,

the Settlement Class, and Lead Counsel, further support the requested fee.

### 3. The Skill Required And Quality Of The Work Performed Support The Fee Request

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed. *See Gustafson v. Valley Ins. Co.*, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004) ("The 'prosecution and management of a complex national class action requires unique legal skills and abilities.'"); *Omnivision*, 559 F. Supp. 2d at 1047 ("This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss."); *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) ("The experience of counsel is also a factor in determining the appropriate fee award.").

Here, the quality of Lead Counsel's work on this case is reflected in the good result obtained. Moreover, it is particularly important to reward attorneys with skill and standing for pursuing such cases as "the stated goal in percentage fee-award cases [is] 'ensuring that competent counsel continue to be willing to undertake risky, complex and novel litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

Lead Counsel's supporting declaration includes a firm resume and a description of their background and experience in conducting securities litigation. Berg Decl., ¶¶80, 112, Ex. 3. As those submissions demonstrate, Lead Counsel has extensive and significant experience in the highly-specialized field of securities class action litigation.

From the outset, Lead Counsel endeavored to obtain the maximum recovery for the Class. Lead Counsel demonstrated that it would work, as efficiently as possible, to develop sufficient evidence to support a convincing case. As detailed in the Berg Declaration, through Lead Counsel's persistent efforts, Lead Plaintiff was able to plead detailed allegations based on its extensive investigation, successfully appeal dismissal of the Action and ultimately defeat Defendants' motions to dismiss under the heightened scrutiny imposed by the PSLRA, obtain documents and take depositions in discovery, and finally, secure a favorable Settlement while on appeal. *See* Berg Decl. ¶¶8-79; 115. Moreover, courts have regularly recognized that the efforts

of plaintiffs' counsel in achieving a favorable settlement should be accorded greater weight when achieved without the benefit of a governmental investigation.  *See, e.g., Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (in awarding 33.3% of the settlement fund, the court noted, "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action …. Plaintiffs' Class Counsel developed, litigated and successfully negotiated this Action by themselves, expending substantial time and effort.").  Lead Counsel's extensive efforts and skill leading to the Settlement strongly support the requested percentage fee.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Lead Counsel.  *See, e.g., In re Heritage Bond Litig.,* 2005 WL 1594403, at *20 (C.D. Cal. 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").  Throughout the litigation and settlement negotiations, Defendants have been represented by very skilled and highly-respected counsel at DLA Piper LLP (US), who brought considerable experience and expertise to bear and spared no effort in the defense of their client.  The fact that Lead Counsel achieved this Settlement for the Settlement Class in the face of formidable legal opposition further evidences the quality of Lead Counsel's work.

### 4.    The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.  *See WPPSS*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); *see also Omnivision*, 559 F. Supp. 2d at 1047.  Here, Lead Counsel received no compensation during the course of this over nine years of hard-fought litigation, during which they invested over 8,100 hours.  *See* Berg Decl. ¶116. Indeed, lawyers working on the case have also forgone the business opportunity to devote time to

other cases. *See Vizcaino*, 290 F.3d at 1050. Additional work in connection with the Settlement and claims administration will also be required. Any fee award has always been at risk, and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases is very real. Lead Counsel knows from personal experience that, despite the most vigorous and competent efforts, success in contingent litigation such as this case is never guaranteed. The commencement of a class action is no guarantee of success. These cases are not always settled, nor are plaintiffs' lawyers always successful. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) (affirming grant of summary judgment on loss causation grounds); *In re JDS Uniphase Corp. Sec. Litig.,* 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs, the action was dismissed and plaintiffs were ordered to pay defendants' costs); *In re Oracle Corp. Sec. Litig.,* 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g., Robbins v. Koger Props., Inc*., 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig*., 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict). Hard, diligent work by skilled counsel is required to develop facts and theories to prosecute a case and persuade defendants to settle on terms favorable to the class.

### 5.   Awards Made In Similar Cases Support The Fee Request

As set forth above, Lead Counsel's fee request is in accordance with the Ninth Circuit's 25% benchmark for common fund cases, and in line with the fee percentages regularly awarded in securities class action settlements in the Ninth Circuit and elsewhere. Indeed, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047 (approving 28% fee award in securities class action) (citing *Activision*, 723 F. Supp. at 1377-78 (surveying

securities cases nationwide and noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%")); *see also Vizcaino*, 290 F.3d at 1048-50 (affirming fee award of 28%); *Ikon*, 194 F.R.D. at 194 ("The median in class actions is approximately twenty-five percent, but awards of thirty percent are not uncommon in securities class actions.").

Moreover, if this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.20 ("In tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery"); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery"). Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is even greater than the percentage-of-recovery fee requested in this case, Lead Counsel's request is fair and reasonable.

### 6.     Reaction Of The Class Members To Date Supports The Fee Request

The reaction of the class to a proposed settlement and fee request is a relevant factor in approving fees. *Omnivision*, 559 F. Supp. 2d at 1048. Here, pursuant to the Court's Preliminary Approval Order, the Claims Administrator mailed a total of 29,911 claim packets to potential Settlement Class Members and nominees, enclosing the Court-approved Notice of Proposed Settlement and the Proof of Claim and Release Form. *See* Berg Decl. at ¶¶90-99, and Ex. 2 thereto (Declaration of Brittany M. Cudworth, Settlement Consultant at Angeion Group ("Angeion Decl.") at ¶¶4-8). Notice to the Class was also published in *The Investor's Business Daily* and over the *PR Newswire* on November 9, 2020, and provided at the website maintained by the Claims Administrator at *www.FinisarSecuritiesLitigation.com*. Angeion Decl. at ¶¶9-10.

The Notice informed Class Members that Lead Counsel would seek "an award of attorneys' fees not to exceed 25% of the Settlement funds, and reimbursement of up to $425,000 for incurred litigation expenses." Angeion Decl., Ex. A (the Notice) at pp. 2, 11. The Notice further advised

Class Members of, among other things, their right to object to Lead Counsel's request for attorneys' fees and litigation expenses.

While the deadline for filing any objections does not expire until January 21, 2021, to date, no objection to the attorneys' fees and expenses has been received.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) *(*"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Knight v. Red Door Salons, Inc.,* 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009) (no objections from the settlement class supports 30% fee award); *Omnivision*, 559 F. Supp. 2d at 1048 (only three objection supports 28% fee award).[3]

### 7.      The Lodestar Cross-Check Confirms The Fee Is Reasonable

Although courts in the Ninth Circuit typically apply the percentage approach to determine attorneys' fees in common-fund cases, "[a]s a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048 (citing *Vizcaino*, 290 F.3d at 1050-51); *see also HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc*., 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) ("Courts have found that a lodestar analysis is not necessary when the requested fee is within the accepted benchmark.").   Fee awards in class actions with substantial contingency risks generally represent positive multipliers of counsel's lodestar, often ranging up to four times the lodestar or even higher.  *See Vizcaino*, 290 F.3d at 1051-52 (finding that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," and that, when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Hopkins v. Stryker*

---

[3] If any objections to the request for attorneys' fees and expenses are received after the date of this filing, Lead Counsel will address them in a reply brief to be filed on February 4, 2021, in accordance with the Court's Preliminary Approval Order.

*Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.").

When the lodestar is used as a cross-check, the "focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multi-Dist. Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *see Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 456-57 (9th Cir. 2009); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014) ("'In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.'"); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *9 (C.D. Cal. July 21, 2008) (same).

Here, Lead Counsel spent over 8,100 hours of attorney time prosecuting and resolving this action over *nine* years (which included, *inter alia*, extensive and hard-fought motion practice, document discovery and discovery disputes, depositions, extensive expert discovery and testimony, and several appeals). Berg Decl., at ¶¶115-116, *see also* ¶¶15-79. The resulting lodestar is over $5,375,800.[4] The requested 25% fee is $1.7 million. Thus, the requested fee

---

[4] Berg Decl., ¶¶116-117. Notably, Lead Counsel's hourly rates in this case rates are within the range of reasonable fees for attorneys working on sophisticated class action litigation in this District. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check and finding reasonable "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates"). It is well established that it is appropriate to calculate counsel's lodestar based on current, rather than historical rates, as a method of compensating for the delay in payment and the loss of interest on the funds. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *WPPSS*, 19 F.3d at 1305; *Apollo*, 2012 WL 1378677, at *7 n.2.

represents a negative multiplier of approximately .32. This means that, despite the risk of this litigation, Lead Counsel would receive only a fraction of their standard fees if the full fee request were granted. The resulting negative multiplier suggests that the requested percentage fee is fair and reasonable. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel."); *Regulus Therapeutics*, 2020 WL 6381898, at *7 ("a multiplier less than 1.0 is below the range typically awarded by courts and is presumptively reasonable"); *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (a negative multiplier was a "strong indication of the reasonableness of the [requested] fee").

### III. LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent*, 557 F.2d at 769. Moreover, it is well-settled that litigation expenses are reimbursable in a common fund case where they are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

The expenses for which reimbursement is sought are the type of expenses routinely charged to hourly paying clients, and were necessary and appropriate for the prosecution of this complex securities class action against Defendants. *See* Berg Decl. ¶¶120-124. Important to note is that Lead Counsel were aware that they might not recovery any of their expenses and so took significant steps to minimize expenses wherever possible. These expenses were incurred largely in conjunction with the engagement of the expert for market efficiency, price impact and damages; document review database and deposition expenses; mediation expenses; court, service and

copying fees; and out-of-town travel expenses – all of which were necessary for the successful prosecution and resolution of the ligation on behalf of the Settlement Class. *Id*. Accordingly, courts routinely approve such expenses. *See, e.g., Vega v. Weatherford U.S., Ltd. P'ship*, 2016 WL 7116731, at *17 (E.D. Cal. Dec. 7, 2016) ("legal research expenses, copying costs, mediation fees, postage, federal express charges, expert fees, . . . and travel expenses," among others, were all categories of expenses "routinely reimbursed" in class actions)*; Destefano v. Zynga, Inc.*, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) ("courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation"); *Omnivision*, 559 F. Supp. 2d at 1048-1049 (awarding reimbursement of expenses, including "experts and consultants"); *In re Ins. Brokerage Antitrust Litig*., 297 F.R.D. 136, 158 (D.N.J. 2013) (approving reimbursement for "fees for experts, costs associated with creating and maintaining electronic document databases, participating in mediation, travel and lodging expenses, and photocopying, mailing, telephone and deposition transcription costs").

The reaction of the class to a proposed settlement and expense request is a relevant factor in approving the requested reimbursement of expenses. *See Omnivision*, 559 F. Supp. 2d at 1048. The Notice to the Class advised that Lead Counsel would seek "reimbursement of up to $425,000 for incurred litigation expenses." Angeion Decl., Ex. A (the Notice) at 2, 11. The amount of expenses now sought by Lead Counsel of $381,496.40 is 10% less than the maximum amount stated in the Notice. Lead Counsel has not received any objection to any aspect of the Settlement, including the request for fees and expenses. Accordingly, Lead Counsel respectfully submits that reimbursement of Lead Counsel's Litigation Expenses is reasonable and warranted here.

## IV. LEAD PLAINTIFF SHOULD RECEIVE AN INCENTIVE AWARD RELATED TO ITS REPRESENTATION OF THE SETTLEMENT CLASS

In the Notice, the Settlement Class was also advised that Lead Plaintiff would also ask the Court for an incentive award for time and expenses in connection with their participation in the litigation. Such awards are permitted by the PSLRA. *See* 15 U.S.C. §78u-4(a)(4) ("Nothing in

this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming "incentive award to the Class Representatives" in securities class action); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of class-action settlement).

The reason behind permitting reimbursement for services of a lead plaintiff was made clear in the congressional record: "These provisions are intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N.730, at 731 (1995). Furthermore, the Court should consider not only the effort of the Lead Plaintiff in pursuing claims, but also the important policy grounds of fostering the enforcement of the federal securities laws and rewarding a representative plaintiff who has been instrumental in obtaining recoveries on behalf of other similarly situated shareholders. If there were no individual shareholders willing to step forward and pursue a claim on behalf of fellow investors, countless violations of law would go unprosecuted and unpunished. Indeed, an "incentive award is appropriate where, as here, the 'class representatives remained fully involved and expended considerable time and energy during the course of the litigation.'" *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *19 (C.D. Cal. Nov. 13, 2012) (citation omitted).

Lead Counsel respectfully submits that the Court should do the same here and approve Lead Plaintiff's request for such award of $5,000. In this District, a $5,000 incentive award for a class representative is "presumptively reasonable." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 611 (N.D. Cal. 2015) (citing *Jacobs v. Cal. State Auto. Ass'n Inter–Ins. Bureau*, 2009 WL 3562871, at *4-5 (N.D. Cal. Oct. 27, 2009)); *see also Chao v. Aurora Loan Services, LLC*, 2014 WL 4421308, at *4 (N.D. Cal. Sept 5, 2014) (noting that "Plaintiffs' ... request for a $7,500 incentive award for each representative Plaintiff is above the $5,000 figure which this Court has determined is presumptively reasonable"). Moreover, the amount requested is below the range of incentive

payments that have been awarded by courts in this Circuit.  *See, e.g., Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award); *Rausch v. Hartford Financial Servs. Group,* 2007 WL 671334, *3 (D. Or. Feb. 26, 2007) ("the Court finds Reynolds is entitled to $10,000 as a reasonable incentive award, particularly in light of his perseverance in pursuing this matter to a successful outcome in the Ninth Circuit").

Lead Plaintiff has fully discharged its PSLRA obligations and expended time throughout this case to achieve the Settlement on behalf of the Class.  Berg Decl., ¶¶125-128; Rankin Decl. ¶5 (Ex. 1 to the Berg Decl.).  To date, there have been no objections to an award to Lead Plaintiff for representing the Settlement Class.  Accordingly, Lead Plaintiff should be rewarded for its efforts to successfully resolve this Action for the Settlement Class.

## V.   CONCLUSION

From the beginning of this litigation, Lead Plaintiff and Lead Counsel have faced determined adversaries represented by experienced counsel.  With no assurances of success, Lead Counsel pursued the action against Defendants and successfully obtained $6.8 million for the benefit of the Settlement Class.  Accordingly, for the reasons set forth above, Lead Counsel respectfully submits that the Court should award attorneys' fees of 25% ($1.7 million) of the Settlement Fund plus reimbursement of $381,496.40 in Litigation Expenses, as well as an incentive award of $5,000 to Lead Plaintiff.

Dated: January 7, 2021

Respectfully submitted,

ABRAHAM, FRUCHTER &
    TWERSKY, LLP

_____*/s/ Ian D. Berg*_____
IAN D. BERG
TAKEO A. KELLAR
11622 El Camino Real, Suite 100
San Diego, CA 92130

MITCHELL M.Z. TWERSKY (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel:    (212) 279-5050
Fax:    (212) 279-3655

*Counsel for Lead Plaintiff Oklahoma Firefighters
Pension and Retirement System*